UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

INSIGNIA SYSTEMS, INC.,                        Civ. No. 19-cv-1820 (MJD/BRT)

        Plaintiffs,

v.

NEWS CORPORATION, NEWS                         RULE 26(f) REPORT[1]
AMERICA MARKETING FSI L.L.C.,
and NEWS AMERICA MARKETING
IN-STORE SERVICES L.L.C.,

        Defendants.

---

The parties/counsel identified below conferred as required by Fed. R. Civ. P. 26(f) and the Local Rules, on September 5, 2019, and prepared the following report.

The initial pretrial conference required under Fed. R. Civ. P. 16 and LR 16.2 is scheduled for October 4, 2019, before United States Magistrate Judge Becky R. Thorson in Courtroom 6A of the U.S. Courthouse in, St. Paul, Minnesota.

    For the Court's convenience, the parties' competing proposals regarding scheduling are summarized in **Exhibit A**. Other competing proposals are indicated below by the headings "**Plaintiff Proposes**" and "**Defendants Propose**."

(a) Rule 7.1 Disclosures.

The parties must comply with Rule 7.1, if applicable:

(1) For plaintiff:

    Rule 7.1 **does** apply. Plaintiff's Rule 7.1 statement has been filed. Dkt. 2.

(2) For defendants:

---

[1] This form is based on the forms found on the Court's website under the Court Forms tab, in the "Pretrial, Discovery and Trial Forms" section and is further customized by Magistrate Judge Thorson. http://www.mnd.uscourts.gov/local_rules/forms/Rule26f-report-non_patent.pdf

>Rule 7.1 **does** apply. Defendants' Rule 7.1 statements have been filed. Dkt. 20-22.

(b) Description of the Case.

>(1) Concise factual summary of Plaintiff's claims/defenses:

>>News and Insignia are third-party providers of in-store promotion products and services ("ISPs") sold to consumer-packaged-goods companies ("CPGs") for placement in retail grocery stores, drugstores, and dollar stores. News has acquired and maintained a monopoly in this market through exclusionary agreements with retailers and CPGs and other illegal conduct. Insignia, specifically, has been substantially foreclosed from selling ISPs to the vast majority of CPGs. This has caused Insignia to incur lost sales and profits, higher costs, loss of good will, and a substantial decline in the value of its publicly traded stock.

>>Insignia asserts claims for monopolization and attempted monopolization under Section Two of the Sherman Act, 15 U.S.C. § 2, and Section 325D.52 of the Minnesota Antitrust Act, Minn. Stat. § 325D.52 (Counts I-II, VII-VIII), exclusive dealing under Section One of the Sherman Act, 15 U.S.C. § 1, and Section 325D.53 of the Minnesota Antitrust Act, Minn. Stat. § 325D.53 (Counts III, IX), conspiracy to monopolize under Section Two of the Sherman Act, 15 U.S.C. § 2 (Count IV), and tortious interference with business relationships and tortious interference with contract (Counts V-VI).

>>In response to Defendants' counterclaim for breach of contract, Plaintiff asserts, among other things, that Defendants fail to state a claim, and that Defendants' counterclaim is void as a matter of public policy. Given the Court's request for a "concise" summary, Plaintiff will let Defendants' breathless account of its counterclaim speak for itself, except to say that none of Defendants' arguments should delay any discovery from proceeding in this case, as discussed further in section (e) below.

>(2) Concise factual summary of claims/defenses of Defendants News Corporation, News America Marketing FSI L.L.C. ("NAM FSI"), and News America Marketing In-Store Services L.L.C. ("NAM In-Store" and with NAM FSI, "NAM") (collectively, "Defendants")[2]:

---

[2]   NAM In-Store is an advertising and promotion company offering in-store marketing services such as floor and shelf advertising, at-shelf coupon dispensers, shopping cart advertisements, and other advertising and promotion products in

Before the Court is called upon to manage complex discovery and to evaluate Insignia's antitrust claims, Defendants will ask the Court to consider the threshold question whether the Complaint should have ever been filed. The issue is not the traditional question whether plaintiff has stated a claim under Rule 12(b)(6), but whether plaintiff has violated an explicit undertaking made in this Court and filed a pleading that cannot be permitted to serve as the basis for further proceedings.

