## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

INSIGNIA SYSTEMS, INC.,

                     Plaintiff,

      v.

NEWS CORPORATION, NEWS AMERICA MARKETING FSI L.L.C., and NEWS AMERICA MARKETING IN-STORE SERVICES L.L.C.,

                  Defendants.

Case No.: 19-cv-1820 MJD/BRT

**JURY TRIAL DEMANDED**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

**[FILED UNDER TEMPORARY SEAL PURSUANT TO LOCAL RULE 5.6]**

# TABLE OF CONTENTS

I.      STANDARD OF REVIEW .................................................................. 3

II.     FACTUAL BACKGROUND ............................................................... 4

III.    ARGUMENTS AND AUTHORITIES ................................................ 6

        A.      NEWS IS NOT ENTITLED TO RELIEF UNDER RULE 12(c). ................ 6

                1.      News does not actually seek a judgment on the pleadings. ............... 6

                2.      News's motion fails to address numerous allegations of
                        post-2011 misconduct in the complaint. ........................................... 8

                3.      News's decision to answer the complaint speaks volumes. ............. 10

        B.      INSIGNIA   DID   NOT   VIOLATE   THE   SETTLEMENT
                AGREEMENT ...................................................................... 13

                1.      Paragraph 9 does not bar Insignia's references to pre-2011
                        information. ...................................................................... 13

                        i)      *The agreement does not apply to post-settlement
                                claims.* ...................................................................... 13

                        ii)     *The rule of strictly construing release provisions
                                also entitles Insignia to a dismissal of the
                                counterclaim as a matter of law.* ........................................... 18

                2.      *Insignia I* was not the source of the publicly available
                        information in the complaint, and the accessibility of the
                        information at issue precludes News's ability to prove any
                        damages. ...................................................................... 21

                3.      In any event, News's initial breach of the settlement
                        agreement precludes its counterclaim. ........................................... 22

        C.      NEWS'S INTERPRETATION VIOLATES PUBLIC POLICY
                AND IS UNENFORCEABLE .................................................... 23

        D.      TO THE EXTENT THE COURT FINDS AN AMBIGUITY,
                NEWS'S MOTION MUST BE DENIED .................................................. 27

IV.     CONCLUSION ................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADT Sec. Servs., Inc. v. Swenson*,
276 F.R.D. 278 (D. Minn. 2011) .................................................................................. 19

*Advantage Consulting Grp., Ltd. v. ADT Sec. Sys., Inc.*,
306 F.3d 582 (8th Cir. 2002) ............................................................................... 16, 17

*Alexander v. Gardner-Denver Co.*,
415 U.S. 36 (1974) ...................................................................................................... 24

*Amerinet, Inc. v. Xerox Corp.*,
972 F.2d 1483 (8th Cir. 1992) ...................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................... 8

*Blue Shield of Va. v. McCready*,
457 U.S. 465 (1982) ..................................................................................................... 26

*Bonny v. Society of Lloyd's*,
3 F.3d 156 (7th Cir. 1993) ........................................................................................... 24

*Bowersox Truck Sales & Serv., Inc. v. Harco Nat'l Ins. Co.*,
209 F.3d 273 (3d Cir. 2000) ............................................................................ 2, 19, 20

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ........................................................................................ 7

*Brookfield Trade Ctr. v. Cty. of Ramsey*,
584 N.W.2d 390 (Minn. 1998) ............................................................................. 16, 28

*Channelmark Corp. v. Destination Prods. Int'l, Inc.*,
No. 99 C 214, 2000 WL 968818 (N.D. Ill. July 7, 2000) ........................................... 27

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ...................................................................................... 8

*Cooper v. Ranch*,
No. C2-92-1348, 1993 WL 7668 (Minn. Ct. App. Jan. 19, 1993) ............................... 18

*Denelsbeck v. Wells Fargo & Co.*,
666 N.W.2d 339 (Minn. 2003) ................................................................. 28

*Double D Spotting Serv., Inc. v. Supervalu, Inc.*,
136 F.3d 554 (8th Cir. 1998) ..................................................................... 9

*Enslin v. Coca-Cola Co.*,
739 F. App'x 91 (3d Cir. 2018) ................................................................ 22

*Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*,
938 F.3d 466 (3d Cir. 2019) ............................................................... 3, 29

*First Integrity Bank, N.A. v. Ohio Cas. Ins. Co.*,
No. 05–2761 MJD/RLE, 2006 WL 1371674 (D. Minn. May 15, 2006) .................... 28

*Firstcom, Inc. v. Qwest Corp.*,
No. 04-0995 ADM/JJG, 2006 WL 8443647 (D. Minn. Feb. 16, 2006) ..................... 12

*Fox Midwest Theatres v. Means*,
221 F.2d 173 (8th Cir. 1955) ................................................................... 24

*Franklin High Yield Tax-Free Income Fund v. Cty. of Martin, Minn.*,
152 F.3d 736 (8th Cir. 1998) ..................................................................... 4

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
386 F.2d 757 (6th Cir. 1967) ................................................................... 25

*Gordon v. JPMorgan Chase Bank, N.A.*,
505 F. App'x 361 (5th Cir. 2013) .............................................................. 11

*Gutter v. E.I. DuPont de Nemours & Co.*,
No. 95-2152-CIV, 2001 WL 36086590 (S.D. Fla. Jan. 31, 2001) ......................... 26

*Honeywell, Inc. v. Ruby Tuesday, Inc.*,
43 F. Supp. 2d 1074 (D. Minn. 1999) .......................................... 18, 19, 20

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) ............................................................................... 26

*In re Am. Express Merchants' Litig.*,
634 F.3d 187 (2d Cir. 2011) ..................................................................... 25

*John v. Maingate, Inc.*,
No. 13-cv-1875 SRN/JJK, 2013 WL 6119072 (D. Minn. Nov. 21, 2013) ............. 8, 23

*Kalinauskas v. Wong*,
   151 F.R.D. 363 (D. Nev. 1993) ...................................................................... 26

*Kansas v. UtiliCorp United, Inc.*,
   497 U.S. 199 (1990) ........................................................................................ 26

*Kristian v. Comcast Corp.*,
   446 F.3d 25 (1st Cir. 2006) ........................................................................ 3, 25

*Lansing v. Wells Fargo Bank, N.A.*,
   894 F.3d 967 (8th Cir. 2018) ........................................................................... 8

*Lasser v. Am. Gen. Life Ins. Co.*,
   No. 14–cv–3326 MJD/LIB, 2015 WL 12778004 (D. Minn. 2015) ........................ 23

*Lawlor v. Nat'l Screen Serv. Corp.*,
   349 U.S. 322 (1955) ........................................................................................ 25

*Logan v. Norwest Bank Minn., N.A.*,
   603 N.W.2d 659 (Minn. Ct. App. 1999) ........................................................ 21

*M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*,
   616 F.3d 872 (8th Cir. 2010) .................................................................... 16, 28

*Mandel v. Multiband Corp.*,
   No. A15–1133, 2016 WL 1175073 (Minn. Ct. App. Mar. 28, 2016) ................. 21

*Maurice Sunderland Architecture, Inc. v. Simon*,
   5 F.3d 334 (8th Cir. 1993) ............................................................................. 28

