## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

INSIGNIA SYSTEMS, INC.,

       Plaintiff,

    v.

NEWS CORPORATION, NEWS
AMERICA MARKETING FSI L.L.C.,
AND NEWS AMERICA MARKETING IN-
STORE SERVICES L.L.C.,

       Defendants.

Case No. 19-cv-1820 (MJD/BRT)

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

### INTRODUCTION

Insignia's Memorandum opposing Defendants' Motion for Judgment on the Pleadings ("Opp.") confirms that the parties do agree on two important points.

First, the Court *can* decide whether Insignia breached the Settlement Agreement that ended *Insignia I*. Opp. 2. If this issue could not be decided as a matter of law based on the words of the Agreement, Insignia would not have filed its own cross-motion to dismiss the Counterclaim under Rule 12(c).

Second, the Court *should* decide whether Insignia has breached the Settlement Agreement because that dispute matters right now—it relates directly to whether Insignia has a case that should proceed. If Insignia believed it could state a plausible antitrust claim without relying upon Released Matters (and conduct underlying Released Matters),

1

it would have simply filed an amended complaint this summer upon receipt of the Counterclaim, or at any time since. The record demonstrates that Insignia insists upon relying on pre-2011 matters because it recognizes that otherwise it may not be able to state a claim; there is no other plausible explanation in this record. What is at issue, then, is not some technicality, or even whether Insignia has honored its commitments; at issue is whether there is an antitrust case here at all—a question the Supreme Court has urged the federal courts to consider at the pleadings stage, before the parties and the Court take on antitrust discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007).

Insignia offers various arguments why it did not breach. None can be squared with the content of the Settlement Agreement, and none otherwise withstands scrutiny.

Insignia declares it "released all of its *claims* regarding News's antitrust violations up to February 9, 2011. *That's it*." Opp. 27 (emphasis added). But "that's" wrong. The parties did not just file a dismissal with prejudice (which alone would have taken care of pending antitrust *claims* up to February 9, 2011), and they did not merely execute a general release (which alone would have had a broader effect than a dismissal and release tailored to *Insignia I*). Instead, they agreed that Insignia is barred from "*assert[ing] any of the Released Matters and/or the underlying facts or conduct*" in "*any court . . . or other proceeding*." Settlement Agreement ¶ 9 (emphasis added). The explicit reference to "any court . . . or other proceeding" defeats Insignia's assertion that the Agreement applies only to *Insignia I*. The notion that this language effected nothing more than a release of *claims* up to February 9, 2011 (when there was already an explicit general

release of all such claims), Opp. 13-15, ignores the words of the Agreement and basic canons of contractual interpretation.

Insignia next argues that it did not breach the Settlement Agreement because it did not rely upon the court file in *Insignia I* to learn about pre-2011 matters asserted in the Complaint. Opp. 21-22. But Insignia is barred from asserting "any of the Released Matters and/or the underlying facts or conduct" from *Insignia I*. The matters, underlying facts, and conduct are what Insignia released; the source is irrelevant.

Insignia would have the Court impose limits that have no application to the language in the Settlement Agreement at issue. For example, Insignia invokes the "rule of strictly construing release provisions," Opp. 18, but that rule does not authorize removing the language that explicitly bars Insignia from doing what it did in this case. Insignia argues that "public policy" favors antitrust enforcement instead of creating "immunity," Opp. 23-24, but the Settlement Agreement does not create "immunity," and "public policy" favors finality in disputes. Nothing in the Settlement Agreement prevents Insignia from prosecuting an antitrust case that does not rely on Released Matters and underlying pre-release conduct—if it can.

Beyond asking the Court to adopt an interpretation that simply ignores the explicit language of the Settlement Agreement, Insignia suggests there is no need to dwell on that language at all, arguing that Defendants are no longer entitled to enforce the Agreement.

