## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

INSIGNIA SYSTEMS, INC.,

               Plaintiff,

    v.

NEWS CORPORATION, NEWS AMERICA
MARKETING FSI L.L.C., and NEWS
AMERICA MARKETING IN-STORE
SERVICES L.L.C.,

               Defendants.

Case No.: 19-cv-1820 MJD/BRT

**JURY TRIAL DEMANDED**

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

## [REDACTED VERSION]

# TABLE OF CONTENTS

ARGUMENTS AND AUTHORITIES ................................................................. 3

I.  NEWS'S COUNTERCLAIM SHOULD BE DISMISSED BECAUSE
    INSIGNIA DID NOT BREACH THE SETTLEMENT AGREEMENT ............... 3

    A.   The settlement agreement does not govern post-release claims. .................. 3

    B.   The rule of strictly construing release provisions and the public
         interest in robust enforcement of the antitrust laws support a ruling
         in Insignia's favor. ....................................................................... 7

II. NEWS CANNOT SHOW DAMAGES FROM INSIGNIA'S ALLEGED
    BREACH ..................................................................................... 10

III. INSIGNIA'S COMPLAINT IS MORE THAN SUFFICIENT TO
     PROCEED ................................................................................... 11

    A.   News refuses to address the complaint's numerous post-release
         allegations. ................................................................................ 11

    B.   The complaint contains sufficient post-release allegations to
         survive News's motion. ................................................................. 15

CONCLUSION ..................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Infra-Red Radiant Co. v. Lambert Indus., Inc.*,
360 F.2d 977 (8th Cir. 1966) ...................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 12, 13

*Double D Spotting Serv., Inc. v. Supervalu, Inc.*,
136 F.3d 554 (8th Cir. 1998) ...................................................................................... 14

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) ...................................................................................... 14

*Franklin High Yield Tax-Free Income Fund v. Cty. of Martin, Minn.*,
152 F.3d 736 (8th Cir. 1998) ...................................................................................... 12

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
386 F.2d 757 (6th Cir. 1967) ........................................................................................ 8

*Gutter v. E.I. DuPont de Nemours & Co.*,
No. 95-2152-CIV, 2001 WL 36086590 (S.D. Fla. Jan. 31, 2001)................................. 8

*In re Am. Express Merchants' Litig.*,
634 F.3d 187 (2d Cir. 2011) ......................................................................................... 7

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
383 F. Supp. 3d 187 (S.D.N.Y. 2019) ..................................................................... 1, 13

*In re SRC Holding Corp.*,
545 F.3d 661 (8th Cir. 2008) ........................................................................................ 5

*Insignia Sys., Inc. & State of Minn. v. News Am. Mktg. In-Store, Inc. et al.*,
Case No. 0:04-cv-04213-JRT-AJB, Dkt. 128 ......................................................... 4, 11

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984) ........................................................................................................ 13

*Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322 (1955) ..................................................................................................... 8

*Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*,
  789 F. Supp. 2d 1133 (D. Minn. 2011) ...................................................................... 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ............................................................................................................ 9

*Mktg. Assistance Plan, Inc. v. Assoc'd Milk Producers, Inc.*,
  338 F. Supp. 1019 (S.D. Tex. 1972) ................................................................................ 8, 9

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015), *cert. denied* 136 S. Ct. 2485 (2016) .......................... 13

*Stamatakis Indus., Inc. v. King*,
  965 F.2d 469 (7th Cir. 1992) ............................................................................................ 13

*Three Rivers Motors Co. v. Ford Motor Co.*,
  522 F.2d 885 (3d Cir. 1975).............................................................................................. 9

*TMW Enters., Inc. v. Fed. Ins. Co.*,
  619 F.3d 574 (6th Cir. 2010) ............................................................................................ 6

*United States v. Pfizer Inc.*,
  560 F.2d 319 (8th Cir. 1977) ............................................................................................ 8

*Valassis Commc'ns, Inc. v. News Corp.*,
  No. 17-cv-7378 (PKC), 2019 WL 802093 (S.D.N.Y. Feb. 21, 2019) .................. 16, 17

