# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| INSIGNIA SYSTEMS, INC., | Case No. 19-cv-1820 MJD/BRT |
| Plaintiff, | |
| v. | |
| NEWS CORPORATION, NEWS AMERICA MARKETING FSI L.L.C., and NEWS AMERICA MARKETING IN-STORE SERVICES L.L.C., | |
| Defendants. | |

**Memorandum of Law in Support of
Plaintiff's Motion for Partial Summary Judgment**

**[Redacted]**

## Table of Contents

Preliminary Statement ................................................................................ 1

Background ................................................................................................. 2

Legal Standard .......................................................................................... 5

    I.     Summary Judgment ................................................................. 5

    II.    Principles of Contract Interpretation Applicable to the 2011 Settlement Agreement ........................................................... 5

Argument ................................................................................................... 6

    I.     As a Matter of Law, the 2011 Settlement Agreement Did Not Create an Independent Claim for Breach of the Release or Covenant Not to Sue ........................................................... 6

    II.    News Has Failed to Prove Any Breach of the 2011 Settlement Agreement. .................................................................. 9

           A.    The Complaint Does Not Assert Underlying Facts or Conduct "Supporting the Released Matters." ................... 11

           B.    Discovery Has Confirmed that News Lacks a Coherent Alternative to Insignia's Interpretation ........................... 13

           C.    Any Ambiguity in the Agreement Must Be Construed Against News ...................................................................... 15

           D.    Courts Have Uniformly Refused to Exclude News's Pre-Settlement Conduct Based on Substantially Similar Settlement Agreements .................................................... 18

    III.   News Has Failed to Prove the Remaining Elements of Breach of Contract .......................................................................... 24

           A.    News Has Failed to Prove the Alleged Breaches Caused Damages ...................................................................... 24

           B.    News Has Failed to Prove Its Own Performance of the 2011 Settlement Agreement, Which Precludes Its Counterclaim .................................................................. 27

IV.    News's Requested Relief Violates Public Policy.........................................31

V.    Even If News's Counterclaim Were Allowed to Proceed, News Is
      Not Entitled to Its Requested Relief............................................34

Conclusion ....................................................................................................37

# Table of Authorities

**Cases**

*3M Co. v. Ivoclar Vivadent AG*,
2012 WL 1438989 (D. Minn. Apr. 26, 2012) ........................................................ 35, 36

*In re Am. Express Merchants' Litig.*,
634 F.3d 187 (2d Cir. 2011) ....................................................................................... 31

*Artvale, Inc. v. Rugby Fabrics Corp.*,
363 F.2d 1002 (2d Cir. 1966) .................................................................................... 7, 8

*Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*,
674 N.W.2d 176 (Minn. 2004) ...................................................................................... 6

*Blue Shield of Va. v. McCready*,
457 U.S. 465 (1982) ...................................................................................................... 34

*Brookfield Trade Ctr., Inc. v. County of Ramsey*,
584 N.W.2d 390 (Minn. 1998) ...................................................................................... 5

*Brown v. Diversified Distrib. Sys., LLC*,
801 F.3d 901 (8th Cir. 2015) ...................................................................................... 35

*Bukuras v. Mueller Group, LLC*,
592 F.3d 255 (1st Cir. 2010) .............................................................................. 6, 7, 25

*Carlson Real Estate Co. v. Soltan*,
549 N.W.2d 376 (Minn. Ct. App. 1996) ...................................................................... 6

*Channelmark Corp. v. Destination Prods. Int'l, Inc.*,
No. 99 C 214, 2000 WL 968818 (N.D. Ill. July 7, 2000) .................................... 33, 34

*City of Mishawaka, Ind. v. Am. Elec. Power Co.*,
465 F. Supp. 1320 (N.D. Ind. 1979), *aff'd in part, vacated in part*, 616
F.2d 976 (7th Cir. 1980) .............................................................................................. 17

*Current Tech. Concepts, Inc. v. Irie Enters., Inc.*,
530 N.W.2d 539 (Minn. 1995) .................................................................................... 12

*Dakota County HRA v. Blackwell*,
602 N.W.2d 243 (Minn. 1999) .................................................................................... 35

*Dial Corp. v. News Corp.*,
165 F. Supp. 3d 25 (S.D.N.Y. 2016) ..................................................................... 32, 33

*Dunn v. Nat'l Beverage Corp.*,
    745 N.W.2d 549 (Minn. 2008).......................................................................... 25

*Dyrdal v. Golden Nuggets, Inc.*,
    689 N.W.2d 779 (Minn. 2004).......................................................................... 29

*Fox Midwest Theatres v. Means*,
    221 F.2d 173 (8th Cir. 1955) ........................................................................... 31

*Green Plains Otter Tail, LLC v. Pro-Envtl., Inc.*,
    953 F.3d 541 (8th Cir. 2020) ............................................................................. 5

*Grenier v. Air Express Intern. Corp.*,
    132 F. Supp. 2d 1198 (D. Minn. 2001) ............................................................. 6

*Gronquist v. Olson*,
    242 Minn. 119, 64 N.W.2d 159 (Minn. 1954) ................................................. 7

*Growblox Scis., Inc. v. GCM Admin. Servs., LLC*,
    2016 WL 1718388 (S.D.N.Y. Apr. 29, 2016) .................................................. 8

*Hubbard Specialty & Mfg. Co. v. Minneapolis Wood-Designing Co.*,
    50 N.W. 349 (Minn. 1891)............................................................................... 35

*ICC Leasing Corp. v. Midwestern Mach. Co.*,
    257 N.W.2d 551 (Minn. 1977)........................................................................ 16

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ........................................................................................ 34

*Isbell v. Allstate Ins. Co.*,
    418 F.3d 788 (7th Cir. 2005) ............................................................................ 7

*Kallok v. Medtronic, Inc.*,
    573 N.W.2d 356 (Minn. 1998)........................................................................ 25

*Kansas v. UtiliCorp United, Inc.*,
    497 U.S. 199 (1990) ........................................................................................ 34

*Karnes v. Quality Pork Processors*,
    532 N.W.2d 560 (Minn. 1995)......................................................................... 7

*Kaye v. Wilson-Gaskins*,
    227 Md. App. 660 (2016) ............................................................................. 8, 9

*Kunza v. St. Mary's Regional Health Ctr.*,
  747 N.W.2d 586 (Minn. App. 2008)................................................................7

*Lawlor v. Nat'l Screen Serv. Corp.*,
  349 U.S. 322 (1955)........................................................................................31

*Lowry v. Kneeland*,
  117 N.W.2d 207 (Minn. 1962)......................................................................16

*Ly v. Nystrom*,
  615 N.W.2d 302 (Minn. 2000)......................................................................25

*Moore v. Minn. Baseball Instructional Sch.*,
  No. A08-0845, 2009 WL 818738 (Minn. Ct. App. Mar. 31, 2009)............17

*MTS Co. v. Taiga Corp.*,
  365 N.W.2d 321 (Minn. Ct. App. 1985).......................................................27

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co., Inc.*,
  272 F. Supp. 3d 1099 (D. Minn. 2017).........................................................26

*Nutrisoya Foods, Inc. v. Sunrich LLC*,
  626 F. Supp. 2d 985 (D. Minn. 2009)...........................................................27

*Quade v. Secura Ins.*,
  814 N.W.2d 703 (Minn. 2012)........................................................................6

*Ravich v. Datakey, Inc.*,
  No. A05–1496, 2006 WL 923722 (Minn. Ct. App. Apr. 11, 2006).............5

*Redel's Inc. v. Gen. Elec. Co.*,
  498 F.2d 95 (5th Cir. 1974) ..........................................................................17

*Reuter v. Jax Ltd., Inc.*,
  711 F.3d 918 (8th Cir. 2013) .....................................................................6, 26