From 2004 to 2011, Insignia and NAM In-Store litigated over and then, under this Court's close supervision, settled disputed claims, in a 2011 Settlement Agreement that bound the parties not only to a final resolution of Insignia's claims, but explicitly forbade Insignia from making any use of the matters and alleged events that preceded the 2011 Settlement. Insignia covenanted not to re-assert against the Defendants ever again, in any court, the Released Matters (which, pursuant to a general release, covered every conceivable claim up through the date of the release) "***and/or the underlying facts or conduct supporting the Released Matters.***"

Additionally, this Court entered an order dated February 10, 2011 retaining jurisdiction to enforce the parties' Settlement Agreement and designating then Magistrate Judge Boylan to serve as Special Master to resolve any disputes regarding enforcement or interpretation of the Agreement. (See Order dated February 10, 2011, attached hereto as **Exhibit B**.)

This summer, Insignia proceeded to file the Complaint that is now before this Court, which pleading is filled with assertions about alleged speech and conduct by NAM executives from as far back as 1999. In fact, Insignia's own pleadings in the litigation settled in 2011 rely upon and provide dates for many of the exact same words and alleged events that are found undated in the "new" Complaint. Even Insignia's allegations about NAM's growth of its market share in the "new" Complaint measure from *2009*, in a transparent effort to leverage Released Matters that Insignia had covenanted not to exploit, let alone to relitigate in this Court. Defendants will demonstrate to the Court that Insignia's "new" Complaint indisputably and repeatedly relies on Released Matters. Whether Insignia filled the "new" Complaint with Released Matters because Insignia's allegations about events post-2011 simply would not support a lawsuit, or because Insignia did not consider its prior undertakings in this Court, is for present purposes not

---

supermarkets, drug stores, and other retail outlets. News Corporation and News America Marketing FSI L.L.C. ("NAM FSI") do not conduct the business that is the purported subject of the claims asserted in Plaintiff's Complaint.

3

particularly relevant; what cannot be reasonably disputed is that the "new" Complaint cannot define the metes and bounds of this litigation.[3]

Defendants have asserted a counterclaim for Insignia's breach of contract, and will promptly file within 30 days a dispositive motion for judgment on the pleadings based on this record, pursuant to Rule 12(c), with relief to include: an order striking or dismissing the Complaint with a direction that any pleading that is re-filed must comply with the 2011 Settlement Agreement; and an award of attorney's fees incurred in responding to a pleading that Insignia covenanted and agreed never to file.[4]

Defendants deny Insignia's claims as to relevant market, exclusionary conduct, causation and damages. CPGs have a multitude of options for promoting their products, which NAM's in-store promotions compete against. Any damages Insignia complains of are attributable to other factors, including lawful competition. But these are all matters to be taken up once Insignia has filed a Complaint that is consistent with its prior undertakings in this Court.

(3) Statement of jurisdiction (including statutory citations):

> This Court has subject matter jurisdiction under 28 U.S.C. §§ 1337 commerce and antitrust regulation) and 1331 (federal question), as this action arises under Sections One and Two of the Sherman Act, 15 U.S.C. §§ 1, 2. This Court has jurisdiction over the state-law claims and counterclaim under 28 U.S.C. § 1367 (supplemental) and § 1332 (diversity).
>
> In addition, Defendants note that, pursuant to a February 10, 2011 order, Exhibit B, this Court has retained jurisdiction to enforce the parties' Settlement Agreement and designated then-Magistrate Judge Boylan to

---

[3] After NAM brought these issues to light in its Answer and Counterclaim, Insignia's lawyers filed a letter on the docket in the prior, dismissed case (without copying the Court here) requesting copies of the documents in which Insignia had originally made the allegations it now repeats. *Insignia Systems, Inc.* v. *News Corporation, et al.*, No. 04-cv-04213 (JRT), Dkt. 863, 864 (D. Minn.) (hereinafter "*Insignia I*"). It appears that, notwithstanding the 2011 commitments, neither Insignia nor its counsel considered the provenance of the allegations that fill the "new" Complaint.