*Mawby v. United States*,
   999 F.2d 1252 (8th Cir. 1993) ...................................................................... 12

*McAuley v. Fed. Ins. Co.*,
   500 F.3d 784 (8th Cir. 2007) ........................................................................... 4

*Midwestern Mach. Co. v. Nw. Airlines, Inc.*,
   392 F.3d 265 (8th Cir. 2004) ........................................................................ 26

*Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*,
   789 F. Supp. 2d 1133 (D. Minn. 2011) ........................................................... 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ........................................................................................ 24

*Moore v. Minn. Baseball Instructional Sch.*,
  No. A08–0845, 2009 WL 818738 (Minn. Ct. App. Mar. 31, 2009)........................... 19

*Nimis v. St. Paul Turners*,
  521 N.W.2d 54 (Minn. Ct. App. 1994)...................................................................... 18

*Omega Healthcare Inv'rs, Inc. v. Lantis Enters., Inc.*,
  256 F.3d 774 (8th Cir. 2001) ..................................................................................... 28

*Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co.*,
  97 F. Supp. 1148 (D. Minn. 1997) ................................................................................ 4

*Porous Media Corp. v. Pall Corp.*,
  186 F.3d 1077 (8th Cir. 1999) ...................................................................................... 3

*Ransom v. VFS, Inc.*,
  918 F. Supp. 2d 888 (D. Minn. 2013)........................................................................ 10

*Restifo v. McDonald*,
  230 A.2d 199 (Pa. 1967) ............................................................................................ 20

*Rotella v. Wood*,
  528 U.S. 549 (2000).................................................................................................... 26

*Schlobohm v. Spa Petite, Inc.*,
  326 N.W.2d 920 (Minn. 1982).................................................................................... 18

*Sec. Sav. Bank v. Green Tree Acceptance, Inc.*,
  739 F. Supp. 1342 (D. Minn. 1990) ........................................................................... 28

*Skinner v. Switzer*,
  562 U.S. 521 (2011)...................................................................................................... 7

*Soderbeck v. Ctr. for Diagnostic Imaging, Inc.*,
  793 N.W.2d 437 (Minn. Ct. App. 2010)..................................................................... 23

*Sprint Nextel Corp. v. Middle Man, Inc.*,
  822 F.3d 524 (10th Cir. 2016) ............................................................................. 3, 29

*Stanbury Law Firm v. I.R.S.*,
  221 F.3d 1059 (8th Cir. 2000) .................................................................................... 12

*Stop & Shop Supermkt. Co. v. Blue Cross & Blue Shield of R.I.*,
  373 F.3d 57 (1st Cir. 2004) .......................................................................................... 8

*Wu ex rel. Tien v. Shattuck-St. Mary's Sch.*,
   393 F. Supp. 2d 831 (D. Minn. 2005) ........................................................................... 19

*Town of Newton v. Rumery*,
   480 U.S. 386 (1987) ..................................................................................................... 24

*United States v. Northrop Corp.*,
   59 F.3d 953 (9th Cir. 1995) ........................................................................................ 24

*Wendt v. Walden University, Inc.*,
   No. CIV. 4-95-467 JGL, 1996 WL 84668 (D. Minn. Jan. 16, 1996) .................... 25, 26

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 6, 8, 10, 11

Fed. R. Civ. P. 12(c) ................................................................................................ *passim*

Fed. R. Civ. P. 12(e) ................................................................................................. 11, 12

Fed. R. Civ. P. 12(f) ....................................................................................................... 12

Fed. R. Civ. P. 12(f)(2) .................................................................................................. 12

Fed. R. Civ. P. 16 ................................................................................................. 10, 11, 12

**Treatises**

Black's Law Dictionary 133 (9th ed. 2009) ..................................................................... 16

5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1367 (3d ed.) .................................. 6, 7, 11

News's motion should be denied, and its counterclaim dismissed. The motion is based on the false premise that the viability of Insignia's complaint depends on allegations of illegal conduct predating a 2011 settlement agreement. But the complaint alleges that as recently as **this year**, News engaged in anticompetitive and tortious conduct to solidify its **present-day** monopoly in the national market for in-store promotion products and services ("ISPs"). *See, e.g.*, Compl. ¶¶ 28, 37, 45, 46-47, 50, 57, 58. Further, there is no question that Insignia is seeking damages and injunctive relief only for the post-settlement period. The complaint expressly alleges that News's **ongoing** illegal conduct is injuring Insignia's business **today**. *See, e.g.*, Compl. ¶¶ 37, 39 (alleging that News's conduct sunk Insignia's late-stage negotiations with retailers in 2019); ¶ 59 ("In 2019, News has foreclosed 97% of the relevant market" and "[t]he number of News competitors has gone from 12 to 1"). All of this was clear in the complaint. So clear, in fact, that News elected to file an answer, revealing that it was fully aware of what Insignia was alleging News had done, and that it recognized that Insignia presented an actionable claim for relief.

But now, with all pleadings filed, a scheduling order issued, and discovery underway, News seeks to hit restart on the proceedings by requesting this Court to order Insignia to file a new complaint. News cites to no case granting such relief under Rule 12(c), and this Court should not be the first. The only basis for relief on a Rule 12(c) motion would be if Insignia had not alleged a valid claim for relief. It unquestionably has, and that is enough to deny News's motion.

Even if the Court were willing to entertain News's motion on the merits, it should deny the motion and, instead, dismiss News's counterclaim for breach of contract as a

matter of law. Here's why: <u>First</u>, News argues that any mention of it prior to 2011, even in pleading a claim based on non-released conduct, breaches the settlement agreement. *See* Mot. at 8 (arguing that Insignia's description of News's **post-settlement** conduct using phrases like "for over a decade" and "in the intervening decade" violates the agreement). There is no basis for News's position. The agreement in no way suggests that Insignia would be muzzled if News runs roughshod over the antitrust and tort laws in the years **after** the settlement. Just the opposite, the agreement on its very first page makes clear that its intent was to settle "disputes and claims **through the date of this Agreement**" and not thereafter. Ex. A. to Decl. of Todd Wind (Dkt. 50) ("Ex. A"), at 1. That lone sentence that News relies on does not use the word "pleading" and says nothing about post-settlement claims. It certainly does not suggest that pleading allegations in support of a claim based on post-settlement illegal conduct, which is expressly outside the bounds of the settlement release, would be barred. *See Bowersox Truck Sales & Serv., Inc. v. Harco Nat'l Ins. Co.*, 209 F.3d 273, 279 (3d Cir. 2000) ("'[A] release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given.' Thus, 'the general words of the release will not be construed so as to bar the enforcement of a claim which has not accrued at the date of release.'" (citation omitted)).

<u>Second</u>, to the extent that News reads the 2011 release to hinder Insignia's ability to plead or litigate claims about its post-2011 conduct, the release would operate as an unenforceable prospective waiver of antitrust liability. That is the case even where the settlement agreement is wielded to dictate *how* and *with what specific words and information* Insignia can plead its post-release claims: Any such contract that compromises

a party's ability or incentive to fully litigate claims of antitrust violation is void as against public policy. *See, e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (noting, for instance, that "the award of treble damages under the federal antitrust statutes cannot be waived"). This is yet another reason why News's extreme interpretation of the settlement agreement should be rejected.