First, Insignia argues that Defendants waived or compromised their right to seek relief from breach of the Settlement Agreement because they filed an Answer instead of moving to dismiss, and that the relief now sought is "too late." Opp. 6, 10, 12.

Insignia gives that game away when it also contests Defendants' right even now to refer the Court to pleadings in *Insignia I*, arguing that *Insignia I* is "extra-pleading material." Opp. 4. Insignia's Complaint here made no reference to *Insignia I* at all, let alone to a Settlement Agreement between these parties—Insignia chose instead to withhold those matters from the Court. Had Defendants moved to dismiss based on the *Insignia I* Settlement Agreement, Insignia would have objected even more loudly than it does now, claiming it was too early to enforce that Agreement because it was outside the record. Instead, on the same day and in the same pleading in which Defendants answered, they filed a counterclaim that called the Court's attention to the Settlement Agreement to ensure that *Insignia I* would be embraced by the pleadings here when Defendants sought relief for Insignia's breach. Federal courts properly rely on Rule 12(c) to dismiss complaints filed in derogation of a prior settlement. Defendants are not "late."

Second, Insignia asserts that Defendants breached an element of the Settlement Agreement, Opp. 22, as if saying so vitiates the release. That is not how this works.

If Insignia wanted to claim a breach of a behavioral condition in the Settlement Agreement, that document outlined how such a claim should be prosecuted. Since 2011, Insignia never has. Nor did Insignia mention a breach in the 2019 Complaint. The timing here suggests a dodge. In any event, Insignia has no legal authority to declare the entire Settlement Agreement null and avoid. The Settlement Agreement that the Defendants brought before this Court is in effect; this Court should enforce it.

<u>**ARGUMENT**</u>

**I.    INSIGNIA BREACHED THE SETTLEMENT AGREEMENT.**

Insignia agreed it would not "*assert* any of the Released Matters and/or *the underlying facts or conduct* supporting the Released Matters . . . *in any court*." Settlement Agreement ¶ 9 (emphasis added).  But, as the Opening Memorandum demonstrated, that is exactly what Insignia did, and Insignia does not deny it.  Instead, Insignia asks the Court to find that the Settlement Agreement does not mean what it says.

**A.    The Agreement Explicitly Applies to Post-Release Claims.**

Courts construe contracts like the Settlement Agreement as a matter of law.  *See Cromeans v. Morgan Keegan & Co.*, 859 F.3d 558, 569 (8th Cir. 2017) (affirming district court's construction of settlement agreement as matter of Missouri law); *BancInsure, Inc. v. Marshall Bank, N.A.*, 453 F.3d 1073, 1075 (8th Cir. 2006) ("In Minnesota, '[c]ontract interpretation is determined as a matter of law,' and a contract's 'construction and effect are also questions of law, unless the contract terms are ambiguous.'") (quoting *Cousineau v. Norstan, Inc.*, 322 F.3d 493, 496 (8th Cir. 2003)).  Here, both parties are urging the Court to do just that.  *See* Opp. 2.  In antitrust cases as elsewhere, the central issue is "the intent evidenced by the release itself."  *Marketing Assistance Plan, Inc. v. Associated Milk Producers, Inc.*, 338 F. Supp. 1019, 1022 (S.D. Tex. 1972).

The Settlement Agreement's release provision has two parts.  First, Insignia released the *claims* that were the subject of *Insignia I* and any other claim it could have brought through the date of the Agreement.  Those are "Released Matters."  Settlement Agreement ¶ 9.  Second, Insignia agreed never to "assert" any of the "*facts or conduct*

*supporting the Released Matters*" in the future—not "in any court" and not against any defendant. *Id.* That second provision is the one that Insignia would have the Court read out of the Settlement Agreement. That provision controls the outcome here.

Insignia argues that the language releasing "any and all manner of actions . . . *up to the date of this Agreement*" in the first part of the release means that the Settlement Agreement has no application to claims beyond those released in *Insignia I*. *See* Opp. 13, 15-18. The second prohibition, against asserting pre-release conduct in "any court," demonstrates that the Settlement Agreement was plainly meant to have an impact beyond the resolution of *Insignia I*, with respect to claims asserting pre-release conduct.