*Wendt v. Walden Univ., Inc.*,
  No. CIV. 4-95-467 JGL, 1996 WL 84668 (D. Minn. Jan. 16, 1996) .......................... 8

*Xerox Corp. v. Media Sci., Inc.*,
  609 F. Supp. 2d 319 (S.D.N.Y. 2009)............................................................................. 9

**Rules**

Fed. R. Civ. P. 8...................................................................................................... 1, 12, 13

Fed. R. Civ. P. 12 ............................................................................................................ 1

Fed. R. Civ. P. 12(b) ...................................................................................................... 13

Fed. R. Civ. P. 12(c) ...................................................................................................... 12

Fed. R. Civ. P. 16............................................................................................................ 10

News admits in its reply brief that the settlement agreement does not bar Insignia's claims, which seek relief for News's post-release illegal conduct. *See, e.g.*, News Reply ("Rep."), at 6 ("post-release conduct is not released").[1] News also agrees that the complaint contains several particularized allegations of News's post-release conduct. *Id.* at 9, 18. But News does not seriously deal with these allegations or with Insignia's authorities showing they more than satisfy Rule 8's notice-pleading standard. In fact, New does not cite a single case in either of its briefs where claims were dismissed with detailed allegations like those in Insignia's complaint. *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 218 (S.D.N.Y. 2019) ("There are no heightened pleading requirements for antitrust cases, and dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." (alteration and citations omitted)). And News all but drops its initial request for Insignia to "re-file" a new complaint, after Insignia pointed out that the request had no basis in Rule 12 and was pointless given News's answer to the current complaint. *See* Insignia Opp. & Cross-Motion ("Opp."), at 6-8, 10-12. This should be the end of News's motion for judgment on the pleadings.

The only remaining question is on Insignia's cross-motion, seeking dismissal of News's counterclaim for breach of the settlement agreement. According to News, the

---

[1] *See also id.* at 11 ("If Insignia can plead and prove an antitrust case based on post-release conduct, the Settlement Agreement would not limit the Defendants' liability."); *id.* ("[n]o one disputes" News is not absolved for future violations); *id.* at 12 ("The Settlement Agreement here contains no liability limitation regarding future conduct . . . ."); *id.* ("Nothing in the Settlement Agreement creates immunity for future conduct. Nothing stops Insignia from recovering for a new antitrust violation.").

breach was apparently the inclusion of allegations in the complaint concerning News from before 2011, including even benign references to News's market share, references to contracts, or even the fact that Insignia had previously sued News. *See* News Motion ("Mot.") 8-9; Opp. 17-18. Unsurprisingly, there is no basis for News's argument. Indeed, from front to back, nothing in the settlement suggests that it applies to post-release claims. News doesn't dispute that the settlement agreement on its first page plainly states that it ████████████████████████████████████████████████████████ and not afterward. News actually admits that this language means "post-release conduct is **not** released." Rep. 6 (emphasis added). News doesn't dispute that the very release provision it relies on expressly defines what's at issue— ████████████████████████████ ███████████████████████ not afterward.

The sentence in the release that News relies on does not say anything about disputes concerning post-settlement conduct—which is unsurprising given the rest of the settlement agreement doesn't either. Likewise, neither the sentence in particular nor the settlement agreement more broadly refers to what can go in "pleadings" at all, or even what can or should be turned over in discovery. It would have been easy enough to include these things in the contract. In fact, News in its reply brief offers several formulations of provisions that would have gotten closer to the mark, but which are **not** in the settlement agreement that the parties actually executed.[2] As Insignia has said before, without any response from News, if News wanted to negotiate a provision in the settlement agreement that applied to

---

[2] Rep. 6 ("post-release claims would have to rise and fall based exclusively on post-release conduct"); *id.* at 8 ("any post-Agreement claim must rest exclusively on facts and conduct post-Agreement").

non-released future disputes and what Insignia could or couldn't say in such a case, it could have done so. But it didn't.