*Saude v. Red River Racquet Club, Ltd.*,
  No. C2-89-500, 1989 WL 103262 (Minn. Ct. App. Sept. 12, 1989)..........17

*Schlobohm v. Spa Petite, Inc.*,
  326 N.W.2d 920, 923 (Minn.1982)...............................................................17

*St. Clair v. United States*,
  880 F. Supp. 669 (D. Minn. 1993).................................................................5

*Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*,
   913 N.W.2d 687 (Minn. 2018) .................................................................. 15

*Valassis Commc'ns, Inc. v. News Corp.*,
   No. 17-CV-7378 (PKC), 2019 WL 802093 (S.D.N.Y. Feb. 21, 2019) ................ 32, 33

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ........................................................ 14

3 Corbin on Contracts § 11.3 (2019) ............................................................ 28

Fed. R. Civ. P. 56 ............................................................................... 5, 20, 34

**Preliminary Statement**

This case is about News's blatant and repeated violations of the antitrust and tort laws in the years **after** the resolution of the parties' last clash over News's anticompetitive conduct, which ended in a settlement on February 9, 2011.  It is **undisputed** that this case asserts no claim released in the parties' prior settlement, which solely released claims "up to" the date of the settlement.  It is **undisputed** that Insignia seeks no damages or other relief for any pre-settlement conduct.  And it is **undisputed** that the Complaint filed by Insignia includes dozens of allegations of specific actions taken by News in the years after the settlement, including as recently as 2019—allegations that standing alone give rise to plausible claims for relief and would allow this case to move forward to trial.

Nevertheless, despite all these facts and in retaliation for Insignia asserting its lawful rights, News filed a counterclaim in this case for breach of the 2011 Settlement Agreement. News seeks to derail this lawsuit (and has already succeeded in delaying the proceedings by several months), and wants to tax Insignia with over half a million dollars (and counting) in legal fees that are the direct result not of any breach of the settlement, but of News's own illegal and actionable conduct.  There is only one word to describe News's tactics in this case: bullying.  The same bullying that News inflicted on Insignia in the marketplace, it has now brought to the courthouse.  But this Court has the power to make the bullying stop.

Now that the period for expedited discovery is over, it is clear that News cannot meet its burden to establish several elements of its counterclaim, and that the counterclaim must be dismissed as a matter of law.  First, News has no actionable claim for breach of

contract under decades of black-letter law, which makes clear that the "release and covenant not to sue" that News relies on at most gives rise to an affirmative defense and not a free-standing claim on which News can seek draconian and unwarranted remedies for relief. *See infra* at 10–13. Second, News has failed to prove any breach of the 2011 Settlement Agreement because the Complaint does not "assert" any "underlying facts or conduct supporting" the claims released by the 2011 Settlement Agreement. Courts have uniformly refused to exclude News's pre-settlement conduct from later cases concerning News's continuing unlawful, anticompetitive conduct, even in the face of releases that are just as broad, if not broader, than the release at issue here. *See infra* at 13–25. Third, News cannot demonstrate the remaining elements of breach, namely damages and performance. *See infra* at 25–32. Fourth, News's requested relief violates public policy. *See infra* at 32–35. Fifth, even if News's Counterclaim was cognizable, News is not entitled to any of the relief it seeks. *See infra* at 35–37.

For these reasons, as discussed in full below, the Court should grant Insignia's motion for summary judgment on News's counterclaim for breach of contract.

## <u>Background</u>

Insignia, based in Minneapolis, and News are direct competitors in the third-party in-store promotion product and services ("ISPs") market. In this market, third-party ISP providers, such as News and Insignia, contract with consumer-packaged-goods companies ("CPGs") to create and place ISPs in retail grocery stores, drugstores, and dollar stores. Third-party ISP providers also contract with retailers to gain access to their aisle space. As detailed in the Complaint, News has a stranglehold in the ISP market, controlling an

unheard-of 97% of the market, and it has leveraged this power in the years after 2011 to try to box Insignia out. *See, e.g.*, Ex.[1] 1 (Complaint) ¶¶ 7, 28, 37, 39, 40, 45–47, 50, 57–58.

Relevant to this motion, Insignia has filed claims against News in two prior cases, both of which were settled. There is a February 14, 2002 Settlement Agreement resolving a case that News filed against Insignia in the Southern District of New York, and a February 9, 2011 Settlement Agreement settling a lawsuit Insignia filed against News in the District of Minnesota. There is also a third settlement agreement that News entered into on February 4, 2010 with another ISP provider, Valassis.

In 2012, a class of CPGs filed a lawsuit against News ("*Dial*"). The class was certified, and the case was settled for $250 million.

In 2013, Valassis filed its fourth lawsuit against News ("*Valassis II*"). The 2013 Valassis complaint, just like this case, alleges violations of antitrust laws in the same relevant market, unfair competition laws, and tortious interference. Over the course of this lawsuit, which was scheduled to begin trial this year but has been delayed due to the pandemic, Valassis survived a motion to dismiss and a motion for summary judgment.

This Motion concerns the single counterclaim News asserts against Insignia for breach of contract. News alleges that "Insignia has materially breached" Paragraph 9 of the 2011 Settlement Agreement, which released claims "up to the date of this Agreement (collectively, 'the Released Matters')," and included this language:

---

[1] "Ex." refers to the exhibits attached to the accompanying Declaration of Alejandra C. Salinas.



Ex. 2 (2011 Settlement Agreement) ¶ 9.  This language was not bespoke to News; the same

language was repeated in mutual release provisions that covered News's release of claims

against Insignia.  *See id.* ¶¶ 10-12.  News's sole basis that Insignia has "materially

breached" the settlement is the inclusion in Insignia's Complaint of a handful of allegations

that, News contends, are in breach of this part of the release in Paragraph 9 of the 2011

Settlement Agreement.  *See* Ex. 3 (News Corporate Rep. Depo.) 100:16–101:3.  But the

Complaint includes dozens of allegations and references to News's illegal conduct that

unquestionably focus on the period after the 2011 Settlement Agreement and which News

does not assert violate that agreement.

There is no provision in the 2011 Settlement Agreement providing for the remedy

of attorneys' fees or specifying any remedy or claim either side would have for a breach of

the mutual release provisions in the agreement.

Prior to filing its counterclaim, News did not move to dismiss the Complaint, nor

did it move to strike the allegations that it says were in violation of the 2011 Settlement

Agreement.  Instead, after filing its counterclaim, News filed a motion for judgment on the

pleadings, which this Court denied.  The Court then set a period for expedited discovery

on the "breach of contract" issues in this case, which ended on June 1, 2020.

## Legal Standard

### I.  Summary Judgment

"The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or are based on undisputed facts." *St. Clair v. United States*, 880 F. Supp. 669, 671 (D. Minn. 1993). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, summary judgment is proper "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Green Plains Otter Tail, LLC v. Pro-Envtl., Inc.*, 953 F.3d 541, 545 (8th Cir. 2020).

### II.  Principles of Contract Interpretation Applicable to the 2011 Settlement Agreement

Minnesota law provides that "[i]n interpreting a contract, the language is to be given its plain and ordinary meaning." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). To determine "the plain and ordinary meaning of a contract term," Minnesota "courts frequently look to dictionaries and case law." *Ravich v. Datakey, Inc.*, No. A05–1496, 2006 WL 923722, at *2 (Minn. Ct. App. Apr. 11, 2006); *see, e.g.*, *Bank Midwest, Minn., Iowa, N.A. v. Lipetzky,* 674 N.W.2d 176, 179–181, 180 n.7 (Minn. 2004) (describing the supreme court's consideration of caselaw, statutory definitions, and Black's Law Dictionary to determine plain and unambiguous meaning of

"transfer").  While courts apply the plain and ordinary meaning of contractual terms to the interpretation of a contract, those terms are construed in the context of the entire contract. *Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012).