[4] Insignia responded to the Counterclaim, alleging that it is "against public policy." We will leave it to Insignia to explain why federal judges should not enforce settlement agreements negotiated with the help of federal magistrates.

    serve as Special Master to resolve any disputes regarding enforcement or interpretation of the Agreement.  Plaintiff disputes the relevance of the order cited by Defendants, particularly given that Defendants appear to agree that jurisdiction and venue in the District of Minnesota is proper.

(4) Summary of factual stipulations or agreements:

    None at this time.

(5) Statement of whether a jury trial has been timely demanded by any party:

    Plaintiff has timely demanded a jury trial on its claims.

    Defendants have timely requested a jury trial on their counterclaim.

(6) Statement as to whether the parties agree to resolve the matter under the Rules of Procedure for Expedited Trials of the United States District Court, District of Minnesota, if applicable:

    The parties have not agreed to an Expedited Trial.

(c) Pleadings.

Statement as to whether all process has been served, all pleadings filed, and any plan for any party to amend pleadings or add additional parties to the action:

    All process has been served and all pleadings have been filed. As of now, neither party plans to amend their pleadings or add parties to this action. Both parties reserve the right to request leave to amend the pleadings or add parties at a later time.

(d) Discovery of Electronically Stored Information.[5]

The parties have discussed the scope of electronic discovery, including relevance and proportionality, and any issues about preserving electronic discovery. The parties

---

[5] The Court refers counsel to "Discussion of Electronic Discovery at Rule 26(f) Conferences: A Guide for Practitioners," developed by the Federal Practice Committee, to help attorneys and parties prepare for a meaningful discussion of electronic discovery issues early in the litigation. The e-Discovery Guide is available on the Court's website http://www.mnd.uscourts.gov. If a formal plan or protocol is appropriate, the parties should: (1) consider whether their plan should be submitted to the Court as a proposed order; (2) serve early document requests pursuant to Rule 34 to facilitate their discussions about electronic discovery, or, if early document requests are impracticable, a list of the

have also discussed the form or forms in which electronic discovery should be produced. They inform the Court of the following agreements or issues:

> A proposed electronic discovery plan and protocol, identifying areas of disagreement, is attached as **Exhibit C**.

(e) Fact Discovery.

The parties should agree on their proposed plan using this form. To the extent that the parties cannot reach agreement on any particular item about scheduling or discovery, they should set forth their separate positions in their Rule 26(f) Report for discussion at the pretrial conference.

The parties recommend that the Court establish the following fact discovery deadlines and limitations:

**Plaintiff's Position**: Discovery is open and should proceed without limitation.

**Defendants' Position**: As set forth above and in Defendants' Answer and Counterclaim, Insignia's current Complaint is filled with allegations of conduct pre-dating the 2011 Settlement Agreement, in some cases by more than a decade, in direct violation of Insignia's contractual covenant not to ever re-assert such allegations. In this extraordinary circumstance, Defendants respectfully submit that discovery should be stayed until a proper pleading is before the Court. It would be unfair, as well as inefficient, to allow Insignia to take discovery about alleged facts or conduct that it previously agreed it would not "attempt to introduce as evidence, or otherwise assert" in this or any other proceeding. Defendants also should not be forced to litigate—and the Court should not have to waste time and expense deciding—a series of entirely predictable discovery disputes about pre-2011 materials and information while the issue of Insignia's breach of the Settlement Agreement is pending.

---

types of documents the party will seek in discovery; (3) discuss where discovery sought is stored, including storage on the party's premises, data stored by a party using third party providers (e.g., the "cloud"), storage on devices used by a party (or its employees, for example) including laptops, smart phones or other personal devices; (4) discuss whether email or other electronic communications will be sought and identify what electronic discovery tools or techniques will be applied; and (5) discuss the other topics relating to electronic discovery set forth in the Federal Rules of Civil Procedure. A plan or protocol should be clear on how the plan or protocol will operate during the course of fact discovery to satisfy a party's obligation to respond to a first and subsequent set of document requests.