Third, even if the Court finds that the settlement agreement is ambiguous as to the scope of what is permitted or prohibited, then discovery would be needed to see what extrinsic evidence bears on the question of the shared understanding of that agreement. And for that reason alone, News's motion would need to be denied. *See, e.g.*, *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 470 (3d Cir. 2019) ("If the contract is ambiguous, the fact-finder must attempt to discover what the contracting parties intended the disputed provision to mean, and accordingly, judgment on the pleadings would not be appropriate." (alterations omitted)); *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 533 (10th Cir. 2016) ("Because the contract was ambiguous, [the movant] was not entitled to judgment on the pleadings").

For these reasons and those stated further below, the Court should reject News's procedurally improper attempt to use the 2011 settlement agreement as a shield against its current illegal conduct, and dismiss News's counterclaim.

## I.  STANDARD OF REVIEW

"Judgment on the pleadings should be granted only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

"Under this strict standard, we accept as true all facts pled by [the nonmoving party] and draw all reasonable inferences from the pleadings in [that party's] favor." *Franklin High Yield Tax-Free Income Fund v. Cty. of Martin, Minn.*, 152 F.3d 736, 738 (8th Cir. 1998) (citation omitted) (reversing grant of judgment on the pleadings, where the district court misconstrued the contractual clauses at issue).

Although the Court may refer to the settlement agreement in adjudicating the pending motions, Insignia contests News's attempt to introduce other extra-pleading material, including "the Amended Complaint and other pleadings filed by Insignia in this Court during the course of *Insignia I*." Mot. at 3. To the extent that such material is not attached to or "embraced by" any pleading, the Court should not rely on them. *See Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co.*, 97 F. Supp. 1148, 1152 (D. Minn. 1997) ("resist[ing] the temptation to peer into . . . or otherwise consider matter not contemplated by the pleadings"). Further, if the Court needs any documents other that those "embraced by" the pleadings in adjudicating News's motion, the motion should be denied or converted into one for summary judgment with "sufficient opportunity [for the parties] to create an acceptable record." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 788 (8th Cir. 2007).

## II. FACTUAL BACKGROUND

Insignia and News America Marketing In-Store L.L.C. ("NAM In-Store") entered into a settlement agreement on February 9, 2011 after years of litigating Insignia's antitrust claims against NAM In-Store. That agreement specified that NAM In-Store "shall not seek to enforce any right of first refusal and/or right of last refusal provision contained in any of its current agreements with retailers and shall not include right of first refusal and/or

4

right of last refusal provisions in any agreement it reaches with any retailer in the future." Ex. A., at ¶ 3.

The agreement also made clear the parties' intent to settle "disputes and claims *through the date of this Agreement*." *Id.* at 1 (emphasis added). Paragraph 9 emphasizes this same temporal scope: Under that paragraph, Plaintiffs released NAM In-Store and "Defendant Released Parties" from "any and all manner of actions and causes of action… known or unknown, of any kind or character, from the beginning of time *up to the date of this Agreement* (collectively, the "Released Matters")." *Id.* at 4, ¶ 9 (emphasis added). Paragraph 9 continues: "Each of Plaintiff … further promises, covenants and agrees not to sue, attempt to introduce as evidence, or otherwise assert any of the Released Matters and/or the underlying facts or conduct supporting the Released Matters against the Defendant or the Defendant Released Parties." *Id.* This sentence, just like the ones before it, refers to the "Released Matters," i.e. those disputes through the date of the settlement, not those regarding News's future violations of the law.

On July 11, 2019, Insignia filed the complaint at issue pleading claims of News's post-settlement violations of federal and state antitrust and tort laws. The complaint includes dozens of paragraphs alleging News's post-settlement illegal conduct "during the statutory damage period."  Compl. at ¶¶ 54, 76, 82, 110. To the extent there is any pre-2011 information alleged in the complaint, it is drawn from the public domain, specifically publicly available filings in other lawsuits against News. *See infra* Sec. III.B.2. News, not Insignia, was the first party to introduce the filings in the prior *Insignia* case to this proceeding.

5

Notably, News did not move to dismiss the complaint, move for a more definite statement to obtain clarification of the scope of Insignia's claims, or move to strike any allegations of the complaint. Instead, on August 14, 2019, News answered the complaint. Its answer demonstrates that News was fully on notice of the claims Insignia alleged. Where Insignia's complaint made factual allegations about News, News understood and responded to those allegations.

In addition to answering the complaint, News filed a counterclaim for breach of the settlement agreement. As an affirmative defense to that counterclaim, Insignia argued, among other things, that "News breached its contractual obligations, frustrated or prevented Insignia's performance, and/or otherwise failed to perform or satisfy a condition precedent." Pltf.'s Ans. (Dkt. 27), at 5, ¶ 4. In that same pleading, Insignia also denied that "NAM In-Store has performed all of its obligations under the settlement agreement to date." *Id.* at 4, ¶ 26.

## III.   ARGUMENTS AND AUTHORITIES

### A.   NEWS IS NOT ENTITLED TO RELIEF UNDER RULE 12(c).

1.   <u>News does not actually seek a judgment on the pleadings.</u>

As News itself admits, courts evaluate a Rule 12(c) motion for judgment on the pleadings "under the same standards governing motions to dismiss under Rule 12(b)(6)." Mot. at 4. Accordingly, Rule 12(c) "only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1367 (3d ed.). As with a Rule 12(b)(6) motion, "the defendant will not succeed on a motion under Rule

12(c) if there are allegations in the plaintiff's pleadings that, if proved, would permit recovery on his claim." *Id.* at § 1368.

A Rule 12(c) motion would be appropriate only if News admitted to all such factual allegations—including but not limited to the laundry list of recent illegality recited below, *see infra* Sec. III.A.2—and the sole remaining question was whether the pleadings were "sufficient to cross the federal court's threshold."[1] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Of course, News has denied these extensive factual allegations, and there is accordingly no place for a judgment on the pleadings. Indeed, the strange thing is that News **doesn't even ask** this Court to grant News judgment on Insignia's case. Instead, News asks this Court to make Insignia refile a different complaint, delay these proceedings by several months or longer, just so the parties can return to the same point—where News has answered Insignia's complaint and discovery can continue. Needless to say, the Court should reject News's baseless and pointless motion, the sole function of which would be to waste the resources of the parties and Court, the opposite of what the Federal Rules are designed to accomplish.