All that the "date of this Agreement" language means is that post-release conduct is not released. It does not mean that the Agreement cannot apply to any "post-settlement claims," Opp. 13; rather, it simply means that post-release claims would have to rise and fall based exclusively on post-release conduct. That is the only way to give effect to both the first part of the release (covering the Released Matters, the claims through the date of release) and the second part of the release (prohibiting Insignia from asserting the conduct underlying any of the Released Matters in any future proceedings).[1]

Insignia asks the Court to treat the second prohibition as devoid of any meaning or effect, as if all that the parties actually agreed to is what they wrote in the first part of the

---

[1] Insignia's assertion that the Court should not give effect to the second part of the release because of Defendants' failure to pay "extra consideration" for this provision, Opp. 14, does not appear to be based on any principle of contract law let alone case authority. In fact, Insignia was compensated handsomely for the entire release that it agreed to.

release. That is exactly what the Court should not do. "Harmoniz[ing] all clauses" is, of course, a central tenet of interpreting Minnesota contracts. *Thomsen v. Famous Dave's of Am., Inc.*, 606 F.3d 905, 909 (8th Cir. 2010) (quoting *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990)). Insignia's reading would "render a provision meaningless," namely the second half of Paragraph 9. *See id.*; *see also Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995) ("A contract must be interpreted in a way that gives all of its provisions meaning.").

Indeed, Insignia's argument that all it released were the antitrust "claims" in *Insignia I*, "that's it," Opp. 27, would render Paragraph 9 meaningless. If the parties had intended only to release those claims, a simple dismissal with prejudice (and a release limited to those claims) would have done the trick. These parties explicitly committed to more than ending *Insignia I*. The first part of Paragraph 9 released not just claims asserted, but *all* claims. And in the second part of Paragraph 9, the parties went beyond the dismissal and a broad general release: they explicitly forbade the "assert[ion]" of *any conduct* underlying the Released Matters in "*any court*." By its terms, Paragraph 9 applies not just to claims, but to everything underlying the claims. And Paragraph 9's terms also dictate that it applies to subsequent proceedings—if it only applied to and ended in *Insignia I*, there would have been no point extending the prohibition to assertions made "any[where]" else.

The arguments now offered by Insignia simply bear no relationship to what is before the Court. The only way to give effect to all of the terms in the Settlement Agreement is to conclude that it prohibited Insignia from doing exactly what it concedes

it did here—asserting facts and conduct underlying the Released Matters in a new complaint. *See Qwinstar Corp. v. Anthony*, 882 F.3d 748, 754 (8th Cir. 2018) ("[T]he primary goal of contract interpretation is to determine and enforce the intent of the parties. . . . Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning.") (quoting *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003)).

### B.  Enforcing the Agreement Is Not "Absurd."

Faced with the unambiguous language of the Settlement Agreement, Insignia trots out a parade of "absurd" results that it contends would follow from enforcement of the Agreement.  Opp. 15-16.  These are, quite simply, contrived.

The Agreement does not prevent Insignia from mentioning News America Marketing.  *See* Opp. 16.  Nor does it mean that Insignia would have to pretend that *Insignia I* never happened.  *See id.*  (As the Court may observe, Insignia has already filed one complaint that made no mention of the prior litigation in this Court, and it was the Defendants who called the matter to the Court's attention.)  Rather, the release simply means what it says:  any post-Agreement claim must rest exclusively on *facts* and *conduct* post-Agreement.  Settlement Agreement ¶ 9.  Insignia must marshal post-Agreement conduct that supports a plausible antitrust claim—if it can.

The true absurdity comes in the contrary proposition Insignia argues.  Here is what Insignia claims would be permitted.  In *Insignia I*, Insignia cites alleged exclusionary conduct that caused it to suffer lost profits, claims that it settles for north of $100,000,000 and a set of behavioral conditions to address the future relationship between the parties.