The Court should no longer allow News to use the settlement agreement to delay these proceedings and to hinder Insignia's ability to seek relief for News's anticompetitive conduct that it has engaged in as recently as this year. *See, e.g.*, Compl. ¶¶ 7, 26, 28, 37, 39-40, 46, 58, 59. The Court should deny News's motion and dismiss its counterclaim.

## ARGUMENTS AND AUTHORITIES

## I. NEWS'S COUNTERCLAIM SHOULD BE DISMISSED BECAUSE INSIGNIA DID NOT BREACH THE SETTLEMENT AGREEMENT

### A. The settlement agreement does not govern post-release claims.

News seeks to assign expansive meaning to Paragraph 9's covenant not to ██████ ███████████████████████████████████████████████████████████████████████ ███████ Ex. A to Dkt. 50 ("Ex. A"), at 4. But the text, structure, and context of the settlement agreement do not support News's reading.

First, as Insignia has explained, neither Paragraph 9 nor any other paragraph in the settlement agreement purports to address any post-release claim. *See* Opp. 14. The recitals on the very first page articulate that the agreement's purpose is to ███████████████████ ████████████████████████████████████████ Ex. A, at 1. This is the same limitation contained in Paragraph 9's release provisions themselves, which expressly define "Released Matters" to be claims and disputes ██████████████████████████ In fact, this defined term is right in the middle of Paragraph 9's second sentence, which News exclusively relies on. And as Insignia made clear in its opening brief, the purpose of the

3

second sentence was to capture backdoor attempts to undermine the settlement's release of claims through that date.

News says that this construction renders the sentence "meaningless" and duplicative of the first sentence. Rep. 7. But this isn't true. To give one example that would fall under only the second sentence: If Insignia, in connection with a governmental body's investigation into News's pre-release illegal conduct, attempted to introduce evidence on News's pre-release illegal conduct from the settled lawsuit, Insignia would run afoul of the second sentence but not the first. That is because the first sentence is limited to claims advanced by Insignia itself while the second sentence encompasses efforts by Insignia to ████████████████████████████████████████████████████████████████

████████████████████████████████

Notably, the second sentence expressly refers to proceedings before a ████████████████████████████ which was not just a hypothetical concern at the time of the agreement. In *Insignia I*, the Attorney General of Minnesota intervened in the lawsuit, filing its own complaint to "enforce Minnesota's laws concerning unfair, discriminatory or other unlawful practices in business, commerce or trade" against News. *See Insignia Sys., Inc. & State of Minn. v. News Am. Mktg. In-Store, Inc. et al.* ("*Insignia I*"), Case No. 0:04-cv-04213-JRT-AJB, Dkt. 128, ¶ 1 (filed Oct. 27, 2006). The Attorney General's complaint in intervention alleged that News had "intentionally engaged in a series of deceptive trade practices to harm competition in the area of in-store advertising and promotional products," including by "falsely and intentionally misrepresent[ing] Insignia's" business performance to retailers and CPGs. *Id.* at ¶¶ 10, 14-15. This context

explains why Paragraph 9's second sentence is written the way it is. But what isn't mentioned in that sentence, or in the agreement anywhere else, is a prohibition on cases involving News's post-settlement conduct.

Insignia also emphasized that release provisions often contain "belt and suspenders" provisions that may overlap in certain respects. Opp. 15. The Eighth Circuit has recognized this very point, and has refused to deviate from the plain meaning of a contractual provision even where doing so would render some other contractual provision "to some degree redundant." *In re SRC Holding Corp.*, 545 F.3d 661, 670 (8th Cir. 2008). There, the court was tasked with interpreting two different coverage provisions that seemed to be duplicative in scope. Refusing one party's suggestion that the court deviate from the "unqualified, plain-language reading" of the first provision to save the second from being "without effect," the court identified a narrow set of claims—akin to the hypothetical presented above—that fell under the scope of only one of the provisions. *Id.* at 669. The court further noted: "And any overlapping in the coverage excluded by [the two provisions] is not sufficient to disregard the broad and unqualified language of [the first provision]. Nothing prevents the parties from using a 'belt and suspenders' approach in drafting the exclusions, in order to be 'doubly sure.'" *Id.* at 670.