News carries the burden to prove (1) the formation of a contract between News and Insignia, (2) News's performance of the contract, (3) Insignia's material breach of the contract, and (4) that such breach caused News damages.  *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 920 (8th Cir. 2013); *Grenier v. Air Express Intern. Corp.*, 132 F. Supp. 2d 1198, 1202 (D. Minn. 2001); *Carlson Real Estate Co. v. Soltan*, 549 N.W.2d 376, 379 (Minn. Ct. App. 1996).

## <u>Argument</u>

I.   **As a Matter of Law, the 2011 Settlement Agreement Did Not Create an Independent Claim for Breach of the Release or Covenant Not to Sue.**

First, before even getting into the elements News has to prove, it has no actionable breach-of-contract claim to assert in this case.  News's counterclaim is based on Insignia's purported breach of the "release and covenant not to sue" in Paragraph 9 of the 2011 Settlement Agreement.  Ex. 4 (News Answer & Counterclaim) at 33.  As described below, neither gives rise to an independent claim for breach of contract.

Courts across the country have rejected breach-of-release counterclaims that resemble what News asserts here, holding that such releases cannot support a claim for breach of contract.  In *Bukuras v. Mueller Group, LLC*, for example, the plaintiff, Bukuras filed suit after he "voluntarily, irrevocably, and unconditionally released and forever discharged the Company from any and all complaints, claims, demands, or liabilities, or

rights, whether known or unknown and whether in law or equity which have or may arise in whole or in part from his employment and/or termination from the Company."  592 F.3d 255, 267 (1st Cir. 2010) (internal quotation marks omitted).   The Company filed a counterclaim alleging that Bukuras had breached the general release when he filed suit, which the district court dismissed on summary judgment.  *Id.*

On appeal, the First Circuit affirmed, explaining:

> We also agree that the Company's attempt to bring an independent claim for breach of the release in order to recoup the costs of defending itself in this litigation must fail.  ***A release is an affirmative defense; it does not supply a defendant with an independent claim for breach of contract.***

*Id.* at 266 (emphasis added); *see also Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005) ("The Release does not result in breach upon the filing of a suit. Instead, it provides [defendant] with an effective affirmative defense should a claim be raised.").

Consistent with this reasoning, the Minnesota Supreme Court recognizes: "A release is an affirmative defense to a cause of action."  *Karnes v. Quality Pork Processors*, 532 N.W.2d 560, 563 (Minn. 1995); *see also Gronquist v. Olson*, 242 Minn. 119, 125, 64 N.W.2d 159, 164 (Minn. 1954) (recognizing that a "release . . . may be pleaded as a defense to any suit on the action); *Kunza v. St. Mary's Regional Health Ctr.*, 747 N.W.2d 586, 592 (Minn. App. 2008) (same).

News's reliance on the covenant not to sue fares no better.  In *Artvale, Inc. v. Rugby Fabrics Corp.*, the Second Circuit recognized that absent unequivocal accompanying language "imposing liability . . . for suits brought in obvious breach or otherwise in bad

faith," a covenant not to sue is a shield, rather than a sword, and does not give rise to a

claim for breach of contract:

> The question, in other words, is to be solved not by invoking an abstract rule of law but by seeking to determine what the parties fairly contemplated, or would have had they addressed their minds to the problem. Certainly, it is not beyond the powers of a lawyer to draw a covenant not to sue in such terms as to make clear that any breach will entail liability for damages, including the most certain of all — defendant's litigation expense. Yet to distill all this out of the usual formal covenant would be going too far; ***its primary function is to serve as a shield rather than as a sword***, often being employed instead of a release to avoid the common law rule with respect to the effect of a release on joint tortfeasors. In the absence of contrary evidence, ***sufficient effect is given the usual covenant not to sue if, in addition to its service as a defense, it is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith*** — clearly not the situation here.

363 F.2d 1002, 1008 (2d Cir. 1966) (emphasis added); *see also Growblox Scis., Inc. v.*

*GCM Admin. Servs., LLC*, 2016 WL 1718388, at *5–7 (S.D.N.Y. Apr. 29, 2016) (citing

*Artvale* and other cases to hold that a covenant-not-to-sue provision cannot be used

offensively to seek damages for breach of contract).

Courts beyond the Second Circuit have followed suit.  In *Kaye v. Wilson-Gaskins*,

for example, the court dismissed a breach of contract claim based on a settlement

agreement's covenant not to sue because there was no "clear expression" in the release that

the breaching party "would be liable for the consequential damages resulting from the

breach."  227 Md. App. 660, 688 (Md. Ct. Spec. App. 2016).  In reaching this decision, the

court undertook an analysis of the history and evolution of covenants not to sue.  The court

concluded its analysis by recognizing:

> [I]n order to avoid circuity of action, when parties agree that an obligee will never pursue a claim, we will give that language the effect of a discharge unless the parties clearly express that they intend for the obligor to recover consequential damages as a result of the obligee's failure to honor that discharge in their agreement.

*Id.* at 686.

Here, there is no language in the 2011 Settlement Agreement that expressly or implicitly reflects an intent that a breach of the covenant not to sue would entitle News to even assert a claim of any kind, let alone which would permit News to recover any relief of any kind, including consequential damages. News thus cannot pursue an independent claim for breach of contract, but instead may only assert the release and covenant not to sue as an affirmative defense (which News has done, *see* Ex. 4 (News Answer & Counterclaim) at 29).

## II.   News Has Failed to Prove Any Breach of the 2011 Settlement Agreement.

Second, there is no genuine issue of fact on the issue of breach. To reach a contrary conclusion requires construction of the 2011 Settlement Agreement that reads words out, in violation of bedrock Minnesota law that News itself has pressed before this Court.

Under the release provision of the 2011 Settlement Agreement, Insignia

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 2 (2011

Settlement Agreement) ¶ 9. The Agreement expressly defines the ████████████

9

██████████████████████████████████████████████ *Id.*  This is

consistent with the Agreement's overarching purpose to ███████████████

████████████████████████████ *Id.* at 1.  In the face of this

unambiguous scope of the Agreement, even News has admitted that "post-release conduct

is not released."  Dkt. 70, at 6.

Under the plain reading of the release that Minnesota law requires, there is no

evidence Insignia breached the Agreement.  The allegations in Insignia's Complaint do not

"support" previously released matters; to the contrary, such allegations "support"

Insignia's *current* allegations against News for post-settlement antitrust violations, which

News even concedes are not released.  News's arguments to the contrary require either an

incoherent interpretation of the Agreement, or an interpretation and application of the

Agreement that runs directly contrary to antitrust public policy.  At minimum, the

Agreement is ambiguous, and such ambiguities must be resolved in Insignia's favor under

well-established canons of construction.

Courts have uniformly rejected News's efforts to use its prior settlement

agreements—which contain releases that are just as broad, if not broader, than the release

at issue here—to muzzle its competitors when they seek redress for News's antitrust

violations that continued unabated after the ink was barely dry on the prior settlements.

Respectfully, this Court should not be the first to reach a different result.

10

## A.  The Complaint Does Not Assert Underlying Facts or Conduct "Supporting the Released Matters."

News's allegation that Insignia violated Paragraph 9 of the 2011 Settlement Agreement fails as a matter of law because there is no evidence that Insignia has asserted any "fact[] or conduct" to "support[]" the Released Matters.  Insignia seeks relief only for News's post-settlement antitrust violations, and all of the allegations in the Complaint are made in support of those undisputedly un-released claims.  *See, e.g.*, Ex. 16 (Insignia Corporate Rep. Depo.) 66:20–67:1, 140:11–14.  This is undisputed.  Accordingly, even pre-2011 allegations in the Complaint are not asserted to "support[]" the "Released Matters."  Rather, they are included in the Complaint in support of "Non-Released Matters"—*i.e.*, non-released, post-settlement claims—and are included in the Complaint to allege News's understanding of market dynamics and later intent in adopting market strategies.