Moreover, this is a problem of Insignia's own making.  Insignia could solve it by filing a proper Complaint that does not assert any alleged facts or conduct pre-dating the Settlement, and relies only on the very few specific allegations of post-2011 conduct—which appear to concern contract negotiations with three particular retailers (out of hundreds involved in the industry) and which Defendants are confident have no merit whatsoever.  The parties could then proceed to streamlined discovery on those allegations.  Until the pleadings are appropriately limited in light of the explicit commitments made by Insignia in this Court, however, Insignia should not be allowed to multiply its breach and waste the time and resources of the Court and the parties by re-litigating issues that Insignia covenanted not to raise.[6]

Therefore, Defendants respectfully request that discovery be stayed pending resolution of an early dispositive motion on their Counterclaim (which Defendants intend to file within 30 days, *see infra* at section (g)(5)(A)).  In the alternative, Defendants propose that discovery proceed on the schedule set forth below and in Defendants' portion of Exhibit A, with directions from the Court that the scope of discovery shall be limited to those allegations in the Complaint that post-date the February 9, 2011 Settlement Agreement, and that no discovery pre-dating February 9, 2011 shall be taken.  Given that many of Insignia's allegations are undated, and many clearly were improperly recycled from the previously settled litigation, it would be far more efficient for the Court to enforce the Settlement Agreement by requiring Insignia to file a revised pleading that complies with Insignia's obligations and dates the relevant allegations, rather than start a process that will invite discovery motions based on guesswork.

If, after discussing these matters with the parties at the upcoming conference, the Court would like to see briefing on a formal motion to stay, Defendants will be happy to submit such briefing promptly.

**Plaintiff's Response**: Defendants ask the Court to stay all discovery based on an issue of law that cannot affect the scope of discovery at all. Defendants' request should be denied, for three reasons:

---

[6]     Below in its Response, Insignia incorrectly suggests that the question of whether it should be allowed to assert pre-settlement facts and conduct here should be determined according to what a different court said in a footnote to a summary judgment decision in a different case (*Valassis v. News Corp.*, No. 17-cv-07378-PKC (S.D.N.Y.)), that involves a different plaintiff, a different time period, and a different settlement agreement and release.  Regardless, the application of that settlement agreement's contractual release language to the pre-settlement evidence in that case was neither fully briefed nor decided at summary judgment and will be before the New York court on motions *in limine* the parties there are currently briefing.

*First*, Defendants' request is procedurally improper. If Defendants really believed Plaintiff's pleading was not "proper," Defendants could have and should have filed a timely motion to dismiss under Rule 12(b), or a timely motion to strike under Rule 12(f). They failed to do so. Defendants also chose not to file an actual motion to stay, which could have and should have accompanied their (non-existent) Rule 12 motion, and did not even raise the prospect of a discovery stay (nor their apparently-forthcoming "dispositive motion") during the parties' Rule 26(f) conference. The Court should reject Defendants' invitation to decide this issue on the fly, without timely-filed motions that Defendants, for whatever reason, chose not to make. Answers are on file. Discovery is open, and should proceed apace under the liberal discovery standard set by the FRCP.

*Second*, Defendants have not demonstrated and could not demonstrate good cause for a stay anyway. Even when there has been a timely motion to dismiss, stays of discovery are the exception rather than the rule, and this case is no "exception." Defendants recognize that discovery on their post-2011 conduct will proceed no matter what. Any incremental burden in pursuing discovery into pre-2011 conduct is minimal. Defendants, in fact, already have had to produce evidence of their pre-2011 anticompetitive conduct in other *currently-pending* cases, meaning Defendants could produce those documents to Plaintiff at the push of a button.