The cases cited by News further highlight why its own Rule 12(c) motion should be denied. *See* Mot. at 5. In each of News's cases, defendant sought dismissal of a plainly

---

[1] Insignia's pleadings are more than sufficient to cross that threshold into discovery. *See Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*, 789 F. Supp. 2d 1133, 1141 (D. Minn. 2011) ("Notably, 'courts are hesitant to dismiss antitrust actions before the parties have had an opportunity for discovery, because the proof of illegal conduct lies largely in the hands of the alleged antitrust conspirators.'" (citation omitted)); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (in similar ERISA context where facts "tend systemically to be in the sole possession of defendants," "we must also take account of [the plaintiff's] limited access to crucial information").

invalid claim—not, as News seeks, a new pleading of a valid claim after certain paragraphs are eliminated. In *Lansing v. Wells Fargo Bank, N.A.*, for example, the "plain language of the settlement agreement" barred, full stop, the claims being asserted. *See* 894 F.3d 967, 973 (8th Cir. 2018) (Lansing had waived his right to challenge Wells Fargo's foreclosure on his property). Likewise, in *John v. Maingate, Inc.*, the putative plaintiff's claim of copyright infringement was barred where a settlement agreement from an earlier suit had released the defendant from all claims concerning the copyright being asserted. No. 13–cv–1875 SRN/JJK, 2013 WL 6119072, at *3 (D. Minn. Nov. 21, 2013). Here, News does not dispute that claims of illegal conduct after the date of the settlement agreement are valid and actionable, and that is precisely what Insignia's complaint alleges.

2.      News's motion fails to address numerous allegations of post-2011 misconduct in the complaint.

To the extent that News seeks relief based on a suggestion that Insignia has failed to support its claims of post-2011 misconduct, this argument is dead on arrival. The complaint is replete with allegations of News's illegal conduct after the date of the settlement agreement, and Rule 8 does not require Insignia to allege every instance of News's misconduct to survive dismissal. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (complaint does not need "detailed factual allegations," let alone exhaustive ones, to survive Rule 12(b)(6) attack).[2]

---

[2] Tellingly, most of the cases relied on by News in its brief are from motions filed **after** discovery, or sometimes even after trial. *See Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1508 (8th Cir. 1992) (motion for directed verdict); *Stop & Shop Supermkt. Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 60 (1st Cir. 2004) (same); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1043-44 (8th Cir. 2000) (post-trial motions). Where

News simply overlooks the allegations that it has continued to engage in rampant antitrust violations in total disregard of its 2011 "commitment to make a fresh start." Mot. at 1. The complaint alleges:

- That "[a]s of **2019**, News controls 100 percent of the all commodity volume ("ACV") in drugstores and dollar stores." Compl. at ¶ 28.

- That, in **2019**, "News exercised existing right-of-first-refusal rights in bad faith to pressure [a] retailer to cancel" its deal with Insignia. *Id.* at ¶ 37.

- That News has engaged in "automatic rollovers that automatically extend [] contracts past the initial term," sometimes for as long as ten years. *Id.* at ¶¶ 7, 40.

- That News has included anticompetitive "delayed rollout provisions" in contracts and, recently, added one such provision in particular "after it became aware of the fact that [a] grocery chain was in late-stage discussions with Insignia to enter into a direct distribution contract." *Id.* at ¶ 39.

- That News, in **2018**, "threatened breach of contract litigation" against a retailer after learning that it was engaged in late-stage negotiations with Insignia. *Id.* at ¶ 45.

- That News, in **2019**, similarly threatened withdrawal of its contractual obligations if a drugstore moved forward on a separate contract with Insignia. *Id.* at ¶¶ 46-47.

- That News, in **2018**, "retaliated and tortiously interfered" in Insignia's late-stage negotiations with two different grocery chains when it learned about Insignia's efforts to place freshADS and digitally integrated signage in the chains' stores. *Id.* at ¶ 50.

- That News, in **2018**, told numerous CPGs that "they were required to work with News" and were "precluded from purchasing Insignia ISPs even though News

---

News cites cases at the parallel stage of litigation, they are substantively inapposite. For instance, unlike the plaintiff in *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, who alleged antitrust violations based on one contract in the extremely narrow geographic market of the "Supervalu warehouse in Urbandale, Iowa,"  136 F.3d 554, 560 (8th Cir. 1998), Insignia has alleged a dozen discrete instances of anticompetitive conduct with impact in the national market.

knew that those CPGs also had existing contracts to purchase ISPs from Insignia." *Id.* at ¶ 57.

- That News, in **2019**, "blocked a[] CPG from using an Insignia product because it alleged the product was 'not approved' under News's contract with the CPG." *Id.* at ¶ 58.

Not only does News neglect to address the mountain of factual allegations inconvenient to its motion, it also fails to cite any legal authority suggesting that references to information already made public in prior lawsuits can serve as a basis to ignore well-pled and timely allegations of antitrust violations.

    3.   <u>News's decision to answer the complaint speaks volumes.</u>

News's grievance that it cannot distinguish between the pre- and post-2011 elements of the complaint is less than credible in light of its decision to answer the complaint. News's answer betrayed no indication that News was somehow confused by the complaint or unable to fully respond to Insignia's post-2011 allegations. To the contrary, the answer demonstrates that the parties are already "in a position where they can engage with each other and the Court" on News's post-2011 illegality. Mot. at 15; *see Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 901 (D. Minn. 2013) ("[T]he fact that Defendants filed an answer indicates that Defendants did not believe the complaint to be truly unintelligible such that they could not frame a response.").

During the Rule 16 conference, News made excuses for answering the complaint, rather than bringing a Rule 12(b)(6) motion, by emphasizing that Insignia did not "mention the settlement" in the complaint. Rule 16 Conf. Tr., at 20. "Based on the way [Insignia] pled the case," News continued, "there's nothing before the Court and Judge Davis to be

able to tell when this stuff happened. So we had to put in an answer to complete the pleadings." *Id.* News's attempt to rationalize its decision falls flat: of course Insignia did not append the settlement agreement to its complaint, when that agreement had nothing to do with Insignia's allegations seeking damages for News's post-2011 claims.[3]

If News were actually confused about the allegations in the complaint, there were ample other ways News could have sought relief, rather than by delaying the proceedings with this procedurally unsound motion. For instance, it could have sought relief under Fed. R. Civ. P. 12(e), which allows a party to "move for a more definite statement of a pleading … which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also* 5C Wright & Miller § 1376 ("challenges to a pleading often request relief under Rule 12(b)(6) and Rule 12(e) in the alternative"). There is no question that News could have raised the settlement agreement in such a pre-answer motion. *See, e.g.*, *Gordon v. JPMorgan Chase Bank, N.A.*, 505 F. App'x 361, 363 (5th Cir. 2013) (defendant moved for dismissal under Rule 12(b)(6), or alternatively for a more definite statement under Rule 12(e), on the ground that a waiver provision in a Forbearance Agreement barred plaintiff's claims). But, despite all its complaining now about the

---

[3] News notes in passing that "Insignia agreed to present any claims of noncompliance to Magistrate Judge Boylan. Settlement Agreement ¶ 7." Mot. at 6 n.1. This is a non-starter. First of all, there was no "noncompliance" on Insignia's part. Instead, it is News that is improperly raising the parties' 2011 settlement agreement in this case. Second, News itself filed its counterclaim for breach of contract before this Court, and not Judge Boylan. *See also* Rule 16 Conf. Tr. at 35-36 (the Court not "understand[ing] the [Defendants'] strategy" of simultaneously invoking Magistrate Judge Boylan's jurisdiction and arguing breach of settlement agreement before this Court). Third, News has never explained how it proposes to proceed given Magistrate Judge Boylan's retirement.