After signing the release that on its face prevented Insignia from not only recycling the settled claims but also from asserting the underlying conduct in another case, Insignia waits one month and then files a new lawsuit claiming that it failed to win two new retail accounts. Insignia could cite no post-release conduct by Defendants, not plead any violation of a behavioral condition, and instead repeat the same underlying allegations, saying that it continues to suffer damage. According to Insignia, regardless of what prohibitions it explicitly agreed to, the underlying conduct that formed the basis for settled claims may serve as an evergreen source for "new" claims.

That is an absurd result, and it is not a hypothetical—it is not materially different from what Insignia is trying to do here. The few dated allegations in the Complaint appear to be anecdotal references to recent unsuccessful efforts by Insignia to win a handful of retail accounts. Those could not possibly suffice to state a federal antitrust case alleging foreclosure from the market. *See* Def.'s Mot. for Judgment on the Pleadings 16-17. When pressed recently by Defendants in a discovery conference, Insignia has refused to identify any specifics of post-2011 misconduct. If Insignia could have pleaded viable claims based on post-release conduct, it would have done so.

Recognizing that claims based on post-release conduct are not viable, Insignia has attempted to shore up the Complaint with an overarching set of allegations of anticompetitive intent and systematic efforts to foreclose competition, all based on alleged conduct that was released in February 2011. There is nothing "absurd" about being called upon to plead and prove any new antitrust case based on matters that were

not released in 2011 and that took place after that date.  In fact, that is what Insignia committed to—in exchange for substantial consideration.

If the Released Matters were mere "background material," Opp. 13, then Insignia would not be insisting on its ability to plead these matters in the Complaint.

**C.     Insignia's Source for the Released Matters Is Irrelevant.**

Insignia next asserts that all pre-2011 conduct alleged in the Complaint—of which Insignia admits there is plenty—"has already been made public in other lawsuits."  Opp. 21-22.  That is no defense to Insignia's breach.  What is at issue is not whether Insignia breached a protective order governing the use of discovery materials exchanged in *Insignia I*, but whether it breached the release provision in the Settlement Agreement, in which Insignia released any ability to "assert" underlying *facts* and *conduct*.  It would not matter if counsel asserted these matters only after studying the prior case file or conjuring them in a dream.

Whether the pre-release facts are public or not has nothing to do with the issue before the Court.  Who else knows about those facts or conduct now does not relieve Insignia of its commitments.  The parties agreed that, having already been paid once, Insignia could not assert such conduct against Defendants in the future.  That is exactly what Insignia did in the Complaint.

**D.     There Is No Public Policy Against Enforcing Releases.**

Insignia devotes substantial attention to attacking a provision not found in the Settlement Agreement here.  Insignia argues that the Defendants' construction of the Settlement Agreement would "insulate [Defendants] from full antitrust liability," and

therefore the Settlement Agreement is void as contrary to public policy. Opp. 23-27. But the Agreement does not immunize the Defendants.

Defendants' Motion asks the Court to enforce the Settlement Agreement provision that requires that Insignia not assert pre-2011 facts or conduct underlying the Released Matters. That would leave Defendants subject to the enforcement of claims based on events of the last 8 years. If Insignia can plead and prove an antitrust case based on post-release conduct, the Settlement Agreement would not limit the Defendants' liability. Insignia's argument that limiting this lawsuit to post-release conduct would be tantamount to granting antitrust "immunity" to the Defendants underscores that Insignia itself has doubts about whether it can state a claim based on events since 2011.