Here, even outside of the issue raised in this case, the release provisions are rife with repetition that News now would say is "absurd" but, at the time of the agreement, insisted on. The first sentence, for example, mentions ███████████████████████████ ████████████████████████████████████████████████ ████████ etc. Ex. A, at 4. The sentence releases both ██████████████████████

████████████████████████ *Id.* Then in the second sentence, there is yet another ████████████████████████ News based on the Released Matters, which one would think would be pellucidly clear from the first sentence. Again, despite all of this explicit repetition, News never saw fit, not even once, to say anything about what Insignia could say or do in a lawsuit concerning News's post-settlement violations of the law. News's argument that Paragraph 9's second sentence may in some way overlap with the first is no reason to render a different construction. *See, e.g.*, *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 577 (6th Cir. 2010) (observing that "redundancies abound" throughout a contract).

In a last-ditch effort to support its expansive reading of the settlement agreement, News offers a hypothetical that is nothing like Insignia's claims in this case. News tries to analogize this case to a scenario in which "Insignia wait[ed] one month [after settling] and then file[d] a new lawsuit claiming that it failed to win two new retail accounts. **Insignia could cite no post-release conduct by Defendants** … and instead repeat[ed] the same underlying allegations." Rep. 9 (emphasis added). Of course, the best hypothetical News can devise dooms its argument on its own motion. In News's hypothetical, the problem is that the complaint "could cite no post-release conduct by Defendants," which is a basic pleading defect, not an issue involving the settlement agreement. Here, by contrast, Insignia does have allegation upon allegation of post-settlement illegality, all of which News steadfastly refuses to address. As discussed below, that's exactly why News's motion for judgment on the pleadings can be easily denied.

**B. The rule of strictly construing release provisions and the public interest in robust enforcement of the antitrust laws support a ruling in Insignia's favor.**

The well-recognized rule of narrowly construing releases, as well as public policy, further supports Insignia's reading of the settlement agreement—that it governs only ██████████████████████████████████████████████ as stated on its very first page. Ex. A, at 1.

News does not dispute that releases should be strictly construed, arguing only that the settlement agreement here lacks a "liability limitation regarding future conduct" to strictly construe. Rep. 11-12. Likewise, News acknowledges that "contracts that 'absolve one party from liability for future violations of the anti-trust statutes' are against public policy," but insists "[t]hat is not what the Settlement Agreement does" because it does not contain a "liability limitation regarding future conduct." *Id*. But News is in fact seeking to use the agreement as a muzzle for the purposes of limiting the type of allegations and evidence that may be used in this case. After all, News wouldn't be raising its argument if it didn't think that by making it impossible for Insignia to even refer to News's market share prior to 2011, or any contract that extends back before that year, or whatever else News can think of moving forward, it won't score a tactical advantage in its attempt to immunize itself for its post-settlement wrongdoing. In fact, News's motion is an attempt to improperly have this case, which undeniably seeks relief for post-release conduct, dismissed in its entirety. *But see, e.g.*, *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 197 (2d Cir. 2011) (contracts that operate to waive future liability "in practice" also void).

The public policy that News itself recognizes is yet another reason to reject News's claim that Insignia breached the contract by filing its complaint.

News has not advanced any argument to undermine the logic of why cases—ranging from *Lawlor* and *Gaines* (no prospective waiver of antitrust liability) to *Wendt* and *Gutter* (no concealment of evidence in the public interest through private settlement agreements)—should not apply here.[3] First of all, as with so many of Insignia's arguments, News overlooks Insignia's citations to instances where courts have struck down confidentiality provisions operating to conceal evidence affecting the public interest. Opp. 25-26. Second, News cites some disparate cases with generalities about "settlement and compromise of litigation," Rep. 13, but none of its cases are inconsistent with what Insignia argues: that where a settlement agreement operates as a waiver of antitrust liability or a gag order regarding evidence in the public interest, that agreement is void as against public policy.