News's assertion that the Complaint's mere inclusion of allegations about pre-2011 events amounts to breach of contract is contrary to the Agreement's plain language.  The Agreement prevents Insignia from asserting facts or conduct "*supporting* the Released Matters" "in any court, governmental or regulatory body or other proceedings."  The Agreement specifically uses the present participle of "suppor*ting*," meaning a breach would require that the facts or conduct at issue *presently* "support" the Released Matters in the "proceeding" at issue.  News would effectively re-write the Agreement if the provision was interpreted to preclude Insignia from asserting any facts or conduct that

11

"concerned" or "related to" the Released Matters in the *prior* suit—language that News could have used, but didn't.

News's reading, moreover, cannot account for, and improperly renders superfluous, the release's use of both the terms ███████ and ███████ Ex. 2 (2011 Settlement Agreement) ¶ 9 ████████████████████████████████████████████ As News itself has urged, "[a] contract must be interpreted in a way that gives all of its provisions meaning." *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995); *see* Dkt. 70, at 7 (News acknowledging that the Court should avoid an interpretation of a contract that "would 'render a provision meaningless'" and citing authorities). To avoid rendering either "underlying" and "supporting" meaningless, any breach of the Agreement would require the assertion of facts *both* "underlying" *and* "supporting" the Released Matters. While certain pre-2011 facts in the Complaint might be said to "underlie" the Released Matter—in that one can still see if they were cited in pleadings in the prior litigation (essentially News's entire theory of breach)—the inclusion of such facts in the current Complaint seeking to remedy post-settlement antitrust violations, does not also "support" the Released Matters, as required to prove breach.

Insignia's Complaint does not assert facts or conduct "supporting" previously released matters but, rather, makes allegations "supporting" post-settlement violations, which even News concedes are not released. Because there is no evidence that Insignia makes allegations "supporting" already Released Matters, News's counterclaim fails as a matter of law.

**B. Discovery Has Confirmed that News Lacks a Coherent Alternative to Insignia's Interpretation**

News's contrary interpretation of the Paragraph 9's release is unsupportable as a matter of law.  News has alleged that Insignia breached the 2011 Settlement Agreement because the Complaint contains assertions of "facts and conduct that Insignia relied on to support its claims in the prior litigation."  Ex. 4 (News's Answer & Counterclaim) at 34. But discovery—specifically, the deposition of News's corporate representative—has confirmed that even News understands that at least *some* facts Insignia "relied on to support its claims in the prior litigation" *do not* constitute a breach of the Agreement.  News thus concedes that the Agreement does not prohibit later use of *every* "fact" or "conduct" at issue in prior Insignia litigation, and News lacks a coherent explanation for which previously asserted facts or conduct the 2011 Settlement Agreement allows and does not allow under News's interpretation.  Insignia's interpretation is the only one that works.

13



News cannot draw a coherent line that would allow it, on the one hand, to keep out damning facts that were also at issue in the prior litigation—like News's professed intent to "destroy" its competition—while on the other hand, avoiding the need to defend an absurd contractual interpretation that would prevent Insignia from asserting basic facts that were also at issue in the prior litigation—like "NAM [News] is a provider of ISPs."[2] During oral argument on News's prior motion for judgment on the pleadings on its

---

[2] News runs into similar problems when trying to argue that Insignia has "asserted" facts or conduct underlying released matters. "Assert" can mean either "[t]o state positively" or "[t]o invoke or enforce a legal right." BLACK'S LAW DICTIONARY (11th ed. 2019).

████████████████████████████████████████████████████████ If "assert" were interpreted as "to state positively," the Agreement would prohibit Insignia from even discussing the existence of Released Matters in any future proceeding. This interpretation would be nonsensical because it would foreclose discussion of even the most basic facts about News, Insignia, or their lines of business. Even News recognizes that this cannot be what the Agreement means. Accordingly, "assert" is better interpreted in the context of the Agreement to mean "invoke or enforce a legal right," meaning the Agreement prohibits Insignia from bringing claims against News based on the Released Matters (which Insignia undisputedly has not done), but does not limit the use of pre-release facts to support of post-release matters. At minimum, as discussed below, any such ambiguity must be resolved in Insignia's favor. *See infra* at 15–18.

counterclaim, Judge Thorson previously asked News: "I appreciate that the parties involved in the prior litigation may be familiar with what fact might have been used to support the old litigation, but going forward, how does the Court manage this?"  Ex. 24 (Jan. 14, 2020 Hr'g Tr.)  27:10–13.  Discovery has confirmed that News has no answer to the Court's eminently reasonable question.  News leaves the Court with no way to determine which allegations that "support*ed*" (**not** the language of the 2011 Settlement Agreement) previously released, pre-settlement matters are fair game for the present case. By contrast, the Court can easily discern—and the evidence is undisputed—that the allegations in the current Complaint are "support*ing*" only un-released, post-settlement matters (Insignia's construction).

News, as the counterclaim-plaintiff, has the burden to prove that Insignia breached the 2011 Settlement Agreement.  Yet News cannot even offer a coherent reading of that Agreement, let alone meet its burden of demonstrating that Insignia breached the Agreement.  This failure provides sufficient grounds for the Court to dismiss News's counterclaim.

### C. Any Ambiguity in the Agreement Must Be Construed Against News

As demonstrated above, at the very least there is an ambiguity in the scope of the release, and there is absolutely no evidence in the record that the parties had some mutual, shared understanding matching News's present interpretation.  In this case, any ambiguity must be construed against News under the doctrine of *contra preferentum* and the canon of narrow construction of releases.

*Contra Preferentum*: Minnesota contract law incorporates the rule of *contra preferentum*—*i.e.*, "[t]he rule that ambiguous contract terms are to be construed against the drafter." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 693–94 (Minn. 2018).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

News, moreover, has entirely failed to meet its burden to prove that the parties intended the extreme (and incoherent) reading of the Agreement that it now asks this Court to adopt. Despite the Court's instruction to do so, News has not produced a single document substantiating its interpretation or understanding of Paragraph 9. Indeed, it has not produced a single document relating to the 2011 Settlement Agreement, beyond the agreement itself.

With this complete lack of evidence on News's part and the rule of *contra proferentem*, any ambiguity in Paragraph 9 should be construed in Insignia's favor. *See ICC Leasing Corp. v. Midwestern Mach. Co.*, 257 N.W.2d 551, 555 (Minn. 1977) ("The trial court found that since Midwestern had failed to prove by a fair preponderance of the evidence that O'Heron had fully explained the meaning of the phrase in question to ICC's agent, Myhr, all doubts or ambiguities must be resolved against Midwestern as drafter of

the agreements."); *see also Lowry v. Kneeland*, 117 N.W.2d 207, 210 (Minn. 1962) ("It is elementary that if there is doubt as to [a contract's] meaning it must be construed most strongly against the one who chose the language in drafting the instrument.").

**Strict Construction of Releases**: News has never disputed that, under Minnesota law, "releases of liability are not favored . . . [and] are strictly construed against the benefited party." *Moore v. Minn. Baseball Instructional Sch.*, No. A08-0845, 2009 WL 818738, at *5 (Minn. Ct. App. Mar. 31, 2009) (citing *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn.1982)); *Saude v. Red River Racquet Club, Ltd.*, No. C2-89-500, 1989 WL 103262, at *1 (Minn. Ct. App. Sept. 12, 1989) (same). "[R]ules of construction [normally] mandate narrow construction of general releases . . . ." *Redel's Inc. v. Gen. Elec. Co.*, 498 F.2d 95, 100 (5th Cir. 1974).