*Third*, Defendants' anticipated "dispositive motion" is meritless, and has no bearing on the proper scope of discovery anyway. On the merits, public policy forecloses Defendants' efforts to conceal evidence of their continued course of wrongdoing, and whether the parties actually intended to foreclose use of pre-settlement evidence in a case about post-settlement misconduct will at least be a disputed factual issue. Notably, the court in another pending case about Defendants' ongoing anticompetitive conduct recently *rejected* their attempt to use past settlement agreements to render inadmissible evidence of pre-settlement unlawful conduct that remained probative of post-settlement unlawful behavior. *See Valassis v. News Corp.*, No. 17-cv-07378-PKC (S.D.N.Y.), Dkt. 260 at 4 n.2. But anyway, whatever bearing the parties' prior settlement agreement may have on the *use or introduction* of evidence (a far-down the road question for motions *in limine*, not a Rule 16 conference), it says nothing about the *discovery and development* of evidence and Defendants' obligation to produce responsive documents. Regardless of whether any pre-2011 evidence is ultimately admissible at trial, Defendants' continued use of their pre-2011 anticompetitive playbook makes discovery from the pre-2011 period highly relevant to development of discovery in the post-2011 period—including for example, informing which of Defendants' employees to depose, and on what subjects.

Respectfully, the Court should reject Defendants' improper efforts to use this Rule 26(f) report as a forum to brief a motion to stay that they decided not to file and could

8

not win anyway, all premised, after failing to timely move to dismiss or strike, on a now-forthcoming "dispositive motion" that is also meritless.

(1) The parties must make their initial disclosures under Fed. R. Civ. P. 26(a)(1) on or before **October 16, 2019**. If the parties plan to disclose documents by a description by category and location of documents, they will exchange copies of initial disclosure documents on or before **November 28, 2019**. (Defendants contend that the scope of these disclosures are likely to be impacted by required revisions to the Complaint, and that the same is true about the scope and timing of discovery itself, as explained above. Plaintiff disagrees, as explained above.)

(2) The parties must commence fact discovery procedures in time to be completed by **[see Exhibit A]**. The parties will discuss whether a date for the substantial production of documents should be set within the fact discovery period, to facilitate the taking of depositions.

(3) The parties have discussed the scope of discovery including relevance and proportionality and propose that the Court limit the use and numbers of discovery procedures as follows:

(A) **twenty-five (25)** interrogatories served by each side;

(B) **seventy-five (75)** document requests served by each side. To the extent a document request calls for all documents produced in another litigation, each individual request from the other litigation encompassed by such a request will count toward the total limit of seventy-five. The parties understand that objections to document requests must meet the requirements of amended Rule 34(b)(2)(B). For the parties' convenience, the Rule is set forth below:

> Rule 34
>
> (b) PROCEDURE.
>
>> (2) *Responses and Objections.*
>>
>>> (B) *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

9

If the responding party producing copies of documents or copies of electronically stored information and the copies are not produced with the responses, another reasonable time must be specified in the response. If the requesting party disagrees that this is reasonable, the parties must meet and confer to agree on the timetable for production.

(C) **<u>Plaintiff Proposes</u>**: **one hundred (100)** requests for admission served by each side. The parties will meet and confer regarding a protocol for the authentication of documents.

   **<u>Defendants Propose</u>**:  **twenty-five (25)** requests for admission served by each side.  Requests for admission meant solely to authenticate documents will not count toward the total limit of twenty-five.

(D) **<u>Plaintiff Proposes:</u> ten (10)** factual depositions taken by each side, excluding expert-witness or third-party depositions. The parties have agreed to meet and confer regarding the geographical location for the depositions.

   **<u>Defendants Propose:</u> twenty (20)** factual depositions taken by each side.  This limit shall include depositions taken pursuant to Fed. R. Civ. P. 45.  The limit of 20 depositions includes any depositions from other matters that a party seeks to use under Fed. R. Civ. P. 32(a)(8).  The parties reserve all rights to object to such use of depositions from other matters.

(E) The parties have discussed the taking of depositions, including depositions pursuant to Rule 30(b)(6), and present the following agreements:

   (i)   Except as specified in section (3)(E)(ii), all depositions shall be governed by the time limit set forth in Fed. R. Civ. P. 30(d).  With regard to court reporters, the parties shall endeavor to agree on one court reporting service to conduct all of the depositions.  The parties agree that each deponent shall be allowed 30 days after being notified by the court reporter that the final transcript is available to review the transcript and make any changes in form or substance.  The deponent shall sign and have notarized an errata statement listing the changes and reasons for making them.  The parties shall serve errata statements within 30 days of the final transcript being available.  The parties have agreed to meet and confer regarding the geographical location for the depositions.