complaint's supposed lack of clarity, News never pursued this option—and, of course, it is too late to do so now. Fed. R. Civ. P. 12(e) ("The motion must be made before filing a responsive pleading"). After choosing to answer and thus forfeiting the right to seek relief under Rule 12(b) and (e), News should not be allowed to repurpose Rule 12(c) to its liking.[4]

As an afterthought, News tacks on a Rule 12(f) motion to strike as a "far less suitable alternative … for the Court to enforce the Settlement Agreement." Mot. at 19 n.3. Again, News has long missed its deadline to file a motion to strike. *See* Fed. R. Civ. P. 12(f)(2); Rule 16 Conf. Tr. at 25, 27 (the Court questioning why News has not "deployed" its supposed "mechanism" to enforce the settlement agreement when "[t]he case has been in play for a couple months"). While the Court may strike pleadings on its own initiative, "striking a party's pleadings is an extreme measure, and, as a result, [courts] have previously held that '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citation omitted). In any event, because Insignia seeks relief only with regard to News's anticompetitive conduct in the post-settlement period, striking some pre-

---

[4] Of course, engaging in the ordinary course of discovery was yet another option. For instance, News could have served interrogatories asking for more details on post-settlement allegations. *See, e.g.*, *Firstcom, Inc. v. Qwest Corp.*, No. 04-0995 ADM/JJG, 2006 WL 8443647, at *2 (D. Minn. Feb. 16, 2006) ("Interrogatories are an effective way to obtain simple facts, to narrow the issues by securing admissions from the other party, and to obtain information needed in order to make use of other discovery procedures."); *Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993) ("The purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." (citation and alterations omitted)). Before filing its motion, News did not bother serving a single discovery request.

settlement references from the complaint is not only baseless, but it would also not accomplish anything.[5]

**B. INSIGNIA DID NOT VIOLATE THE SETTLEMENT AGREEMENT**

News argues that Insignia has violated the settlement agreement and that this violation is at the center of the parties' dispute. Mot. at 4. In fact, Insignia has not violated any provision of the 2011 agreement, where the few pre-2011 references in the complaint serve only as background material and were sourced from the public domain, not from the record of *Insignia I*. The Court should see through News's attempts to distort what is truly central to the dispute: its post-settlement anticompetitive and tortious conduct.

1.   Paragraph 9 does not bar Insignia's references to pre-2011 information.

The plain language of Paragraph 9 makes clear that it does not encompass what Insignia did here: refer to pre-2011 information as context for its allegations about News's post-2011 illegality. Reading the release in any other way would not only disregard the plain and ordinary meaning of the contractual language, but would also contravene the rule under Minnesota law of narrowly construing release provisions.

i)   *The agreement does not apply to post-settlement claims.*

News takes issue with four categories of information included in the complaint: (1) publicly available quotes made by News executives; (2) publicly available statistics

---

[5] To the extent that News's real concern is that some evidence shouldn't be admissible at trial based on the settlement agreement, Insignia disagrees, but now is not the time for that fight. News should raise those arguments through a motion in limine at the appropriate time, when there will be a full record for the Court to evaluate, including on issues of relevance and prejudice. These are the steps taken by every party who believes evidence is being improperly used, and News's attempt to short-circuit these procedures, and jam a premature motion in limine into a contrived Rule 12(c) motion, should be rejected.

about News's market share and revenues; (3) certain words, especially the word "decade"; and (4) contracts between News and retailers that were extended after 2011 and still remain in effect today. News argues that even in a case seeking relief for post-settlement conduct, these types of things can't even be alleged in a complaint.  There is no basis for News's argument.

First, there is no question that the entirety of the settlement agreement, including the release provision at issue in this case, is focused on settling claims and disputes through the date of the settlement agreement. There is no provision in the settlement agreement that addresses what Insignia can say or do with respect to post-settlement claims, nor any indication that extra "consideration" was paid by News to Insignia for this additional benefit. Indeed, the best evidence of what the parties intended is on the very first page of the agreement; that the only "claims and disputes" that the parties sought to resolve by way of the settlement were those "through the date of this Agreement." Ex. A, at 1. It doesn't stop there. The release in the settlement agreement—the provision at the heart of News's motion—yet again defines the matters at issue ("Released Matters") as those disputes extending "to the date of this Agreement," not afterward. *Id.* at 4, ¶ 9.

With that background, News's motion turns on just one sentence at the tail end of that release provision. That sentence reads as follows: Plaintiff "further promises, covenants and agrees not to sue, attempt to introduce as evidence, or otherwise assert any of the Released Matters and/or the underlying facts or conduct supporting the Released Matters against … the Defendant Released Parties in any court, governmental or regulatory body or other proceedings."  Ex. A, at 4, ¶ 9; Mot. at 7.

14

The plain intent of this sentence is to further make sure that the "Released Matters" stay released. For example, if Insignia tried to sue News for the "Released Matters" or for conduct before February 9, 2011 in some other proceeding, in a backdoor effort to undermine the settlement's release of claims through that date, then News would be entitled to enforce its rights. This sentence, similar to "belt and suspenders" clauses in many releases, seeks to ensure that a release of claims and disputes through the date of the agreement will be respected. But here, News is trying to do something far different and more expansive.

News interprets this sentence to mean that Insignia, in a case involving claims that were **not the subject of any release whatsoever**, cannot allege or plead any facts at all about News, its statements, or its actions that took place prior to the date of the agreement. Mot. at 7. But the sentence that News relies on makes no mention of cases involving post-settlement conduct, and what Insignia could or could not do or say in the context of such a lawsuit. It certainly doesn't mention what a "pleading" in such a case might include. This makes perfect sense because, as the entirety of the settlement agreement confirms, post-settlement disputes were not what that agreement was about. Of course, News could have tried to negotiate a provision in the settlement agreement that applied to non-released future disputes and what Insignia could or couldn't say in such a case, if that were even legal to do, *see infra* at Sec. III.C. But it didn't.

Putting this fatal defect to the side, News also drastically overreads the words of the sentence in question. For News, the words "otherwise assert" bar all **mention** of News pre-2011, regardless of the purpose, function, or context of the reference. That reading is absurd

and would, if adopted, bar Insignia from even stating the existence of Related Matters in any court. The agreement would effectively force Insignia to pretend as if it had never even sued News. It would prevent Insignia from acknowledging that NAM In-Store is a company in the ISPs business, as that basic fact was part of *Insignia I*. Insignia arguably could not even utter the name News America Marketing, since the identity of the defendant presumably was an "underlying fact" of the pre-2011 suit. Courts nationwide have made clear: "absurd" interpretations such as News's should be rejected. *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 877 (8th Cir. 2010) (citing *Brookfield Trade Ctr. v. Cty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998)); *Advantage Consulting Grp., Ltd. v. ADT Sec. Sys., Inc.*, 306 F.3d 582, 585 (8th Cir. 2002) (Under Minnesota Law, "[t]he contract's terms will not be construed so as to lead to a harsh or absurd result"). Indeed, News's own inability to draw a clear line about what Insignia can or can't say or do with respect to News prior to 2011 is telling.