No one disputes that contracts that "absolve one party from liability for future violations of the anti-trust statutes" are against public policy. *Fox Midwest Theatres v. Means*, 221 F.2d 173, 180 (8th Cir. 1955). That is not what the Settlement Agreement does. It simply prohibits Insignia from asserting pre-2011 facts or conduct in trying to prosecute a claim for an antitrust violation that allegedly accrued after 2011. And it is nothing like the hypothetical agreement mentioned in a footnote in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). There, the Supreme Court noted that an *arbitration* agreement creating an arbitral forum that wholly disclaimed the future application of federal law may violate public policy. *Id.*

Nothing in the pending Motion or the Settlement Agreement calls upon the Court to immunize post-release conduct. The Third Circuit's decision in *Bowersox Truck Sales and Serv., Inc. v. Harco Nat'l Ins. Co.*, 209 F.3d 273 (3d Cir. 2000), is entirely beside the

point.  The settlement there released Harco "of and from any and all past, present *and future* actions."  *Id.* at 275 (emphasis added).  Here, the parties have not foreclosed post-2011 antitrust liability; they have only agreed that Insignia will not recycle pre-2011 facts or conduct to try to advance such a claim.

Nor is *Honeywell, Inc. v. Ruby Tuesday, Inc.*, 43 F. Supp. 2d 1074 (D. Minn. 1999) relevant here.  For a contract governed by Alabama (not Minnesota) law, the *Honeywell* court construed a prospective liability limitation provision to permit a claim based on Honeywell's "intentional, willful or wanton acts," *id.* at 1079.  The Settlement Agreement here contains no liability limitation regarding future conduct for the Court to strictly construe.

Nothing in the Settlement Agreement creates immunity for future conduct. Nothing stops Insignia from recovering for a new antitrust violation, if it can plead one without relying on Released Matters and the conduct underlying those matters.  What Insignia cannot do—and what it agreed not to do—is to collect for the same alleged conduct twice:  first as evidence or conduct underlying a set of claims that were released in 2011 and second, as evidence or conduct underlying a "new" set of claims rooted in Released Matters, with some recent anecdotes tacked on.  Minnesota law disfavors double recoveries.  *See, e.g.*, *Toyota-Lift of Minn., Inc. v. Am. Warehouse Sys., LLC*, 868 N.W.2d 689, 696 (Minn. Ct. App. 2015).

The cases disfavoring contracts that immunize future antitrust violations have no application here.

Insignia broadly asserts that "any" contract that limits a party's ability, or even incentive, to litigate claims of antitrust violations is "void" as against public policy. Opp. 2-3. That assertion is wildly overstated. Were that so, no antitrust settlement would be enforceable. Parties enter contracts to release claims every day, which is no surprise because "the policy of the law . . . favors settlement and compromise of litigation." *United States v. Pfizer Inc.*, 560 F.2d 319, 322-23 (8th Cir. 1977). Federal law fully supports settlement of antitrust cases and giving full effect to the releases that the parties enter. *See Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 891-92 (3d Cir. 1975) (the "public interest in the vigilant enforcement of the antitrust laws" does not militate against enforcement of releases). There is no inconsistency between putting pre-release matters to rest and leaving post-release conduct subject to antitrust enforcement.

There is nothing novel about a release impacting post-settlement claims. Even when dealing with enforcement of a general release, without the explicit language found in the second half of Paragraph 9 of the Settlement Agreement, courts "enforce[] even general releases to bar antitrust claims predicated on *continuing violations of pre-release* conduct." *Xerox Corp. v. Media Sciences, Inc.*, 609 F. Supp. 2d 319, 326 (S.D.N.Y. 2009) (emphasis in original) (citing authorities); *see Marketing Assistance Plan*, 338 F. Supp. at 1022 ("No one would reasonably expect the consequences of pre-release conduct to cease as of the day of the release[.]"). Even a general release would limit a plaintiff from relying on pre-release conduct, but in this case, the parties explicitly agreed that Insignia would not even attempt to assert facts or conduct underlying Released Matters in any subsequent proceeding, in any court (let alone the same one).