For instance, News cites *United States v. Pfizer Inc.*, but that court recognized that the "cause of judicial economy" embodied in settlement "does not override" other fundamental principles like "the right of any litigant to obtain a fair trial in fact as well as in appearance." 560 F.2d 319, 323 (8th Cir. 1977); *see also Mktg. Assistance Plan, Inc. v.*

---

[3] *See* Opp. 25-27; *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955) ("a partial immunity from civil liability for future [antitrust] violations" is contrary to public policy); *Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967) (contracts "executed in a fashion calculated to waive damages arising from future violations of the antitrust laws, would be invalid on public policy grounds"); *Wendt v. Walden Univ., Inc.*, No. CIV. 4-95-467 JGL, 1996 WL 84668, at *2 (D. Minn. Jan. 16, 1996) ("Defendants should not be able to buy the silence of witnesses with a settlement agreement"); *Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-2152-CIV, 2001 WL 36086590, at *1 (S.D. Fla. Jan. 31, 2001) (confidentiality provisions cannot be "utilized as a shield to obstruct the discovery process").

*Assoc'd Milk Producers, Inc.*, 338 F. Supp. 1019, 1023 (S.D. Tex. 1972) ("The release does not bar the assertion by any of the parties in these categories of any post-release causes of actions for damages caused by renewed monopolistic activities by the defendants in either the first action or this action."); *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 891-92 (3d Cir. 1975) (recognizing the parties' general ability to settle a case in the context of conducting choice-of-law analysis on which state's law should govern construction of release); *Xerox Corp. v. Media Sci., Inc.*, 609 F. Supp. 2d 319, 326 (S.D.N.Y. 2009) (citing two cases where a release was deemed not to be "part and parcel" of an alleged antitrust conspiracy).

Finally, News tries to distinguish the Supreme Court's warning in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), on the ground that that case involved an arbitration agreement. Rep. 11. But *Mitsubishi*'s broader statements on the importance of the private enforcement of the antitrust laws are universally applicable: "A claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general who protects the public's interest." *Id.* at 635 (citation omitted).

Where the text of the settlement agreement limits its scope to █████████████ ████████████████████████████ release provisions are required to be strictly construed, and public policy prohibits the deployment of that agreement to immunize antitrust liability, the settlement agreement cannot be rewritten to apply to Insignia's post-settlement claims. News's counterclaim should be dismissed.

## II. NEWS CANNOT SHOW DAMAGES FROM INSIGNIA'S ALLEGED BREACH

News has failed to offer any response to Insignia's argument that News cannot prove damages to support its counterclaim. Insignia explained that the pre-2011 information in the complaint consisted of material "already been made public in other lawsuits." Opp. 21. Accordingly, Insignia pointed out, "News cannot possibly show any damages resulting from Insignia's actions." *Id.* News makes no argument in response, saying only that "Insignia's source for the released matters is irrelevant"—even if Insignia asserted pre-2011 facts after "conjuring them in a dream."[4] Rep. 10. Where News cannot prove damage from Insignia's alleged breach of contract, the counterclaim must be dismissed. Opp. 21-22 (collecting cases).

Further, even assuming that Insignia removed references to pre-2011 information from the complaint, that would not bar Insignia from arguing that the same pre-2011 material remains relevant and subject to discovery. Just as the settlement agreement does not mention pleadings, the agreement mentions nothing about discovery obligations, which extend beyond what evidence may or may not eventually be admissible at trial. *See* Rule 16 Conf. Tr. 18:20-25 (the Court noting that "information could still be relevant [for discovery] even if there's some bar to introduce something as evidence"). The removal of

---

[4] Of course, News did find the source relevant when it baselessly asserted that Insignia's pre-2011 information "[wa]s clearly sourced in previous pleadings in *Insignia I*." Mot. 18, *see also id.* at 16.

pre-2011 references would also not alter the laundry list of post-2011 allegations in the complaint awaiting News's attention.[5]

## III. INSIGNIA'S COMPLAINT IS MORE THAN SUFFICIENT TO PROCEED

### A. News refuses to address the complaint's numerous post-release allegations.

Insignia's opening brief laid out the exact paragraphs of the complaint that alleged how News's "ongoing illegal conduct is injuring Insignia's business today." Opp. at 1, 5, 9-10. Still, News refuses to engage with the post-release allegations, instead dismissing them en masse as mere "complaints about competitive losses at a handful of retailers," Rep. 18; *see also id.* at 9.