The general rule of strict construction of releases applies "with particular force" in this antitrust case, given "the recognized importance of private antitrust suits in the enforcement of the antitrust laws." *City of Mishawaka, Ind. v. Am. Elec. Power Co.*, 465 F. Supp. 1320, 1349 (N.D. Ind. 1979), *aff'd in part, vacated in part*, 616 F.2d 976 (7th Cir. 1980). "In cases in which such releases may run counter to federal antitrust policy, the necessity for clarity and specificity for releases from antitrust liability is heightened." *Id.*

News's expansive interpretation of the 2011 Settlement Agreement would inhibit private enforcement of the antitrust laws and should thus be rejected. Indeed, News's attempt to enforce its expansive interpretation of the 2011 Settlement Agreement is itself an anticompetitive act. News's allegations that its one remaining competitor in the third-party ISP market must pay damages for suing News for antitrust violations will only serve

17

to further help News foreclose competition in the market and further cement News's monopoly.  Moreover, to the extent News's interpretation and application of the release would absolve News of liability for post-settlement antitrust violations, News's interpretation renders the release altogether void as contrary to public policy.  *See infra* 31–34.

### D. Courts Have Uniformly Refused to Exclude News's Pre-Settlement Conduct Based on Substantially Similar Settlement Agreements

The underlying issue presented by News's Counterclaim is not new.  For over a decade, News has sought to exclude pre-settlement agreement conduct from subsequent litigation.  Not once has News been successful.  Even in the face of releases just as broad if not broader than the release at issue here, Courts have permitted plaintiffs—including Insignia—to deploy pre-settlement facts against News to help prove News's post-release unlawful conduct.

For example, in Insignia's prior litigation against News, Judge Tunheim denied News's attempt to exclude pre-2001 allegation, reasoning that such allegations "provide *important background* for the claims in this action, and that [News] has not shown prejudice." Ex. 5 (2006 Order Denying News's Motion to Strike) at 4.  The court rejected News's argument that the 2002 Settlement Agreement—which states that "the Parties . . . mutually release . . . any and all claims that are the subject of the Subject Action, *or that relate in any way . . . to the claims asserted in or the underlying facts of the Subject*

*Action*"—prohibited such allegations. *Id.*[3]  Insignia included in the instant Complaint some of the same pre-2011 allegations that Judge Tunheim ruled provided "important background" for the same purpose—to again provide the necessary background for claims **post-dating the settlement**, demonstrating, *inter alia*, News's knowledge of the market, its understanding of market dynamics, and its intent in adopting the same market strategies it has implemented since the prior Insignia case arose.

Undeterred by Judge Tunheim's decision (as it remains undeterred today, by echoing the same arguments), News reasserted its argument as a "Motion for a Protective Order Limiting the Temporal Scope of Discovery" and a "Motion in Limine . . . to Exclude Evidence of and References to Released Conduct."  Ex. 7 (2006 Order Denying News's Motion for Protective Order) at 3–4; Ex. 8 (News's 2010 Motion in Limine) at 2–3. Magistrate Judge Boylan denied the first motion and ruled "that discovery of pre-November 14, 2002 documents is relevant here."  Ex. 7 (2006 Order Denying News's Motion for Protective Order) at 4.  Judge Tunheim also denied the second, explaining:

> The Court does not interpret the Release to stand for the proposition that all conduct or information relating to News prior to November 14, 2002 is irrelevant or inadmissible *per se* to this litigation. The relevant inquiry is whether a claim in *this* case is based on anti-competitive conduct that was the subject of the *prior* case; if not, the pre-Release conduct or information is admissible. By way of example: if a certain document alleged to have caused harm was created after the Release date, but includes information and reports that came into existence

---

[3]  Specifically, these allegations included references to specific instances of alleged anticompetitive conduct in 1997, 2000, 2001, and 2002.  *See* Ex. 6 (*Insignia* Amended Complaint) ¶ 18 (alleging News proposal "[i]n early 2000"), ¶ 19 (alleging acquisition "[a]round 1997"), ¶¶ 28–29 (alleging interference "on or about October 2001" and "November 6, 2002"), ¶ 53 (alleging "no successful entry has occurred during the past eight years"), Exhibit A (attaching "February 22, 2000" News letter).

> prior to the Release date, it would clearly be improper to bar
> any explanation of the facts underlying the letter.

Ex. 9 (2011 Order Denying News's Motion in Limine) at 3–4 (emphasis in original).  In reaching this conclusion, the court rejected the argument that Insignia would breach the 2002 Settlement Agreement by introducing evidence at trial of **twenty** exclusivity agreements with retailers that were entered into *before* the 2002 Settlement Agreement release date.  *See* Ex. 8 (News's 2010 Motion in Limine) at 2–3.

In *Valassis II*, News once again repackaged (unsuccessfully) its argument under the substantially similar 2010 Settlement Agreement.  The 2010 Settlement Agreement release states:  ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████  Ex. 10 (2010 Settlement Agreement) ¶ 6.  This language is far broader than the language in the Insignia agreement, and it even mentions "allegations," curiously left out of the Insignia agreement executed just a year later.

In its Rule 56(c) Objections and Reply to Plaintiff's Counterstatement of Facts in Support of News's Motion for Summary Judgment, News "argue[d] that statements made by News's CEO [Martin Garofalo] prior to February 4, 2010 . . . are inadmissible at trial,

and thus should not be considered on summary judgment, as a result of [the 2010] [S]ettlement [A]greement."  Ex. 11 (2019 Order Denying News's Motion for Summary Judgment) at 4 n.2; *see* Ex. 12 (News's Counterstatement Response) at 3.  The court denied summary judgment and rejected News's attempt to exclude the pre-settlement statements:

> Though the statements by News's CEO were made in 2004 and 2007, Valassis's present claims do not arise from these statements or the conduct described therein. Instead, ***the statements are offered and considered as some evidence of News's understanding of market dynamics and later intent in adopting market strategies***. In an analogous context, the Second Circuit has held that where the statute of limitations for a Title VII employment discrimination claim expired on a certain date, "any discrete acts occurring before that date are not actionable," but a court may still consider those acts as relevant "background evidence." *Jute v. Hamilton Sundstrand Corp*., 420 F.3d 166, 176 (2d Cir. 2005).

Ex. 11 (2019 Order Denying News's Motion for Summary Judgment) at 4 n.2 (additional citations omitted) (emphasis added).

Most recently, in October 2019, News filed an Omnibus Memorandum of Law in Support of Defendants' First Through Eight Motions in Limine.  Its first motion argued that "Valassis should be precluded from making allegations that NAM [News] engaged in misconduct before the February 4, 2010 Settlement Agreement."  Ex. 17 (News's 2019 Motion in Limine) at 1.  Once again, the court disagreed: "There is some room, as I said in my summary judgment decision, in a trial for statements that were made as presettlement as background information.  And evidence pre-2010 can have some relevance in that regard."  Ex. 13 (2019 Valassis Hearing Transcript) at 41.