   (ii)  The parties will confer in an effort to agree upon appropriate time limitations for Rule 30(b)(6) depositions after review of the topics identified in those deposition notices. To the extent the same witness is presented in response to a Rule 30(b)(1) notice and Rule 30(b)(6)

10

notice, counsel shall also make their best efforts to coordinate the two depositions to minimize any inconvenience for the witness (e.g., by conducting on the same day or on back-to-back days, if practicable).

    (iii) **Defendants Propose**: Each party may notice up to two Fed. R. Civ. P. 30(b)(6) depositions of another party, but each noticed deposition counts as a separate deposition for purposes of the limitations in paragraph (e)(3)(D) above.

    **Plaintiff Proposes**: Given the parties' agreement to meet and confer regarding time limitations for 30(b)(6) depositions, Plaintiff does not understand why multiple 30(b)(6) depositions of the same party would be necessary.

(F) The parties have discussed Rule 35 medical examinations and **do not** anticipate the necessity for Rule 35 medical examinations.

(G) Other:

    (i) The parties agree to discuss in good faith increasing the number of requests when appropriate.

    (ii) As to any discovery dispute, the lawyers will try to resolve by e-mail and phone and no one will write letters to the other, including letters attached as pdf's to emails. Each side will copy all of its emails to the email group distribution list provided by the other side.

    (iii) Documents will be produced on a rolling basis reasonably soon after they are located, collected, and reviewed by counsel.

    (iv) **Plaintiff Proposes**: Document production in response to any document requests served by **October 11, 2019** will be substantially complete by **December 20, 2019**. Privilege logs of documents withheld in response to document requests served by October 11, 2019 will be served by **January 10, 2020**. The parties will meet and confer regarding subsequent rolling deadlines for document production and service of privilege logs.

    **Defendants Propose**: Defendants contend that discovery should be stayed or limited as set forth above in section (e) until such time as the Court can determine its proper scope in light of a proper pleading. Beyond that, Defendants contend that Plaintiff's proposed deadlines do not allow adequate time for the parties to negotiate custodians, search terms, and other discovery parameters, or to review and produce the potentially massive volume of documents and data that may be required.

    Defendants are willing to meet and confer with Plaintiff regarding a reasonable schedule for rolling document productions once the overall scope and timing of discovery has been resolved.

(f) Expert Discovery.

 (1) The parties anticipate that they **will** require expert witnesses at the time of trial.

  (A) Plaintiff anticipates calling at least two experts, in the areas of liability and damages. Plaintiff reserves all rights and identify the aforementioned areas without waiver of their rights to call experts from fields not yet identified.

  (B) Defendants anticipate calling up to three (3) experts, including, but not limited to, experts in the areas of liability and damages. Defendants reserve all rights and identify the aforementioned areas without waiver of their rights to call experts from fields not yet identified.

  (C) The parties must meet and confer to confirm the areas and fields (not necessarily the identity of the expert witnesses) on or before **[see Exhibit A]**.

 (2) The parties propose that the Court establish the following plan for expert discovery:

All expert discovery, including expert depositions, must be completed by **[see Exhibit A]**. The parties must meet and confer to coordinate expert depositions. This conference should immediately follow the disclosure of the experts so that all expert depositions can be coordinated and completed on time. The parties must inform their experts about the deadlines for expert disclosures and depositions in this Scheduling Order.

Each side may call up to **three (3)** experts. Each side may take 1 deposition per expert.

  **Plaintiff Proposes**:

(A) Plaintiff will identify any expert who may testify at trial on behalf of Plaintiff and the initial expert written report(s) completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **June 26, 2020**.

(B) The identity and any expert written rebuttal reports by Defendants to Plaintiff's expert(s) must be served on or before **August 7, 2020**.

(C) The identity of any experts (non-rebuttal) who may testify on behalf of Defendants and any expert written report(s) completed in accordance with

12

    Fed. R. Civ. P. 26 (a)(2)(B) must be served on or before **June 26, 2020**.