Rather, defining "assert" to mean "invoke or enforce a legal right," Black's Law Dictionary 133 (9th ed. 2009), offers the better reading, and harmonizes this sentence in the release provision with the rest of the settlement agreement. Under this reading, the agreement bars Insignia from trying to subvert the release by attempting to "invoke or enforce" against News the Released Matters, or to bring claims based on the Released Matters or conduct underlying Released Matters. Consistent with the text, structure, and context of the settlement agreement, this sentence does not apply to claims based on post-settlement claims against News, and it certainly says nothing about what can or cannot be in a complaint in such a case. This is the only reasonable interpretation of the provision

16

and is also consistent with the overall purpose of the settlement agreement. *See Advantage Consulting Grp.*, 306 F.3d at 585 ("The court must consider the overall purpose of the contract, as well as its terms.").

News's additional arguments reveal how unreasonable its proposed interpretation is, and further underscores the pointless nature of its motion. For instance, News takes issue with the fact that Insignia described the ongoing nature of its anticompetitive conduct in terms of the past "decade" rather than the past eight years. *See* Mot. at 8. But again, where Insignia does not assert claims about released matters between 2009 and 2011, the mere reference to a decade-long pattern of News's conduct does not violate the settlement agreement. And even if the use of the term "decade" and the inclusion of 2009 financials violated the agreement, which it does not, forcing Insignia to replead after substituting 2009 financials with 2011 ones and replacing "in the past decade" with "in the past eight years," would do nothing to change the heart of the complaint. Insignia has alleged and will continue to allege that News, undeterred by the 2011 settlement agreement, has engaged in anticompetitive conduct to build and maintain a monopoly in the national ISPs market. News's attempt to focus on certain words should not distract the Court from Insignia's core assertion.

Finally, News is unhappy with Insignia's allegations that it has been extending a 2009 contract with a major retail chain for the past ten years without competitive bidding. *See* Mot. at 9. To be clear, this is an allegation about News's anticompetitive conduct **in the post-settlement period**. Even if the contract at issue was first executed prior to February 9, 2011, News's anticompetitive conduct with regard to that contract took place,

and continues to take place, after 2011. Nowhere does the settlement agreement purport to insulate any and all illegal contractual practices by News so long as the underlying contract was signed before February 2011. Such a reading would turn the settlement agreement into a shield that indefinitely insulates News's antitrust violations from judicial scrutiny. The plain language of the settlement agreement does not contemplate such a function.[6]

ii)    *The rule of strictly construing release provisions also entitles Insignia to a dismissal of the counterclaim as a matter of law.*

If there were any lingering doubt whether Insignia's construction of the settlement agreement is the right one, the tie goes to Insignia under the rule of strict construction for releases of liability. "[A] clause exonerating a party from liability will be strictly construed against the benefitted party. If the clause is either ambiguous in scope or purports to release the benefitted party from liability for intentional, willful or wanton acts, it will not be enforced." *Honeywell, Inc. v. Ruby Tuesday, Inc.*, 43 F. Supp. 2d 1074, 1079 (D. Minn. 1999) (quoting *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn. 1982)); *see also Nimis v. St. Paul Turners*, 521 N.W.2d 54, 57 (Minn. Ct. App. 1994) (same); *Cooper v. Ranch*, No. C2-92-1348, 1993 WL 7668, at *1 (Minn. Ct. App. Jan. 19, 1993) (same). Although this principle was first articulated in the context of contracts of adhesion, courts have since extended the doctrine to apply to contracts negotiated between sophisticated parties. Accordingly, in *Honeywell*, the court narrowly read the scope of three different

[6] Because Insignia did not breach the settlement agreement and because the agreement has no bearing on Insignia's allegations, this case is materially different from News's string of cases in which the "dispute turn[ed] on a party's duties under the correct interpretation of a contract." *See* Mot. at 4-5.

release provisions in one of numerous contracts between Ruby Tuesday ("RTI") and Honeywell for the provision of fire and burglar alarms at 160 RTI restaurants. 43 F. Supp. 2d at 1075. Because "Honeywell cannot limit by contract its liability for intentional or grossly negligent acts," the court found that RTI's counterclaim for breach of contract against Honeywell remained viable to the extent that it alleged Honeywell's willfully negligent or intentional conduct. *Id.* at 1080.

Courts have applied the strict-construction rule to invalidate even unambiguous release provisions. *See ADT Sec. Servs., Inc. v. Swenson*, 276 F.R.D. 278, 301 (D. Minn. 2011) (acknowledging release provision was unambiguous but nonetheless "limit[ing] its applicability to claims which do not implicate willful and wanton negligence or intentional behavior"); *Wu ex rel. Tien v. Shattuck-St. Mary's Sch.*, 393 F. Supp. 2d 831, 838 (D. Minn. 2005) ("Because the Enrollment Contract's exculpatory provision purports to release [defendant] from liability for intentional, willful, or wanton acts, the Court finds that the Enrollment Contract is not enforceable as a matter of law."). *See generally Moore v. Minn. Baseball Instructional Sch.*, No. A08–0845, 2009 WL 818738, at *6 (Minn. Ct. App. Mar. 31, 2009) ("Even if a release clause is unambiguous in scope and is limited only to negligence, courts must still ascertain whether its enforcement will contravene public policy.").

The disfavored status of release provisions is not limited to Minnesota, and the Third Circuit's decision in *Bowersox Truck Sales and Service, Inc. v. Harco National Insurance Company* provides helpful guidance. 209 F.3d 273 (3d Cir. 2000). There, Bowersox ("BTS") brought suit against Harco for breach of an insurance policy, including a claim of

bad faith in Harco's handling of BTS's business interruption loss. Harco argued that BTS's bad-faith claim was precluded by a release executed by the parties as part of a prior settlement. In that settlement agreement, BTS released Harco "of and from any and all past, present and future actions … including claims or suits based upon negligence, breach of contract, [and] bad faith." *Id.* at 275. BTS "additionally release[d] Harco for any claims we have under any theory of bad faith or unfair claims handling practices." *Id.*

Notwithstanding the agreement's language expressly releasing the defendant from bad-faith claims even in future actions, the Third Circuit nonetheless found that the "express language of the Release applies only to BTS's bad faith claim for Harco's past conduct, and does not apply to any future bad faith claim based on Harco's future handling of BTS's business interruption loss." *Id.* at 279 (quoting Appellant's Br. at 16). In reaching this decision, the court explained that "'a release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given.' Thus, 'the general words of the release will not be construed so as to bar the enforcement of a claim which has not accrued at the date of release.'" *Id.* (quoting *Restifo v. McDonald*, 230 A.2d 199, 201 (Pa. 1967)). Releases must be strictly construed, the court noted, "so as to avoid the ever present possibility that the releasor may be overreaching." *Id.* at 280 (quoting *Restifo*, 230 A.2d at 201). "Thus, even if we concluded that the scope of the release was ambiguous, we would still find, as a matter of law that this release did not include future claims of bad faith that accrued . . . after the release was executed." *Id.*

The rule of strict construction embodied in *Honeywell* and *Bowersox* apply with full force here. Under News's reading of Paragraph 9, News would be released of liability from

20

**both** willful and intentional violation of the antitrust laws **and** future antitrust violations that the parties had not even contemplated when they executed the settlement agreement. Such a reading flies in the face of the well-recognized principle that releases of liability are disfavored and thus must be strictly construed.