13

Insignia's arguments for why it has not breached all share one common fundamental deficiency: they ignore the explicit language in the Settlement Agreement that barred Insignia from doing what it concededly did—whip up a "new" complaint based on the conduct underlying the matters released in 2011. Insignia asks the Court to ignore what the Settlement Agreement says or, when that fails, to pretend that the Settlement Agreement contains provisions not found in its text, releasing future conduct.[2]

Insignia spends much of its brief asking the Court to rewrite the Settlement Agreement, but not a paragraph or even a word taking issue with the side-by-side comparisons in Defendants' opening Memorandum demonstrating that the Complaint asserts facts and conduct from *Insignia I*. Insignia plainly did breach the Settlement Agreement, and the Court should so find.

## II. THE COURT SHOULD GRANT DISMISSAL UNDER RULE 12(c).

Rule 12(c) provides an appropriate vehicle to remedy Insignia's breach. Insignia's arguments that somehow the Defendants should not now be permitted to seek this relief are without merit.

### A. Defendants Counterclaimed To Bring the Settlement Agreement to the Court.

Insignia complains that Defendants answered the Complaint instead of moving to dismiss, suggesting that this means that Defendants had no issues with the Complaint, or

---

[2] Nor is there any "tie" here to be resolved against enforcement of the release. Opp. 18. The plain language of the release requires Insignia to make a case without relying on any pre-2011 facts or conduct. Settlement Agreement ¶ 9. Insignia's half-hearted arguments about "ambiguity" are undermined by the fact that Insignia moved under Rule 12(c).

somehow rendering this Rule 12(c) motion "too late." Opp. 10-13. The docket reflects that, on the same day and in the same pleading in which Defendants answered, they filed a counterclaim to bring the Settlement Agreement into this case.

Insignia makes clear in its Opposition why it was appropriate to file a counterclaim bringing *Insignia I* and the Settlement Agreement to the attention of the Court; Insignia even now is challenging Defendants' ability to cite materials from *Insignia I* as "beyond" the pleadings in this case. *See* Opp. 4. Insignia would have only thrown up more procedural objections had the Defendants attempted to enforce the *Insignia I* Settlement Agreement through a motion to dismiss.

**B.     The Settlement Agreement Is In Full Force and Effect.**

Insignia makes a passing reference on one page of its Opposition to a "breach" by Defendants, then says that somehow the entire Settlement Agreement is not enforceable. Opp. 22. This does not appear to be a serious argument.

The Settlement Agreement itself contained certain behavioral conditions as well as a procedure for raising any violations of those conditions. Settlement Agreement ¶ 7 & Ex. C. Insignia did not raise any purported breach using the designated procedures. Nor did Insignia assert a breach of contract in the Complaint. In any event, the two-sentence assertion of breach does not end the enforceability of the entire Settlement Agreement.

To justify terminating the entire Agreement, Insignia would have to demonstrate that any purported breach was material, that is, "one of the primary purposes of [the Agreement] is violated." *Reuter v. Jax Ltd.*, 711 F. 3d 918, 921 (8th Cir. 2013) (quoting *Hous. and Redevelopment Auth. of St. Cloud v. Tesfaye*, 2010 WL 1753271, at *4 (Minn.

15

Ct. App. May 4, 2010)).  The only behavioral condition that Insignia identifies is Defendants' purported exercise of a right of first refusal.  *See* Opp. 22.  But, "even when express conditions of the contract are violated, the breach is not necessarily material." *BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 728-29 (Minn. Ct. App. 2011).  Even if such an event were proven, a single instance of a breach of one provision could not be sufficiently material to void a nine-figure contract.

The Settlement Agreement is in effect.  Insignia's assertion of a breach is just that, but Insignia cannot grant its own motion for summary judgment to void the Agreement. The Agreement is in force and before the Court.  Insignia's breach is confirmed by the language of the Agreement and the Complaint, the record in *Insignia I*, and the record on this Motion.  The Court can and should enforce the Agreement.