The losses that Insignia suffered were anything but "competitive." Indeed, News overlooks the true reason for those losses as alleged over and over again in the complaint. In Paragraph 39, for instance, Insignia pled that News amended its contract with a grocery chain only after learning that Insignia was in late-stage discussions with the chain to enter into a direct distribution contract. That bad-faith amendment precluded Insignia "from offering a national product with this retailer in 2019." Compl. ¶ 39. In Paragraphs 46-47, Insignia pled that earlier this year, News threatened withdrawal of its contractual obligations with a drugstore if it bought ISPs from Insignia as well. *Id.* at ¶¶ 46-47. Given

---

[5] News also argues that its breach of Paragraph 3 of the settlement agreement is not a "material" breach. Rep. 15. Given that the central issue in *Insignia I* was News's anticompetitive tactics, including the use of right-of-first-refusal provisions in its retail contracts, *see Insignia I*, 661 F. Supp. 2d 1039, 1056 (D. Minn. 2009), its argument that a breach of the paragraph prohibiting right-of-first-refusal provisions is not "material" is hard to take seriously. Relatedly, News fails to explain the double standard that Insignia pointed out in its opening brief: While News continues to argue that claims of breach of the settlement agreement must be raised to now-retired Magistrate Judge Boylan, News itself filed its counterclaim before this court. *See* Opp. 11 n.3.

News's threat, the drugstore had to "reject[] Insignia's proposal because it could not risk damaging its relationship with News," the dominant player with 97% share of the ISPs market. *Id.* at ¶ 47. In Paragraphs 57-58, Insignia pled that News blocked CPGs from purchasing Insignia products because they were "not approved" under News's contract with the CPG, despite the fact that "this alleged approval authority was in direct conflict with the terms of the CPG's contracts with News and Insignia." *Id.* at ¶ 58.

These are just a few of the complaint's specific allegations about News, in the post-settlement period, wielding its monopolistic market power to intimidate third parties from doing business with Insignia—News's only remaining competitor in the national ISPs market. There is nothing "competitive" about these losses Insignia suffered when they were the direct result of News's post-release anticompetitive conduct.

In seeking to dismiss the complaint under Rule 12(c), News must accept as true all facts pled by Insignia and draw all reasonable inferences from the pleadings in Insignia's favor. *Franklin High Yield Tax-Free Income Fund v. Cty. of Martin, Minn.*, 152 F.3d 736, 738 (8th Cir. 1998). Here, Insignia has pled that News's illegal conduct, not market competition, was the cause of its business losses. To the extent that News refuses to accept that as true, News is turning the cause of Insignia's business harm into a factual dispute that must be resolved through discovery and trial, not at the pleading stage.

Further ignoring the pleading standard, News also continues to emphasize that Insignia's allegations are "few" in number. But "Rule 8 does not require Insignia to allege every instance of News's misconduct to survive dismissal." Opp. 8 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And while News leans on *Twombly* to encourage

dismissal of the complaint before "antitrust discovery," Rep. 2, *Twombly* "does not impose a probability standard at the motion-to-dismiss stage," *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015), *cert. denied* 136 S. Ct. 2485 (Mem) (2016). "[I]t is not our task at the motion-to-dismiss stage to determine 'whether a lawful alternative explanation appear[s] more likely' from the facts of the complaint. Post-*Twombly* appellate courts have often been called upon to correct district courts that mistakenly engaged in this sort of premature weighing exercise in antitrust cases." *Id.* (citation omitted) (collecting cases). Indeed, even after *Twombly*, this district has recognized that "courts are hesitant to dismiss antitrust actions before the parties have had an opportunity for discovery, because the proof of illegal conduct lies largely in the hands of the alleged antitrust conspirators." *Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*, 789 F. Supp. 2d 1133, 1141 (D. Minn. 2011) (citation omitted).