These holdings unanimously support a rejection of News's latest attempt to exclude pre-settlement conduct with its counterclaim.  First, as exhibited by its own briefing, News understood each of the prior settlement agreements to have the same effect as the 2011 Settlement Agreement at issue here:

| 2002 Settlement Agreement[4] | 2010 Settlement Agreement[5] | 2011 Settlement Agreement[6] |
|---|---|---|
| "The Settlement Agreement, dated November 14, 2002, included a bargained-for broad release, in which the parties forever released not only claims alleged in the 2000 Lawsuit, but also all claims related "in any way" to the claims of the suit or the underlying facts of the suit."<br><br>"This language [in the 2002 Settlement Agreement] unambiguously means that News America cannot be liable to Insignia for any conduct allegedly directed to excluding competition for in-store advertising prior to the November 14, 2002 release date, since any such alleged conduct would necessarily relate to the claims asserted in the 2000 Lawsuit and/or the facts underlying that suit." | "Valassis broadly released and covenanted not to sue NAM [News] with respect to 'any claim, allegation or cause of action that was or could have been asserted' in the prior litigation 'arising from or based on *any claims, allegations, actions, inaction, conduct or facts of any kind existing up to the date of this Agreement.*'"<br><br>"Based on the plain language of the Settlement Agreement, Valassis is barred from relying on conduct or facts that occurred prior to February 4, 2010 to support its new Complaint." | "Insignia committed not only to release all claims of any kind through the date of the 2011 release, but not to 'attempt to introduce as evidence' or 'otherwise assert' any of the 'facts' or 'conduct' that had formed the basis of the released claims." |

Second, these decisions addressed many of the ***exact same "facts"*** News contends to be a breach here.  For example, News contends that allegations in Paragraphs 3, 42, and

---

[4] Ex. 8 (News's 2010 Motion in Limine) at 4, 6.
[5] Ex. 14 (News's 2013 Motion to Dismiss) at 7.
[6] Ex. 15 (News's 2019 Motion for Judgment on the Pleadings) at 1–2.

43 of the Complaint violate the release.  But in both the prior Insignia and Valassis litigations, the courts allowed evidence "that in July 1999, Paul Carlucci and Dominick Porco of News America supposedly threatened to 'destroy' Floorgraphics," News's competitor.  *See* Ex. 8 (News's 2010 Motion in Limine) at 2; Ex. 17 (News's 2019 Motion in Limine) at 2–3.  The *Valassis II* court also permitted evidence of News CEO Marty Garofalo about intentionally staggering contracts.  *See* Ex. 12 (News's Counterstatement Response) at 3; Ex. 18  (Valassis Statement of Material Facts) ¶¶ 43, 51, 85.  Similarly, while News has refused to turn over any discovery in this case that pre-dates January 1, 2014 (with the exception of 164 retailer contracts executed between February 10, 2011 and December 31, 2013), at least one publicly available document already makes clear that News continued to stagger its retail deals after 2011—consistent with the Garofalo's pre-2011 acknowledgement of News's business strategy.  *See* Ex. 1 (Complaint) ¶¶ 42, 43.  For example, in a 2012 Sales memo, News did not shy away from stating that it continues to stagger its retailer contracts: "The other thing worth mentioning is that we really focus on staggering our deals so that in any given calendar year we minimize the amount of ACV coverage that we have at risk nationally."  Ex. 23 (Valassis Declaration Exhibits) at NAM-VAL2-002071329.

And finally, after 2011, News has continued in the post-2011 era to include not only broad exclusivity provisions but also other anticompetitive contractual barriers like right-of-first-refusal, automatic-rollover, and wind-down provisions to protect its 97 percent market share.  *See generally* Exs. 19–22 (selection of retailer contracts).  These are the same barriers that News erected before 2011 to maintain its monopoly and "destroy" its

competitors.  Given that News has continued the same competitor-destroying tactics after 2011, it is not enough for News to assert that these pre-2011 quotes must be excluded because they showed up in prior Insignia pleadings.  Instead, News must prove that the pre-2011 material is not supporting non-released, post-settlement matters in this case.  In other words, News must prove that this material cannot be relevant to post-settlement antitrust claims.  ████████████████████████████████

████████████████████████████████████████████████████

███████

### III.   News Has Failed to Prove the Remaining Elements of Breach of Contract

In addition to its failure to prove Insignia's breach of the 2011 Settlement Agreement, News has also failed to carry its burden as to the remaining elements of breach of contract.  Specifically, News has failed to produce **any** cognizable evidence of material breach that caused News damages, and there is no genuine dispute of material fact that News failed to perform its own obligations of the 2011 Settlement Agreement.  News's failure of proof on each of these elements provides additional, independently sufficient grounds for entering summary judgment in Insignia's favor on the counterclaim.

### A.   News Has Failed to Prove the Alleged Breaches Caused Damages

News has also failed to produce any cognizable evidence that Insignia's alleged breach caused News harm.  News has identified only two potential harms from Insignia's alleged breach: (1) "attorneys' fees and costs associated with the pursuit of this relief and the costs of defending this suit to the extent the litigation was pursued in contravention of the Settlement Agreement," and (2) "costs associated with internal business distraction

incurred as a result of Defendants' employees' and agents' attention to pleadings, motions, and discovery in this suit." Ex. 25 (News's Response to ROG 2) at 6–8.[7] But News is wrong on the law and empty-handed on the facts to support its claimed damages for purposes of proving breach of contract.

*First*, News is not entitled to attorneys' fees as a matter of law. As previously stated, nothing in the 2011 Settlement Agreement provides a right of action to News at all, let alone opens the door to seeking attorneys' fees as damages. ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ In Minnesota, the recovery of attorney fees is governed by the American rule, which "is that attorney fees are not recoverable in litigation unless there is a specific contract permitting or a statute authorizing such recovery." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 554 (Minn. 2008) (quotation omitted); *see Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998). Indeed, as the Minnesota Supreme Court has recognized: "[A] fundamental principle of law deeply ingrained in our common law jurisprudence [is] that each party bears his [or her] own attorney fees in the absence of a statutory or contractual exception." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).

---

[7] News also indicates it will seek "specific performance of the Settlement Agreement." Ex. 25 (News's Response to ROG 2) at 6–8. This, of course, is a request for relief, not a form of harm that could support the damages element of News's counterclaim. As discussed below, moreover, specific performance is not a remedy available to News even if its counterclaim were allowed to proceed.

Here, the 2011 Settlement Agreement contains no fee-shifting provision that would entitle News to recover its costs or fees in the event of a breach.  "[I]n the absence of an express contractual provision or other source of authority which would permit the recovery," News "is not entitled to recover its fees and costs as damages for [Insignia's] alleged breach of the release."  *See Bukuras*, 592 F.3d at 267; *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co., Inc.*, 272 F. Supp. 3d 1099, 1108 (D. Minn. 2017) (declining to award attorneys' fees for breach of contract because the party seeking fees "cites no rule or contractual provision entitling it to attorneys fees incurred during this lawsuit").

*Second*, with regard to its alleged "costs associated with internal business distraction," News has not provided a single piece of evidence to either substantiate or quantify its purported "costs associated with internal business distraction." ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████ "[U]nder Minnesota law, a breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 920 (8th Cir. 2013).  Here, News "has not met Minnesota's requirements to show loss of profit, causal connection, or even that such a loss is calculable." *Id.*  News also has disregarded the Court's explicit guidance that it "did not bifurcate liability and damages discovery" with regard to Defendants' counterclaim. Dkt. 186, at 15.

26

*Third*, there is no evidence that News has suffered any damages caused by the inclusion of the handful of allegations News points to as allegedly violating the release. As Insignia has repeatedly pointed out, even if inclusion of certain allegations in the Complaint were a breach, there is no dispute in this case that the Complaint asserts post-settlement claims and points to post-settlement allegations that would unquestionably permit this case to proceed to trial. News has failed to provide evidence demonstrating any damages caused by the actual alleged breaches of contract that it has asserted.