 (D) The identity and any expert written rebuttal reports by Plaintiff to Defendants' (non-rebuttal) expert(s) must be served on or before **August 7, 2020**.

  **Defendants Propose**:

 (A) Plaintiff will identify any expert who may testify at trial on behalf of Plaintiff and any expert written report(s) completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **November 16, 2020**.

 (B) Defendants will identify any expert who may testify at trial on behalf of Defendants and any expert written report(s) completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **January 15, 2021**.

(g) Proposed Motion Schedule.

The parties propose the following deadlines for filing motions:

(1) Motions seeking to join other parties must be filed and served by **March 13, 2020**. The parties are aware that they must diligently pursue any investigation or discovery using the appropriate discovery tools available to meet this deadline.

(2) Motions seeking to amend the pleadings must be filed and served by **March 13, 2020**. The parties are aware that they must diligently pursue any investigation or discovery using the appropriate discovery tools available to meet this deadline.

(3) **[ONLY IF APPLICABLE]** Motions seeking an amendment of the pleadings to add punitive damages must be filed and served by **March 13, 2020**. Defendants dispute that punitive damages are available on any of Plaintiff's asserted claims.

[Plaintiff's agreement to the dates in this subsection (g) is contingent on entry of an overall discovery schedule along the lines Plaintiff proposes, rather than the unnecessarily protracted schedule proposed by Defendants.]

(4) Non-dispositive motions.

 (A) All non-dispositive motions relating to fact discovery must be filed and served by **[see Exhibit A]**.

 (B) All other non-dispositive motions, including motions relating to expert discovery, must be filed and served by **[see Exhibit A]**.

13

(5) Dispositive Motions.

**Plaintiff's Proposal**:

Dispositive motions must be filed and served by **October 16, 2020**.

**Defendants' Proposal:**

(A) Defendants request that the Court set a briefing schedule to submit a dispositive motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), on their counterclaim for breach of contract, with Defendants' moving brief to be filed within 30 days. As set forth in Paragraph (b)(2) of this Report, Defendants assert a counterclaim against Insignia for breach of contract relating to a settlement agreement and mutual release ("Settlement Agreement") executed by NAM In-Store and Insignia on February 9, 2011.

Defendants believe that expedited briefing on their counterclaim is proper in this case for two primary reasons. First, Defendants seek no discovery on this claim—Plaintiff's breach is clear from the face of its Complaint and the issue is therefore ripe for this Court's consideration. Second, resolution of Defendants' counterclaim is critical to determining the appropriate scope of discovery in this matter as well as the scope of the legal and factual issues that remain to be litigated. Whether Plaintiff can assert in this litigation the claims and underlying facts that are the subject of the Settlement Agreement's mutual release and covenant not to sue will necessarily inform the discovery obligations of both parties and how quickly this matter can be tried by the court. It also may affect substantive issues such as what conduct is at issue and how the competitive landscape is to be defined. Accordingly, because the issue presented in Defendants' counterclaim is ripe and a decision on its merits will materially affect the scope and progress of the rest of this litigation (including with respect to discovery as set forth above in section (e)), Defendants respectfully seek leave of this Court to file a Rule 12(c) dispositive motion on or before **October 31, 2019**.

(B) Defendants propose that all other dispositive motions must be filed and served by **May 29, 2021**.

(h) Protective Order

The parties have discussed whether they believe that a protective order is necessary to govern discovery and jointly submit the attached [proposed] protective order/report, identifying areas of disagreement, as **Exhibit D**. Given that the parties' proposed form of protective order differs significantly from the standard form, they did not find

a redline against the standard form to be useful. If the Court nevertheless would like to see such a redline, the parties will provide it promptly.

The parties **intend to** seek the entry of a protective order.

The parties will start with the form available on the Court's website under the Court Forms tab in the "Pretrial, Discovery and Trial Forms" section as a base template for their proposed protective order. http://www.mnd.uscourts.gov/local_rules/forms/Stipulation-for-Protective-Order-Form.pdf. The parties understand that they may tailor a proposed protective order to their case and will redline suggested modifications to the form.