2.    _Insignia I was not the source of the publicly available information in the complaint, and the accessibility of the information at issue precludes News's ability to prove any damages._

To bolster its accusations, News assumes that the pre-2011 information "[wa]s clearly sourced in previous pleadings in _Insignia I_." Mot. at 18. To the contrary, after News first referred to various _Insignia I_ filings in its answer, Insignia's counsel had to request access to these documents, as it didn't have them. _See_ Decl. of Gloria Park, Ex. A (Aug. 21, 2019 Letter from Pltf.'s Counsel to the Clerk of D. Minn.).

Further, all the pre-2011 information to which News objects has already been made public in other lawsuits, including _Valassis Commc'ns., Inc. v. News Am. Inc._, No. 17-cv-07378 (S.D.N.Y.), and _Dial Corp. et al. v. News Corp. et al._, No. 13-cv-6802 (S.D.N.Y.). On any interpretation of the parties' settlement agreement, citations to this already public information can't possibly be what the parties intended to prohibit. And because it is all in the public domain—indeed in other cases charging News with anticompetitive conduct after 2011, News cannot possibly show any damages resulting from Insignia's actions. _See Mandel v. Multiband Corp._, No. A15–1133, 2016 WL 1175073, at *5 (Minn. Ct. App. Mar. 28, 2016) (affirming dismissal of breach of contract claim notwithstanding defendant's deviation from contractually required action, where the plaintiff "cannot show damages flowing from [that action]"); _see also Logan v. Norwest Bank Minn., N.A._, 603

N.W.2d 659, 663 (Minn. Ct. App. 1999) (reviewing cases affirming judgments against parties who could not demonstrate damages arising from breach of contract); *accord Enslin v. Coca-Cola Co*., 739 F. App'x 91, 95 (3d Cir. 2018) ("So breach or no breach, [the party's] contract claims fail because he cannot show he was damaged as a result of [opposing party's] conduct.").

3.   In any event, News's initial breach of the settlement agreement precludes its counterclaim.

Even if Insignia harmed News by violating the agreement, which it did not, Insignia would be excused by News's prior breach of that agreement. Perhaps in anticipation of this argument, News suggests that Insignia has not "pressed a claim for breach in this Court." *See* Mot. at 6 n.1. That is demonstrably false. As an affirmative defense against News's counterclaim, Insignia made clear that the counterclaim "is barred, in whole or in part, because News breached its contractual obligations." Pltf.'s Ans. (Dkt. 27), at 5, ¶ 4. Insignia further "denie[d] that NAM In-Store has performed all of its obligations under the Settlement Agreement to date." *Id.* at 4, ¶ 26. The breached contractual obligations, in turn, include at least Paragraph 3 of the settlement agreement, which barred NAM In-Store from "seek[ing] to enforce any right of first refusal and/or right of last refusal provision contained in any of its current agreements with retailers and shall not include right of first refusal and/or right of last refusal provisions in any agreement it reaches with any retailer in the future." Ex. A, at ¶ 3. Because NAM In-Store, along with its codefendants, has continued to violate this provision and has been in breach of the settlement agreement since the day it was signed, they excused Insignia's obligations under the contract. After all, "it

is elementary that a breach of contract by one party excuses performance by the other."

*Soderbeck v. Ctr. for Diagnostic Imaging, Inc.*, 793 N.W.2d 437, 441 (Minn. Ct. App. 2010) (citation omitted).

Trying to brush away these factual and legal hurdles, News again cites *Maingate* to no avail. 2013 WL 6119072 (cited in Mot. at 6 n.1). There, the defendant sought a judgment on the pleadings after the plaintiff sued for infringement of a copyright in violation of a prior settlement agreement. In response to the defendant's Rule 12(c) motion, the plaintiff argued for the first time that the defendant had breached that settlement agreement to render it void. *Id.* at *3. The court declined to rule on that argument, which was not properly before it. Here, by contrast, Insignia preserved its argument about News's breach through its affirmative defense. *See Lasser v. Am. Gen. Life Ins. Co.*, No. 14–cv–3326 MJD/LIB, 2015 WL 12778004, at *3 (D. Minn. 2015) ("A party sufficiently pleads and preserves an affirmative defense by simply identifying the defense in the party's responsive pleading.").

## C. NEWS'S INTERPRETATION VIOLATES PUBLIC POLICY AND IS UNENFORCEABLE

Though dressed up as a Rule 12(c) motion, what News truly seeks is a ruling that it can use the settlement agreement to dictate how and with what tools Insignia can plead post-release claims. In effect, it seeks to use the agreement to insulate itself from full antitrust liability. Not only does such a reading of the agreement go against the plain language of the contract itself, but it also renders the agreement unenforceable as violative of public policy.

It is black-letter law that a "contractual provision which could be argued to absolve one party from liability for future violations of the anti-trust statutes against another would to that extent be void as against public policy." *Fox Midwest Theatres v. Means*, 221 F.2d 173, 180 (8th Cir. 1955). That is because "the effect of such a release could be to permit a restraint of trade to be engaged in, which **would have impact, not simply between the parties, but upon the public as well**." *Id.* (emphasis added). As such, in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the Supreme Court made clear that it "would have little hesitation in condemning [an] agreement as against public policy" where its "choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations." 473 U.S. 614, 637 n.19 (1985).[7]

Judicial wariness of contractual attempts to confer immunity is especially heightened in the context of antitrust law, where the public interest in full and vigorous enforcement of the laws has led courts to invalidate more than just blunt waivers of prospective rights. A contract that removes any available tool, however minute, for the full

---

[7] This is consistent with cases in numerous other areas ranging from the False Claims Act, to Title VII, to securities law, where federal courts have found prospective waivers of parties' rights to be unenforceable. *See, e.g.*, *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987) ("[A] promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement."); *United States v. Northrop Corp.*, 59 F.3d 953, 963 (9th Cir. 1995) (pre-filing release of *qui tam* claim void as a matter of public policy because upholding it would "impair a substantial public interest"); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) ("no prospective waiver of an employee's rights under Title VII"); *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160-61 (7th Cir. 1993) (expressing "serious concerns" that forum selection clauses "operate as a prospective waiver of statutory remedies for securities violations" and undercut "the anti-waiver provisions in the securities laws," through which "Congress made clear that the public policy of these laws should not be thwarted").

enforcement of antitrust laws is accordingly void as against public policy. The Supreme Court has made clear that even "a ***partial immunity*** from civil liability for future [antitrust] violations" is contrary to public policy. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955) (emphasis added). Accordingly, courts have voided contracts that on their face do not purport to waive future liability but operate in that way "in practice." *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 197 (2d Cir. 2011). Similarly, in *Kristian v. Comcast Corp.*, the First Circuit found that "the award of treble damages under the federal antitrust statutes cannot be waived." 446 F.3d 25, 48 (1st Cir. 2006). And, in *Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*, the Sixth Circuit warned that contracts "executed in a fashion calculated to waive damages arising from future violations of the antitrust laws, would be invalid on public policy grounds." 386 F.2d 757, 759 (6th Cir. 1967).