### C.      Rule 12(c) Serves To Enforce Prior Settlement Agreements.

Insignia does not seriously contest that Rule 12(c) is an appropriate vehicle for enforcing a prior settlement agreement.  *See, e.g.*, *Lansing v. Wells Fargo Bank, N.A.*, 2016 WL 3406085 (D. Minn. June 17, 2016); *John v. MainGate, Inc.*, 2013 WL 6119072 (D. Minn. Nov. 21, 2013).  Insignia has done just what the courts in such cases proscribe: file a new lawsuit based on released matters.  The fact that there are allusions to matters from 2018 and 2019 in the same pleading, *see* Opp. 8-10, does not change that deficiency, particularly where, as here, Insignia's own conduct has confirmed that it does not believe that the allegations of non-released material would suffice to state a claim.

Defendants are in fact seeking judgment on the pleadings, including dismissal of the Complaint.  Dismissal of the entire Complaint is appropriate because Insignia

unquestionably is relying upon pre-2011 matters—Defendants' Opening Memorandum demonstrates this, and Insignia does not deny it—and much of the remainder of the Complaint consists of undated allegations that also may be in violation of the Settlement Agreement. What is left over likely will not suffice to state a claim. Based on Insignia's own conduct in this proceeding, it appears that Insignia recognizes the same problem.

The fact that Defendants suggest dismissal be accompanied by an instruction that any amended complaint respect the limits imposed by the Settlement Agreement, with dated allegations, does not take this case outside the authority Defendants have presented. It is in fact more modest relief than was awarded in the cases upon which Defendants rely. *See Lansing*, 2016 WL 3406085, at *1 (dismissal with prejudice); *John*, 2013 WL 6119072, at *3 (concluding plaintiff failed to state claim because he released it).

In any case, Insignia cannot seriously question whether Rule 12(c) is an appropriate vehicle for enforcing a prior settlement agreement and securing dismissal of a complaint filed in breach of that agreement.

### D. Insignia Apparently Cannot State a Claim Without the Released Matters.

Insignia asks why the Court should be bothered with the Motion given the "mountain" of allegations of 2018-19 conduct. Opp. 10. Why should the Court require Insignia to refile a complaint in compliance with the Settlement Agreement? Why not just defer all this until after discovery and address it through motions in limine? Because everything before this Court suggests that Insignia may not be able to state a plausible antitrust complaint based on post-release conduct.

Insignia has certainly known about Paragraph 9 of the Settlement Agreement since 2011. To the extent that Insignia forgot about just how it managed to secure a nine-figure settlement, Insignia was reminded about Paragraph 9 in the Counterclaim that Defendants filed on August 14, 2019. Insignia has known that Defendants would be filing this Motion since late September. If Insignia were interested in proceeding expeditiously to discovery and reaching the merits of any post-2011 claim, it would have amended its Complaint to delete all references to pre-2011 allegations months ago.

The only plausible explanation for why Insignia has chosen to litigate the issue of whether it breached the Settlement Agreement is because it knows that, stripped of Released Matters and underlying facts and conduct, its "mountain" of recent allegations, Opp. 10, does not amount to a molehill. As Defendants have explained, the few dated allegations in the complaint represent Insignia's complaints about competitive losses at a handful of retailers (drawn from a market of thousands). *See, e.g.*, Compl. ¶¶ 7, 37, 50. Insignia's handful of anecdotes do not give rise to an antitrust claim. *See Am. Infra-Red Radiant Co. v. Lambert Indus., Inc.*, 360 F.2d 977, 995-96 (8th Cir. 1966) (noting that "isolated violations" are insufficient to recover under the antitrust laws); *see also* Mot. 16-17 (collecting cases). Even now, in discovery conferences, Insignia refuses to identify

the alleged incidents of Defendants "swooping in" to steal its business.[3]  Stray

examples—even if identified—do not suffice to support a plausible claim of wholesale

market foreclosure.  *See id.* at 17-18.

If, as it appears, Insignia cannot state a claim without reliance on pre-release

conduct, then the enforcement of the Settlement Agreement from *Insignia I* is not a

matter that should be deferred until motions in limine.