As Insignia has already noted and News has yet again overlooked, News's citation to cases where antitrust plaintiffs failed to prove their cases **after discovery**, and sometimes even **after trial**, does not change the liberal notice-pleading standard of Rule 8. *See* Opp. 8 n.2 (disposing of cases cited in pages 16-17 of News's motion).[6] At the pleading stage, allegations of misconduct similar to those alleged against News have easily survived Rule 12(b) attacks. *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d at 227 (denying Keurig's motion to dismiss, where its competitors

---

[6] Like the other cases distinguished in footnote 2 of Insignia's opening brief, *Jefferson Parish* and *Stamatakis* present instances in which plaintiffs failed to prove their claims after the opportunity for discovery. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 5 (1984) (post-trial); *Stamatakis Indus., Inc. v. King*, 965 F.2d 469 (7th Cir. 1992) (summary judgment, as evident in case history, *see* 944 F.2d 382, 382-83 (7th Cir. 1991)).

alleged that Keurig controls 89% of total unit sales and 93% of total dollar sales in one market); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 452 (4th Cir. 2011) (denying DuPont's motion to dismiss where its competitor, Kolon, pled that DuPont used "multi-year exclusive" supply contracts with the market's "highest volume purchasers" to limit the overall supply of goods available to competition and to limit Kolon "from competition for the most important customers in categories needed to gain a foothold for effective competition to DuPont"). News fails to offer even one case where a complaint with comparable allegations was dismissed. As Insignia already pointed out, the only pleading-stage case News cited involved a complaint alleging antitrust violations based on a single contract in one warehouse: the "Supervalu warehouse in Urbandale, Iowa." *See* Opp. 8 n.2 (distinguishing *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998), cited in Mot. 16). That complaint was dismissed because of the failure to state a "valid relevant market under either federal or state law," *id.* at 561, a legal argument that News has not even raised here, *see* Mot. 3, 17.

News also seeks to narrow the scope of Insignia's claims as if the only form of anticompetitive conduct alleged was "foreclosure from the market." Rep. 9. But as the complaint makes clear, Insignia has pled not only that News has engaged in exclusive dealing (Counts III, IX) but also that News has monopolized the ISPs market (Counts I, II, IV, VII, VIII) and tortiously interfered with Insignia's business (Counts V, VI). News is accordingly liable for any anticompetitive or tortious conduct that caused Insignia damages, including any exercise of its unprecedented 97% stranglehold of the market.

Finally, News's reply cites to *American Infra-Red Radiant*, but it twists the language of a case that has nothing to do with this one. *See* Rep. 18. That case is a fifty-year-old patent case, didn't have to do with pleading at all, and held solely that the defendant there did not produce sufficient evidence on its antitrust counterclaim that the complained-of conduct caused it any injury. *Am. Infra-Red Radiant Co. v. Lambert Indus., Inc.*, 360 F.2d 977, 995-96 (8th Cir. 1966). If that's the best that News has got, it's in trouble. There is no question that Insignia has pled that it was damaged by News's repeated antitrust violations, Compl. ¶¶ 59, 67, 71, 76, 82, 90, 97, 102, 107, 110, and as in any case, Insignia should be given the opportunity in discovery to provide evidence supporting the amount of those damages.[7]

## B. The complaint contains sufficient post-release allegations to survive News's motion.

News seems to have shifted tactics between the filing of its motion and its reply. While the motion complained that News could not "engage" with the complaint because it couldn't distinguish between pre- and post-2011 allegations, Mot. 15, the reply now accuses Insignia of not being able to state a claim without relying on pre-release conduct, Rep. 19. Under its new tactic, News surmises that "[w]hat is left over" after removing the pre-2011 references from the complaint "likely will not suffice to state a claim." *Id.* at 17.