### B. News Has Failed to Prove Its Own Performance of the 2011 Settlement Agreement, Which Precludes Its Counterclaim

News's breach of contract claim also fails because News is unable to demonstrate its own performance of the 2011 Settlement Agreement, as it has continued to include right-of-first-refusal provisions in contracts and has continued to enforce such provisions, contrary to the clean language of the Agreement. "A rule in the law of contracts is that a party cannot raise to its advantage a breach of contract against another party when it has first breached the contract itself." *MTS Co. v. Taiga Corp.*, 365 N.W.2d 321 (Minn. Ct. App. 1985); *see also Nutrisoya Foods, Inc. v. Sunrich LLC*, 626 F. Supp. 2d 985, 990 (D. Minn. 2009) ("The 'prior breach' doctrine recognizes that the non-performance of one party under a contract excuses the future contractual obligations of the other party.").

Paragraph 3 of the 2011 Settlement Agreement states:



27

Ex. 2 (2011 Settlement Agreement) ¶ 3.  News has breached this provision in three distinct ways.

*First*, over the past several years, News has entered into numerous retailer agreements that contain contractual clauses that can't be understood as anything other than a right-of-first-refusal provision.  For instance, in 2014, 2016, and 2019, News entered into retailer agreements that state:

How is this not a right-of-first-refusal provision?  This provision preempts the retailer from using another third-party ISP provider without first allowing News to bid for the business.  As noted in Corbin on Contracts, a right of first refusal is any "contractual right to preempt another because the right is conditional on the owner's decision that an offer from a third party is acceptable."  3 Corbin on Contracts § 11.3 (2019).  Notably, a right of first refusal "may be described by diverse terms" and "in no case . . . determinable from the name alone."  *Id.*



These provisions afford News a contractual right to preempt because a retailer must first ████████████████████████████████████ or ██████████████ ████ with News to adjust its agreement to encompass the program *before* that retailer can contract with a competitor to provide the program. Moreover, under these provisions, a retailer is not free to contract with a News competitor for a "new" or "emerging technological" program." *See Dyrdal v. Golden Nuggets, Inc.*, 689 N.W.2d 779, 784 (Minn. 2004) ("The right of first refusal is not an option to purchase but it 'limits the right of the owner to dispose freely of its property by compelling the owner to offer it first to the party who has the first right to buy.'"). These are right-of-first-refusal provisions in all but name.

*Second*, since 2013, News also appears to have enforced these contractual rights in breach of the 2011 Settlement Agreement's prohibition on enforcing existing rights of first refusal. █████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████ ████████████████████, in August 2013, Schnuck informed News that it was "interested in utilizing" the "Wedge," an ISP offered by News's competitor, Valassis.

29

Ex. 23 (Valassis Declaration Exhibits) at NAM-VAL14-007386066–67.   In response, News precluded Schnuck from contracting with Valassis.  *Id.* at NAM-VAL14-007386065.

*Third*, after the parties entered into the 2011 Settlement Agreement, News has produced no evidence to demonstrate that it ceased enforcement of any existing right-of-first-refusal or right-of-last-refusal provisions in its agreements with retailers.   At a minimum, News has not produced any discovery for the parties to be able to confirm one way or another the efforts that News undertook to comply with Paragraph 3.   ████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████   When Insignia's counsel repeatedly asked News's Corporate Representative to explain what action it took to cease enforcement after that date, News's Corporate Representative largely refused to answer the question or stated that he did not know.  *Id.* 50:6–64:15.  This absence of evidence **is binding on News**.

The only action News's Corporate Representative could point to was the eventual removal of the right-of-first-refusal and right-of-last-refusal provisions in effect at the time of the 2011 Settlement Agreement when those contracts came up for renewal.  However, that eventual removal does not provide any indication as to whether News continued to enforce the provisions in the interim.  How would a retailer even know that News would not enforce an existing right-of-first-refusal or right-of-last-refusal provision in its agreement without an affirmative communication from News to that effect?

As the counterclaim-plaintiff, News carries the burden to show its performance of the contract, including Paragraph 3.  A prerequisite for doing so would have been to

produce its retailer communications shortly after February 9, 2011 so that Insignia (and the Court) can see the steps that News took not to enforce existing right-of-first-refusal provisions.  Of course, News has arbitrarily decided that it will not produce any discovery (other than some retailer contracts) pre-dating January 1, 2014.  It was News's choice to obstruct discovery in this case by (1) establishing an arbitrary time period for discovery and withholding relevant documents that fall beyond that time period, and (2) refusing to answer questions about its performance under the 2011 Settlement Agreement notwithstanding a clearly noticed topic of deposition about such performance.  Any lack of evidence should be adversely construed against News.  News has failed to satisfy its burden of proof for its own performance of the 2011 Settlement Agreement.

## IV.    News's Requested Relief Violates Public Policy.

Finally, News's counterclaim is contrary to antitrust public policy.  News does not dispute the well-established law that a "contractual provision which could be argued to absolve one party from liability for future violations of the anti-trust statutes against another would to that extent be void as against public policy."  *Fox Midwest Theatres v. Means*, 221 F.2d 173, 180 (8th Cir. 1955); Dkt. 70, at 6 ("post-release conduct is not released"); *id.* at 11 ("No one disputes that contracts that 'absolve one party from liability for future violations of the anti-trust statutes' are against public policy" per *Fox*).  But the inquiry does not end there.  Consistent with the Supreme Court's instruction that even "a ***partial immunity*** from civil liability for future [antitrust] violations" is contrary to public policy, *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955) (emphasis added), courts have voided contracts that on their face do not purport to waive future liability but

31

operate in that way "in practice," *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 197 (2d Cir. 2011).

There is no question that the goal of News's counterclaim is to absolve itself of post-release antitrust liability. News, in fact, has argued that the upshot of its counterclaim is to obtain dismissal of Insignia's Complaint, Ex. 15 (News's 2019 Motion for Judgment on the Pleadings) at 1, despite that the Complaint undisputedly seeks relief only for post-release antitrust violations. But using the 2011 Settlement Agreement to accomplish that goal is ***exactly*** what antitrust public policy forbids.

News hopes that removing plainly relevant pre-settlement facts from the picture will make it more likely that the Court will enter judgment in its favor on claims seeking relief for post-settlement antitrust violations—a gambit that News also tried, but failed, to pull off in *Valassis*. *See supra* 18–24 (discussing News's failed effort to use a prior release to remove pre-release facts from consideration and thereby prevail at summary judgment on post-release antitrust claims). News hopes to avoid the denials of summary judgment it suffered in both *Dial* and *Valassis*—both cases concerning post-2011 anticompetitive conduct by News—based, at least in part, on many of the same pre-2011 facts at issue here. *See Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 36–37 (S.D.N.Y. 2016) (finding comments of News's CEO Marty Garofalo concerning "staggered retail details," alleged in the current Complaint at ¶ 42, to be "evidence of intent" relevant "to the question of whether the challenged conduct," which continued at least until 2014, "is fairly characterized as 'exclusionary' or 'anticompetitive'"); *Valassis Commc'ns, Inc. v. News Corp.*, No. 17-CV-7378 (PKC), 2019 WL 802093, at *2 & n.2 (S.D.N.Y. Feb. 21, 2019)

(finding same comments relevant "evidence of News's understanding of market dynamics and later intent in adopting market strategies" as to anticompetitive conduct continuing at least until 2016).