(i) Claims of Privilege or Protection.

The parties have discussed issues regarding the protection of information by a privilege or the work-product doctrine, as required by Fed. R. Civ. P. 26(f)(3)(D), including whether the parties agree to a procedure to assert these claims after production or have any other agreements under Fed. R. Evidence 502:

The parties will include their agreement in their proposed Protective Order.

(j) Trial-Ready Date.

  (1) The parties agree that the case will be ready for trial on or after **[see Exhibit A]**.

  (2) Plaintiff anticipates the length of the **jury** trial is **ten (10) days**.

  Defendants anticipate the length of the **jury** trial is **twenty-one (21) days**.

(k) Insurance Carriers/Indemnitors.

  (1) Defendants are not aware of any applicable insurance agreements at this time and reserve their right to amend at a future date, if necessary.

(l) Settlement.

  (1) Counsel must meet before the scheduled pretrial conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26.1 to discuss settlement. No later than three business days prior to the pretrial conference, the parties must prepare and file a joint Rule 26(f) Report in compliance with the rules. Please e-mail a copy to Magistrate Judge Thorson at thorson_chambers@mnd.uscourts.gov. In addition, the parties must send Magistrate Judge Thorson a confidential letter setting forth what settlement discussions have taken place, whether the party believes and early settlement conference would be productive and when it should occur, and what discovery, if any, the party believes would be necessary to conduct

before such a conference. The Court will discuss this topic with the parties at the pretrial conference and will set a date for an early settlement conference or for a status conference to determine when the case will be ready for a productive settlement conference.

(2) The parties propose that a settlement conference be scheduled to take place before **March 13, 2020**.

(3) The parties have discussed whether other alternative dispute resolution will be helpful to the resolution of this case and recommend the following:

> The parties believe that settlement negotiations are more likely to be fruitful after a period of initial discovery.

(m) Trial by Magistrate Judge.

> The parties **have not** agreed to consent to jurisdiction by the Magistrate Judge under 28 U.S.C. § 636(c). (If the parties agree to consent, file the consent with the Rule 26(f) Report.)

DATE: October 1, 2019          /s/ Mark Musico

SUSMAN GODFREY L.L.P.
William Christopher Carmody
Arun Subramanian
Mark Musico
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
(212) 336-8330
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
mmusico@susmangodfrey.com

Alejandra C. Salinas
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
asalinas@susmangodfrey.com

NAPOLI SHKOLNIK PLLC
Hunter Shkolnik
360 Lexington Avenue, 11th Floor
New York, New York 10017
(212) 397-1000

        hunter@napolilaw.com

        GUSTAFSON GLUEK PLLC
        Daniel E. Gustafson (#202241)
        Michelle J. Looby (#0388166)
        Joshua J. Rissman (#0391500)
        120 South 6th Street, Suite 2600
        Minneapolis, Minnesota 55402
        (612) 333-8844
        dgustafson@gustafsongluek.com
        mlooby@gustafsongluek.com
        jrissman@gustafsongluek.com

        *Attorneys for Plaintiff*

DATE: October 1, 2019       */s/ Kenneth A. Gallo*

        PAUL, WEISS, RIFKIND, WHARTON &
        GARRISON, LLP
        Kenneth A. Gallo
        Jane B. O'Brien
        2001 K Street, NW
        Washington, D.C. 20006-1047
        Tel:  202.223.7356
        Fax:  202.204.7356
        kgallo@paulweiss.com
        jobrien@paulweiss.com

        William B. Michael
        1285 Avenue of the Americas
        New York, NY 10019
        Tel:  212.373.3648
        Tel:  212.492.0648
        wmichael@paulweiss.com

        FREDRIKSON & BYRON, P.A.
        Todd Wind (#0196514)
        Nicole M. Moen (#0329435)
        200 South Sixth Street, Suite 4000
        Minneapolis, MN  55402-1425
        Tel:  612.492.7000
        Fax:  612.492.7077

twind@fredlaw.com
nmoen@fredlaw.com

*Attorneys for Defendants*