Further, courts have struck down confidentiality provisions in settlement agreements, where such provisions would conceal evidence affecting the public interest. For instance, in *Wendt v. Walden University, Inc.*, an employment discrimination case, the defendant sought to block the plaintiff's deposition of two former co-workers on the ground that both co-workers had signed confidential settlement agreements with the defendant. No. CIV. 4-95-467 JGL, 1996 WL 84668, at *1 (D. Minn. Jan. 16, 1996). The court allowed the plaintiff to seek discovery from the co-workers anyway because the "contractual confidentiality provision here impacts on the public interest." *Id.* at *2. "While parties have the freedom to contract, courts must carefully police the circumstances under which legitimate areas of public concern are concealed. Defendants should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy

are relevant to another." *Id.* (citation omitted); *see also Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-2152-CIV, 2001 WL 36086590, at *1 (S.D. Fla. Jan. 31, 2001) (courts have refused to allow confidentiality provisions to be "utilized as a shield to obstruct the discovery process," "particularly … when confidentiality provisions may have the effect of silencing witnesses with a settlement agreement where the facts of one controversy are relevant to another").[8] The law is clear that "settlement agreements which suppress evidence violate the greater public policy." *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D. Nev. 1993).

Yet News is trying to do exactly that by using the settlement agreement to prevent Insignia from referencing information relevant to News's post-settlement violations of the antitrust laws, an area where there is a strong public interest in vigorous enforcement by all available means. *See, e.g.*, *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 214 (1990) (recognizing the goal to "promote the vigorous enforcement of the antitrust laws"); *Blue Shield of Va. v. McCready*, 457 U.S. 465, 475 n.11 (1982) (seeking to avoid the consequence of "discourag[ing] vigorous enforcement of the antitrust laws by private suits"); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745 (1977) (recognizing "the longstanding policy of encouraging vigorous private enforcement of the antitrust laws").

---

[8] Of course, these cases also warn that private confidentiality agreements between two parties should not be upset unless they are relevant to third parties' disputes. *See Wendt*, 1996 WL 84668, at *2. The cases are still instructive because Insignia's suit to enforce the antitrust laws is not a purely private dispute. *See Rotella v. Wood*, 528 U.S. 549, 557 (2000) (antitrust law reflects "congressional objective of encouraging civil litigation to supplement Government efforts to deter and penalize the respectively prohibited practices"); *Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 272 (8th Cir. 2004) ("private suits under the antitrust laws are allowed to correct public wrongs").

In this antitrust suit alleging that News has resorted to illegal means to consolidate a 97 percent share of the ISPs market, the public has a "strong interest in not allowing [News] to conceal information that is of legitimate public concern." *Channelmark Corp. v. Destination Prods. Int'l, Inc.*, No. 99 C 214, 2000 WL 968818, at *5 (N.D. Ill. July 7, 2000). After all, "[t]he public reaps no benefit by allowing settlement agreements to suppress evidence." *Id.*

As part of the settlement, Insignia released all of its claims regarding News's antitrust violations up to February 9, 2011. That's it. Any attempt by News to use the agreement as a prospective waiver of antitrust liability would be void as against public policy. And, more than that, News cannot use the settlement agreement to take away any tool available to Insignia for thorough enforcement of the antitrust laws against News's post-release conduct—including the important context that News's pre-2011 unlawful conduct provides for its post-2011 unlawful conduct. The agreement, after all, has no bearing on how Insignia can phrase or contextualize or plead post-release allegations. And despite its irrelevance, News continues to bring up the agreement, hurling accusations about breach of contract, in order to distract the parties from the real issues at hand. The Court should put an end to this behavior by dismissing News's counterclaim.

### D. TO THE EXTENT THE COURT FINDS AN AMBIGUITY, NEWS'S MOTION MUST BE DENIED

For the reasons articulated above, *see supra* Sec III.B.1, Insignia's construction of Paragraph 9 provides the only reasonable interpretation of the settlement agreement. But

even if the Court found the settlement agreement to be ambiguous, that finding would still be fatal for News's 12(c) motion.

Under Minnesota law, "[t]he construction and effect of a contract presents a question of law, unless an ambiguity exists." *M.M. Silta*, 616 F.3d at 877 (citation omitted). "A contract is ambiguous if its language is reasonably susceptible to more than one interpretation." *Brookfield Trade Ctr.*, 584 N.W.2d at 394. "[I]f a contract is ambiguous, the meaning of the contract becomes a question of fact." *Maurice Sunderland Architecture, Inc. v. Simon*, 5 F.3d 334, 337 (8th Cir. 1993). "[I]f a contract term is ambiguous, extrinsic evidence can be considered by the trier of fact to help it determine the parties' intent." *Id.*

Because "the interpretation of an ambiguous contract is a question of fact for the jury," *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003), it cannot be the premise of a judgment on the pleadings. *See, e.g.*, *First Integrity Bank, N.A. v. Ohio Cas. Ins. Co.*, No. 05–2761 MJD/RLE, 2006 WL 1371674, at *4 (D. Minn. May 15, 2006) (denying motion to dismiss because insurance agreement was "ambiguous as to whether indemnification is required"); *Sec. Sav. Bank v. Green Tree Acceptance, Inc.*, 739 F. Supp. 1342, 1346-47 (D. Minn. 1990) (denying motion for summary judgment because Sale and Servicing Agreement at issue was "ambiguous" and susceptible to "two possible interpretations"); *see also Omega Healthcare Inv'rs, Inc. v. Lantis Enters., Inc.*, 256 F.3d 774, 776 (8th Cir. 2001) (applying Michigan law and affirming district court's holding that contract's "nonrefundable commitment fee" provision was ambiguous, denying summary judgment motion on that ground, and proceeding to jury trial on the parties' intention

28

behind the meaning of that provision); *Fed Cetera, LLC*, 938 F.3d at 470 (no judgment on the pleadings based on ambiguous contract); *Sprint Nextel Corp.*, 822 F.3d at 533 (same).

## IV. CONCLUSION

For the above reasons, Insignia respectfully requests the Court to deny News's motion for judgment on the pleadings and grant Insignia's cross-motion for judgment on the pleadings.

Dated: November 11, 2019         Respectfully submitted,


*/s/ Arun Subramanian*
Jerry W. Blackwell (MN Bar No. 186867)
S. Jamal Faleel (MN Bar No. 320626)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 5 5415
Tel: 612-343-3200
Fax: 612-343-3205
blackwell@blackwellburke.com
jfaleel@blackwellburke.com

Daniel E. Gustafson (#202241)
Michelle J. Looby (#0388166)
Joshua J. Rissman (#0391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

William Christopher Carmody (*pro hac vice*)
New York Bar No. 4539276
Arun Subramanian (*pro hac vice*)
New York Bar No. 4611869
Mark Musico (*pro hac vice*)

29

New York Bar No. 5238001
Y. Gloria Park (*pro hac vice*)
New York Bar No.: 5477047
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-3330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
mmusico@susmangodfrey.com
gpark@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
Texas Bar No. 24102452
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
asalinas@susmangodfrey.com

Hunter Shkolnik (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
hunter@napolilaw.com

*Attorneys for Insignia Systems, Inc.*