### E.     The Court Should Require Insignia To Demonstrate It Has a Claim.

The Supreme Court has recognized the unique burdens (discovery and otherwise)

that antitrust cases impose on defendants, as well as on the courts.  The Court has

accordingly encouraged district courts to scrutinize the plausibility of antitrust complaints

at the earliest opportunity.  *Twombly*, 550 U.S. at 558-59; *Ginsburg v. InBev NV/SA*, 623

F.3d 1229, 1299 (8th Cir. 2010) (acknowledging "unusually high cost of discovery in

antitrust cases"); *Gross v. Waywell*, 628 F. Supp. 2d 475, 492 (S.D.N.Y. 2009) (noting

that district courts serve "gatekeeper function" under antitrust laws).  Here, this Court has

been prevented from exercising that function—and Defendants' right to challenge the

---

[3] Insignia assures the Court that "discovery [is] underway."  Opp. 1.  The Court should know what that looks like.  In a conference on initial disclosures, Insignia refused to disclose which retail accounts it contends were "swooped in" on by Defendants.  Insignia then served discovery requests seeking information about every retail relationship Defendants have, and when Defendants suggested that a reasonable search ought to focus instead on the retail accounts that were the subject of unlawful foreclosure activity by Defendants, Insignia responded, "Defendants know best with which CPGs and retailers they had and continue to have contractual relationships."  Having "contractual relationships" is not an antitrust violation.  This is discovery in search of a lawsuit.  It is why the Supreme Court, in the context of antitrust litigation, urged the federal courts to closely scrutinize complaints and exercise a gatekeeper function.

substance of the Complaint has been compromised—by Insignia's insistence on wrapping its anecdotes in allegations about intent, effect, and systemic market foreclosure that were all barred by the Settlement Agreement.

It is unclear how much of the Complaint was filed in violation of the Settlement Agreement, but Insignia does not challenge any of the portions Defendants have already identified. The Court should grant Defendants' motion, dismiss the Complaint, and direct Insignia to comply with the Settlement Agreement in any future filing by dating its allegations of alleged post-release conduct. If Insignia concludes that it can file an antitrust suit consistent with its commitments and its obligations under Rule 11, then the Court will have the opportunity to exercise its gatekeeper function. The first step is to dismiss the Complaint that was filed in breach of the Settlement Agreement.

## CONCLUSION

Defendants respectfully request the Court grant their Motion for Judgment on the Pleadings, deny Insignia's Cross-motion for Judgment on the Pleadings, and dismiss Insignia's Complaint.

Dated: December 2, 2019

s/ Todd Wind
Todd Wind (#0196514)
Nicole M. Moen (#0329435)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Tel: 612.492.7000
Fax: 612.492.7077
twind@fredlaw.com
nmoen@fredlaw.com

William B. Michael (admitted *pro hac vice*)
NY Bar No. 4296356
**PAUL WEISS RIFKIND WHARTON &
GARRISON**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:   212.373.3648
Fax:   212.492.0648
wmichael@paulweiss.com

Kenneth A. Gallo (admitted *pro hac vice*)
NY Bar No. 430369
Jane B. O'Brien (admitted *pro hac vice*)
NY Bar No. 4484457
Jeannie S. Rhee (admitted *pro hac vice*)
District of Columbia Bar No. 464127
**PAUL WEISS RIFKIND WHARTON &
GARRISON**
2001 K Street NW
Washington, DC 20006-1047
Tel:   202.223.7356
Fax:   202.204.7356
kgallo@paulweiss.com
jobrien@paulweiss.com
jrhee@paulweiss.com

Gerson A. Zweifach (admitted *pro hac vice*)
District of Columbia Bar No. 349266
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street NW
Washington, DC 20005
Tel:   202.434.5000
Fax:   202.434.5029
gzweifach@wc.com

*Attorneys for Defendants*