---

[7] In its brief, News mischaracterizes the parties' discussions about discovery. *See* Rep. 9, 19 n.3. While these discussions don't have anything to do with the present motions, for the record, Insignia is happy to provide News information sought through valid discovery, and has never suggested to the contrary. But to the extent News is taking the position that discovery in this case should be limited solely to the examples listed in Insignia's complaint, that is improper. Of course, information concerning the severity and reach of News's illegal conduct rests in its own files. News has no basis to limit or segment its discovery to just those examples in the pre-discovery record.

But as stated above, the complaint suffices to state the alleged claims under federal and Minnesota law. *See supra* Sec. III.A.

Further, the Court need not look beyond *Valassis*, another antitrust case against News imminently going to trial, to know that News's argument that there is "nothing to see here" after 2011 is without merit. *See Valassis Commc'ns., Inc. v. News Corp.*, No. 17-cv-7378 (PKC), 2019 WL 802093, at *13, *15 (S.D.N.Y. Feb. 21, 2019) (dismissing in part News's motion for summary judgment against Valassis's claims of News's misconduct in the 2010-2016 time period). There, the court ruled that Valassis's federal- and state-law antitrust claims against News must proceed to trial because Valassis had "presented sufficient evidence of antitrust injury in the form of exclusion from the ISP market." *Id.* at *10. From the evidence presented, the court found, "a reasonable fact-finder could conclude that [News's] long-term, staggered, exclusive contracts, and preemptive renewals severely limited the number of retailer contracts that became available during Valassis's tenure and caused large retailers … to never become available." *Id.* at *12; *see also Valassis*, Dkt. 338, at 4-5 (filed Nov. 5, 2019) (laying out Valassis's claims— including federal- and state-law monopolization and exclusive dealing claims, as well as tortious interference claim—proceeding to trial).

Incidentally, in that case, News unsuccessfully tried to preclude Valassis from using information prior to February 4, 2010 on the ground that Valassis had entered into its own settlement agreement with News on that date. Specifically, News tried to block the use of its CEO's statements made prior to that date. The *Valassis* court refused to let News turn

the settlement agreement into a gag order, and that court's rationale applies with equal force here:

> Though the statements by News's CEO were made in 2004 and 2007, Valassis's present claims do not arise from these statements or the conduct described therein. **Instead, the statements are offered and considered as some evidence of News's understanding of market dynamics and later intent in adopting market strategies.** In an analogous context, the Second Circuit has held that where the statute of limitations for a Title VII employment discrimination claim expired on a certain date, **"any discrete acts occurring before that date are not actionable,"** but a court may still consider those acts as relevant **"background evidence."**

*Id.* at *2 n.2 (emphasis added) (citations omitted).

## CONCLUSION

Insignia respectfully requests the Court to deny News's motion for judgment on the pleadings, grant Insignia's cross-motion for judgment on the pleadings, and dismiss News's counterclaim.

Dated: December 16, 2019      Respectfully submitted,

*/s/ Gloria Park*
Jerry W. Blackwell (MN Bar No. 186867)
S. Jamal Faleel (MN Bar No. 320626)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 5 5415
Tel: 612-343-3200
Fax: 612-343-3205
blackwell@blackwellburke.com
jfaleel@blackwellburke.com

Daniel E. Gustafson (#202241)
Michelle J. Looby (#0388166)
Joshua J. Rissman (#0391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
Fax: (612) 339-6622

dgustafson@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

William Christopher Carmody (*pro hac vice*)
New York Bar No. 4539276
Arun Subramanian (*pro hac vice*)
New York Bar No. 4611869
Mark Musico (*pro hac vice*)
New York Bar No. 5238001
Y. Gloria Park (*pro hac vice*)
New York Bar No.: 5477047
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-3330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
mmusico@susmangodfrey.com
gpark@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
Texas Bar No. 24102452
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
asalinas@susmangodfrey.com

Hunter Shkolnik (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
hunter@napolilaw.com

*Attorneys for Insignia Systems, Inc.*