Here, like the plaintiffs in *Dial* and *Valassis*, Insignia uses any pre-2011 allegations to help support its claims based exclusively on News's post-2011 antitrust violations—*e.g.*, to demonstrate News's knowledge of the market, its understanding of market dynamics, and its intent behind adopting the same market strategies it has implemented since the prior Insignia case arose.  It is thus impossible to disentangle News's deployment of the 2011 Settlement Agreement to preclude use of pre-2011 material from News's deployment of the 2011 Settlement Agreement to absolve itself from post-2011 antitrust liability—and, as a result, News's counterclaim fails as a matter of law pursuant to undisputed principles of antitrust public policy.[8]

In this antitrust suit alleging that News has resorted to illegal means to consolidate a 97 percent share of the ISPs market, the public has a "strong interest in not allowing [News] to conceal information that is of legitimate public concern." *Channelmark Corp. v. Destination Prods. Int'l, Inc*., No. 99 C 214, 2000 WL 968818, at *5 (N.D. Ill. July 7, 2000).  After all, "[t]he public reaps no benefit by allowing settlement agreements to

---

[8] To be clear, Insignia's Complaint is also replete with allegations about post-2011 facts and conduct. *See, e.g.,* Ex. 1 (Complaint) ¶¶ 7, 28, 37, 39, 45–47, 50, 57–58.  But, as the *Dial* and *Valassis* cases confirm, one can take nothing for granted against a ruthless opponent like News.  To the extent News argues Insignia makes inadequate allegations or lacks sufficient evidence to support its claims for post-2011 antitrust violations (and there is no doubt that is and will continue to be News's argument), antitrust public policy forbids News from using the 2011 Settlement Agreement to preclude any relevant allegations from being made, or any relevant evidence from being marshaled, in support of those claims.

suppress evidence." *Id*. News violates these basic antitrust principles by trying to use the 2011 Settlement Agreement to prevent Insignia from referencing information relevant to News's post-settlement violations of the antitrust laws, an area where there is a strong public interest in vigorous enforcement by all available means. *See, e.g.*, *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 214 (1990) (recognizing the goal to "promote the vigorous enforcement of the antitrust laws"); *Blue Shield of Va. v. McCready*, 457 U.S. 465, 475 n.11 (1982) (seeking to avoid the consequence of "discourag[ing] vigorous enforcement of the antitrust laws by private suits"); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745 (1977) (recognizing "the longstanding policy of encouraging vigorous private enforcement of the antitrust laws.").

Antitrust public policy requires that the 2011 Settlement Agreement not be construed or applied to limit how Insignia can phrase, contextualize, or plead post-release allegations, lest it be allowed to chill the robust enforcement of the antitrust laws or, worse, serve as a tool to help News absolve itself of post-release antitrust liability. Respectfully, the Court should put an end to News's attempts to do so by entering summary judgment against News on its counterclaim.

## V.   Even If News's Counterclaim Were Allowed to Proceed, News Is Not Entitled to Its Requested Relief

As discussed above, News lacks any cognizable evidence of harm, meaning News cannot even sustain its breach-of-contract claim. At minimum, however, summary judgment should enter against News as to its requested relief. Fed. R. Civ. P. 56(g) (summary judgment may enter on any "item of damages or other relief").

There is no dispute that News has failed to *quantify* any harm, *see supra*, meaning summary judgment should enter against News on its request for damages. *Brown v. Diversified Distrib. Sys., LLC*, 801 F.3d 901, 910 (8th Cir. 2015) ("Under Minnesota law, the controlling principle governing actions for damages is that damages which are speculative, remote, or conjectural are not recoverable."). Here, because the "record contains no proof beyond speculation" that News actually incurred internal business costs damages, summary judgment is proper on News's Counterclaim. *See id.*; *see also Hubbard Specialty & Mfg. Co. v. Minneapolis Wood-Designing Co.*, 50 N.W. 349, 350 (Minn. 1891) (denying damages when "[t]he evidence here furnished no basis from which the court could determine whether it was one dollar or one thousand.").

News also is not entitled to the only other form of relief it seeks—namely, specific performance. Although, Defendants have not explained exactly what "specific performance" they will seek, during the parties' meet and confer regarding interrogatory responses, News's counsel indicated that they intended to once again seek dismissal of the Complaint in its entirety just as they had done in their unsuccessful motion for judgment on the pleadings. Summary judgment should also enter against News as to any such relief, for at least two reasons.

First, there is nothing in the 2011 Settlement Agreement that would entitle News to such relief. *See Dakota County HRA v. Blackwell*, 602 N.W.2d 243, 244 (Minn. 1999) ("A party does not have an automatic right to specific performance as a remedy for breach of a contract; the district court must balance the equities of the case and determine whether the equitable remedy of specific performance is appropriate.").

35

Second, compelling such relief would be unwarranted under the circumstances.  In *3M Co. v. Ivoclar Vivadent AG*, the defendant filed a counterclaim and moved to dismiss the lawsuit arguing that the plaintiff 3M's lawsuit was barred by a covenant not to sue in the parties Confidential Disclosure Agreement.  The court found that "dismissing the action would be unwarranted."  No. 11–3488 ADM/TNL, 2012 WL 1438989, at *5 (D. Minn. Apr. 26, 2012).   The court reasoned against such relief because "Ivoclar AG has commenced a parallel action in Delaware" and [w]ith that parallel lawsuit, litigation is now inevitable."  *Id.*

That same inevitability exists here.  Even if the 2011 Settlement Agreement entitled News to strike the handful of pre-2011 statements in the Complaint, over a hundred paragraphs of the Complaint will remain.   Indeed, this inevitability is demonstrated by News's own interrogatory response.   In Interrogatory No. 1, Insignia asks News to "[i]dentify by page, paragraph, and line number, every allegation in Plaintiff's Complaint that you contend breaches the Settlement Agreement, and explain how any such allegation is a breach of the Settlement Agreement."  Ex. 25 at 4–6.   In response, News identified Paragraphs 4–7, 26–27, 32, 36, 38–39, 45–46, 51–56, 59–62, 64–67, 69–71, 73–75, 78–81, 84–90, 92–97, 99–103, 105–107, and 109–110 "***to the extent*** they allege facts that pre-date February 9, 2011."  *Id.* (emphasis added).   These paragraphs do not allege facts that pre-date February 9, 2011.  Accordingly, under News's own qualification, these paragraphs cannot amount to breach and remain viable allegations in support of Insignia's claims.

## Conclusion

Insignia respectfully submits that the Court should grant summary judgment in its favor and deny News's counterclaim.

Dated: July 10, 2020                           Respectfully submitted,

                                               */s/ Alejandra C. Salinas*
                                               SUSMAN GODFREY LLP
                                               William Christopher Carmody (*pro hac vice*)
                                               New York State Bar No. 4539276
                                               bcarmody@susmangodfrey.com
                                               Arun Subramanian (*pro hac vice*)
                                               New York State Bar No. 4611869
                                               asubramanian@susmangodfrey.com
                                               Mark Musico (*pro hac vice*)
                                               New York State Bar No. 5238001
                                               mmusico@susmangodfrey.com
                                               Y. Gloria Park (*pro hac vice*)
                                               New York State Bar No. 5477047
                                               gpark@susmangodfrey.com
                                               1301 Avenue of the Americas, 32nd Floor
                                               New York, New York 10019
                                               Telephone: (212) 336-3330
                                               Fax: (212) 336-8340

                                               Alejandra C. Salinas (*pro hac vice*)
                                               Texas State Bar No. 24102452
                                               asalinas@susmangodfrey.com
                                               1000 Louisiana Street, Suite 5100
                                               Houston, Texas 77002
                                               Telephone: (713) 651-9366
                                               Fax: (713) 654-6666

Rachel S. Black (*pro hac vice*)
Washington State Bar No. 32204
rblack@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Fax: (206) 516-3883

NAPOLI SHKOLNIK PLLC
Hunter Shkolnik (*pro hac vice*)
New York State Bar No. 2031458
hunter@napolilaw.com
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000

BLACKWELL BURKE P.A.
Jerry W. Blackwell
Minnesota State Bar No. 186867
blackwell@blackwellburke.com
S. Jamal Faleel
Minnesota State Bar No. 320626
jfaleel@blackwellburke.com
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Telephone: (212) 343-3200
Fax: (212) 343-3205

*Attorneys for Plaintiff Insignia Systems, Inc.*