## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| INSIGNIA SYSTEMS, INC., | ) | |
| | ) | Case No. 19-cv-1820 (MJD/BRT) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' MEMORANDUM** |
| | ) | **IN OPPOSITION TO PLAINTIFF'S** |
| NEWS CORPORATION, NEWS AMERICA | ) | **FOURTH MOTION TO COMPEL** |
| MARKETING FSI, L.L.C., and NEWS | ) | |
| AMERICA MARKETING IN-STORE | ) | |
| SERVICES L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>Introduction</u>

Over the last four months, Defendants have reviewed roughly 300,000 potentially privileged documents and created approximately 55,000 privilege log entries. As directed by the Court, the parties met and conferred early in the discovery period to discuss the appropriate format of the logs, and ultimately agreed to use the fields proposed by Insignia. In addition, the Court ordered a precise schedule for each production of documents, accompanying logs, and challenge of those logs, making it clear that privilege log disputes should be addressed early and in an expedited fashion. Notwithstanding the pains the Court has taken to avoid unnecessary or untimely motion practice over Defendants' privilege logs, Insignia waited until Defendants' logs were virtually complete to bring this motion. Months after Defendants' first log was produced, Insignia now asks the Court to compel Defendants to do a complete do-over on over 2,400 entries of its logs, making one wonder whether Insignia's true motive is to maximize the burden on Defendants and unnecessarily

increase the already significant costs associated with privilege review.  In particular, Insignia claims that Defendants use of "NAM Legal Department" as the origin of the claimed privilege is deficient—even though Insignia's own logs likewise reference "Faegre" without identifying specific individuals—and that Defendants have failed to adequately explain which individuals on their logs are third-party agents.  As will be explained below, Defendants' logs provide sufficient information to allow Insignia to assess the claim of privilege.  The Court should deny Insignia's tardy motion and uphold the sufficiency of Defendants' detailed and voluminous privilege logs.

## **Background**

The format and content of Defendants' privilege logs were negotiated and agreed upon by the parties at the start of this case.  In its first Pretrial Scheduling Order, the Court ordered the parties to meet and confer on the privilege logs for this matter.  (Declaration of Nicole Moen ("Moen Decl.") Ex. 1.)[1]  The parties did so, and ultimately "agreed to use the log entry fields proposed by Insignia."  (Ex. 3.)  These fields are:

- Log #

- Privilege ID

- Production BEGDOC

- Date Sent

- From

---

[1]  All exhibits referred to herein are to the Declaration of Nicole Moen unless otherwise stated.

- Mail To

- Mail CC

- Mail BCC

- Author/Custodian (for non-email documents)

- Privilege Claim

- Privilege Description

- Attorney Involved (In the event that the From, Mail To, Mail CC, and Mail BCC entries do not make clear that there was a lawyer on an email, the producing party shall add an entry to this column including the name of the lawyer whose work product or legal advice forms the basis of the privilege.)

- Attachment Withheld? Yes/No.

- Description of Attachment (In the event that an attachment was withheld as indicated in the previous field, the producing party shall add an entry to this column describing the attachment and how the attachment reflects attorney work product or legal advice.)

(Ex. 2.) Notably, Insignia did *not* request that Defendants provide email addresses or any specific information about the authors or recipients of privileged communications. (Moen Decl. ¶ 5.)

On May 19, 2020, the Court issued the Second Order Amending First Amended Pretrial Scheduling Order ("May 19 Order"), which addressed Defendants' privilege review and provided a schedule for the service of privilege logs and requirements related to challenging the logs. (Ex. 4.) Defendants undertook review of approximately 300,000 potentially privileged documents from its collection of roughly 1.6 million custodial documents. (Moen Decl. ¶ 7.) In accordance with the May 19 Order, Defendants divided

the potentially-privileged documents into five groups, producing non-privileged documents once a month and issuing corresponding privilege logs approximately two weeks after each production.  (*Id.*; *see also* Ex. 4.)  If Insignia wished to "challenge[] the adequacy of any privilege log produced" the Court's order required it to do so "no later than 14 days after the production of a privilege log."  (Moen Decl. Ex. 4.)  The parties were required to "meet and confer no later than 7 days after counsel's notification" of a challenge.  (*Id.*)

Defendants produced their first privilege logs on July 6, 2020.  (Ex. 5.)  These logs contained over 6,000 entries, which conformed to the fields requested by Insignia. (Moen Decl. ¶ 9 and Ex. 18 (excerpted pages from Defendants' privilege logs).)

On July 20—the last day to challenge Defendants' Group 1 logs—Insignia wrote to Defendants identifying purported "structural deficiencies in the logs."  (Ex. 6.)  Insignia asserted for the first time that Defendants should include email domains for all individuals on their logs.  (*Id.*)  Additionally, Insignia claimed that it could not "determine whether the documents withheld in fact contain privileged communications" for entries where Defendants' described a document as "reflecting confidential attorney-client communications with NAM Legal Department* regarding" a certain topic.  (*Id.*)  Insignia identified 14 "non-exclusive examples" of such entries. (*Id.*)

Counsel for the parties participated in a telephone conference on July 24.  (Moen Decl. ¶ 11.)  During the conference, Insignia requested that Defendants re-review all entries with "NAM Legal Department" and supplement with an attorney name where applicable. (*Id.*) As memorialized by email earlier that day, Defendants explained their use of "NAM

Legal Department" on the logs.  Specifically, Defendants elaborated that NAM Legal Department referred to:

> communications either 1) to or from NAM's Legal Department domain/listserv or 2) documents in which Defendants' employees refer to advice from the legal department or an attorney without naming the specific attorney.

(Ex. 6.)  Defendants noted that this was "no different than Insignia's use of 'Faegre' or other law firm names" on Insignia's logs.  (*Id.*)  Defendants also asked Insignia whether it had any case law or legal authority to support its position that reference to NAM's legal department in these circumstances was inappropriate.  (Moen Decl. ¶ 11.)  Counsel for Insignia refused to provide any legal authority for their position, stating that Defendants would receive legal authority in Insignia's motion to compel.  (*Id.*)

On July 27, Insignia identified three additional "nonexhaustive examples" of entries with "NAM Legal Department" on Defendants' logs and requested a list of individuals on the legal department listserv.  (Ex. 7.)  On July 31, Defendants produced their Group 2 logs as ordered by the Court.  (Ex. 9.)  These logs contained another 7,473 entries.  (Moen Decl. ¶ 14.)  On August 4, 2020, Defendants responded to Insignia's emails regarding the challenged entries (that Insignia identified on July 20 and July 27); Defendants agreed to produce one document with redactions and withdraw their assertion of privilege over four others.[2]  (Exs. 7-8.)

---

[2]  In its July 20 and July 27 emails, Insignia challenged an additional 27 log entries based on claimed deficiencies that it does not raise in its current motion.  (Exs. 6-7.).  Defendants' August 4 email addressed those entries as well, modifying its assertion of privilege over 9 other documents. (Exs. 7-8.)

Insignia responded on August 6, 2020, renewing its request for a list of individuals on the legal department listserv and "updated logs with email domains or comparable information." (Ex. 10.) Insignia also asserted that because Defendants modified their claim of privilege to 14 challenged entries, it was clear that "Defendants over-designated documents as privileged." (*Id.*) Insignia demanded that Defendants "review again all entries that list only 'NAM Legal Department' in the privilege descriptions and all entries withheld on [issues not before the court]" for Groups 1 and 2. (*Id.*)

Defendants replied on August 10. On the NAM Legal Department listserv, Defendants explained:

> The recipients of the NAMlegal@newsamerica.com listserv included all then-current members of the NAM legal department. At all times during the relevant time period for this case, those recipients included Louis Manzo and Bianca Pimentel. From time to time, they also included other NAM in-house attorneys. Emails sent to the marketing-legal@newsamerica.com mailbox were reviewed by the same group of attorneys. Given personnel changes over time, it wouldn't be feasible (or reasonable) to attempt to re-create the full list of individual recipients at each point in time from 2014–2019. Moreover, it is not necessary for NAM to do so. Courts have determined that privilege logs entries referencing the in-house legal department as the basis for the privilege are sufficient.

(Ex. 11.) Defendants further clarified the difference between entries where the NAM Legal Department appeared in the To/From/CC fields and where a document was described as "reflecting confidential attorney-client communications with NAM Legal Department* regarding" a certain topic:

> Where an email was sent to either of the above addresses, NAM Legal Department may be identified in either the To and CC/BCC fields, or, if the request to the legal department was made in an earlier-in-time email, NAM Legal Department is identified in the Privilege Description. In other places, references to NAM Legal Department in the Privilege Description include

documents in which NAM employees discuss legal advice being sought or received from the NAM Legal Department.

(*Id.*)

On the topic of email domains, Defendants explained:

As you'll recall, the parties discussed the format of their privilege logs before creating and serving them. In the course of those negotiations, Insignia did not request that Defendants provide email addresses or domains for individuals appearing on the logs. Individuals who appear on the log are either NAM employees, NAM attorneys, or agents hired by NAM whose communications are subject to protection under the attorney-client privilege or work product doctrine. Defendants have satisfied their obligations under the rules and will not re-create over 13,500 privilege log entries to include information that Insignia did not request in the first place. The logs are sufficient to allow Insignia to assess privilege in their current state.

(*Id.*)

Last, Defendants refused to re-review documents and re-create privilege log entries for massive portions of their Group 1 and Group 2 logs:

Defendants decline Insignia's invitation to re-review over 5,000 documents because they list "NAM Legal Department" as the only attorney involved or because they concern [a dispute not before the court]. Defendants are reviewing over 290,000 documents for privilege and, as noted above, have logged over 13,500 documents as either fully or partially privileged. The decision to downgrade the privilege status of [14] documents—documents with no substantive relevance to this case—is hardly evidence that Defendants have "over-designated documents as privileged." Further, the decision to de-designate these documents had nothing to do with the fact that the NAM Legal Department was involved or that the communications concerned the identified document types. Insignia's demand is unreasonable and unsupported. Defendants stand by the quality of their logs.

(*Id.*)

Insignia never responded to Defendants' August 10 email or made any further attempt to meet and confer on Defendants' logs. (Moen Decl. ¶ 17.) Defendants continued their privilege review and logging pursuant to the Court's scheduling order, producing logs

for Groups 3 and 5 in August and producing their Group 4 nonprivileged documents on September 16. (Exs. 12-14.) To date, Defendants have reviewed approximately 300,000 documents for privilege and created over 35,000 log entries. (Moen Decl. ¶ 21.) Defendants' last round of logs are due on September 30, and Defendants anticipate producing roughly 20,000 more entries. (*Id.*)

Despite receiving Defendants' first round of privilege logs on July 6, Insignia waited over two months to file this motion on September 15.

### <u>Legal Standard</u>

Confidential communications between attorneys and their clients made for the purpose of obtaining or rendering legal advice are privileged. *See Upjohn v. United States*, 449 U.S. 383, 394–95 (1981). In the corporate context, the attorney-client privilege also extends to confidential communications between non-lawyers that reflect privileged communications. *See, e.g.*, *A.P.I., Inc. Asbestos Settlement Tr. v. Atl. Mut. Ins. Co.*, No. CV 09-665 (JRT/JJG), 2010 WL 11537474, at *4 (D. Minn. May 3, 2010) (finding email between two non-attorneys was properly listed as privileged because it reflected confidential communications made from party's counsel for purpose of seeking or obtaining legal advice); *Baptiste v. Cushman & Wakefield, Inc.*, No. 03CIV.2102(RCC)(THK), 2004 WL 330235, at *2 (S.D.N.Y. Feb. 20, 2004) ("[C]ommunications which reflect advice given by counsel to a corporation do not lose their privileged status when shared among corporate employees who share responsibility for the subject matter of the communication.").

Although privilege logs have become the standard means by which to assert the attorney-client privilege, "[t]here is no 'privilege log' rule." *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011).  Rather, privilege logs are "a convention of modern legal practice designed to conform with the requirements of Federal Rule of Civil Procedure 26(b)(5)." *Id.*  That rule states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5).  Based on these principles, courts in this district often find privilege logs sufficient if they provide the following categories of information: (1) the sender/author, (2) any recipients, (3) the date, (4) the privilege asserted, and (5) a description.  *See, e.g.*, *Bartholomew*, 278 F.R.D. at 447; *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-CV-668 (MJD/LIB), 2013 WL 12293448, at *3 (D. Minn. Dec. 30, 2013); *BreathableBaby, LLC v. Crown Crafts, Inc.*, No. 12-cv-94 (PJS/TNL), 2013 WL 3350594, at *9 (D. Minn. May 31, 2013).

## **Argument**

Insignia argues that Defendants' privilege logs are insufficient because some entries refer to "NAM Legal Department" instead of a specific attorney and because they do not "explain[] any third party-relationship" present.  (Insignia's Memorandum in support of Fourth Motion to Compel ("Insignia Mem.") at 10.)  Insignia is wrong.  Defendants' logs comply with both the parties' agreement and legal precedent.  Accordingly, and for the

following reasons, the Court should deny Insignia's motion and uphold the sufficiency of Defendants' logs.

## I.     Insignia's Motion Should Be Denied Because It Did Not Promptly Bring These Issues to the Court.

The May 19 Order was clear:  Challenges to Defendants' privilege logs must be made within 14 days and any disputes that remain after the parties meet and confer should be brought before the Court promptly.  Insignia did not follow this directive.  Instead, Insignia identified "structural deficiencies" in Defendants' July 6 logs—structure that Insignia knew would persist in Defendants' subsequent logs—and waited over two months until Defendants had completed their review and logging to bring this motion.  During the intervening months, Defendants spent countless hours and incurred significant expense reviewing roughly 300,000 documents and creating approximately 55,000 privilege log entries.  Insignia's demand that Defendants go back to the beginning and start over should be rejected.  This situation is precisely what the May 19 Order was meant to prevent.

## II.    Defendants' Use of "NAM Legal Department" on Their Logs Sufficiently Describes the Privileged Documents.

Insignia's objections to Defendants' use of "NAM Legal Department" for some of their log entries is somewhat unclear.  As Defendants understand it, Insignia asserts two objections.  First, Insignia argues that over 2,400 of Defendants' privilege log entries improperly provide some version of the following statement in their "description" field: Email chain "reflecting confidential attorney-client communications with NAM Legal Department* regarding" a stated topic.  Second, Insignia claims that Defendants have failed to provide sufficient information about the individuals on the NAM legal department

10

listservs, which are also reflected by reference to "NAM Legal Department" on Defendants' logs.  Defendants address each of these arguments in turn.

### A. Reflecting Confidential Attorney-Client Communications with NAM Legal Department

For documents described as reflecting communications with the NAM legal department, Insignia claims that it cannot "assess whether the attorney-client privilege truly is applicable" because it does not "know[] the individuals who were the source of the alleged attorney-client communications."  (Insignia Mem. at 5.)  The notion that privilege only applies only to communications where a specific attorney is identifiable is without merit.

Further, and as Defendants explained during the meet and confer process, "NAM Legal Department" was used only where a specific attorney could not be identified from an email thread or the face of a document, but it was clear that privileged communications were reflected.  (*See* Exs. 6, 11.)  This situation arose for some emails sent to or from NAM's legal department listservs or where employees relayed their privileged communications by referencing only "legal" or similar phrases.  (*Id.*; *see also* Moen Decl. ¶ 22.)  Defendants' effort to identify an attorney where possible is demonstrated by the fact that over 93% of their privilege log entries list a specific attorney involved. (Moen Decl. ¶ 22.)  Further, of the 2,400 disputed entries, approximately 84% correspond to redacted documents, which already allow Insignia to see the context and recipients of the communication.  (*Id.*)

Courts have held that privilege logs are sufficient when they refer to a company's legal department.  *See, e.g.*, *Krueger v. Ameriprise Fin., Inc., LLC*, No. CV 11-2781 (SRN/JSM), 2014 WL 12597432, at *16 (D. Minn. May 7, 2014) (holding that a paragraph "starting with the phrase 'Legal has recommended'" should be redacted for privilege); *Kennis v. Metro. W. Asset Mgmt., LLC*, No. CV 15-8162-GW(FFMX), 2018 WL 5274166, at *7 (C.D. Cal. June 11, 2018) (concluding that defendant's privilege logs were sufficient because they referred either to a specific attorney or "[defendant's] legal department as the source or recipient of information" and noting that "discovery in this case is of great magnitude and these logs bear far more than blanket objections asserting privilege"); *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-CV-10706, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017) (finding privilege logs sufficient where descriptions stated that the documents "(1) relate to the investigation 'launched and conducted at the request of the Legal Department and for the Legal Department' and/or (2) 'reflect[] and contain[] communications used to facilitate the provision of legal advice and/or services'" (alteration in original)); *Rembrandt Patent Innovations, LLC v. Apple Inc*, No. C 14-05093 WHA, 2016 WL 427363, at *5 (N.D. Cal. Feb. 4, 2016) (concluding that plaintiff's privilege logs made a sufficient prima facie showing of attorney-client privilege where the logs indicated that "the documents reflected legal advice 'from Penn attorney(s),' conveyed by non-legal employees at Penn"); *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 416 (W.D. Tex. 2009) (upholding the redaction of a memo "that begins with a statement '[l]egal has informed us' and proceeds to relate legal advice").

The court's discussion in *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558 (N.D. Fla. Dec. 29, 2017) is particularly instructive. There, plaintiffs argued that defendants' privilege logs were deficient "because the [logs] only identifie[d] 'legal department' or 'outside counsel'" on some entries. *Id.* at *5. The court rejected this argument, concluding that the failure to identify a specific name "is not fatal to the assertion of privilege so long as it is evident that the information being compiled or discussed by corporate employees was information requested by or generated by an attorney." *Id.* at *6. Further, the court reasoned, "it is not uncommon within a complex organization that when a request for information is made by outside counsel, communications among corporate employees transmitting the request for information frequently will simply refer to the request as coming from outside counsel as opposed to a specific attorney or law firm." *Id.* The court stressed: "The important inquiry from a privilege perspective is the nature of the communication and the context in which it is made and not necessarily the precise identification of the source of the request for information." *Id.*

Here, like in *Abilify*, it was not uncommon for NAM employees to refer to their communications with NAM's in-house attorneys as communications with "legal" or the like. (Moen Decl. ¶ 22.) Similarly, NAM employees frequently emailed one of two legal department listservs when they sought legal advice. Even Insignia recognizes the challenge of identifying a specific attorney involved for all privileged communications as several of its own log entries identify the involvement of attorneys at Faegre Drinker Biddle & Reath only as "Faegre outside counsel." (Exs. 15-16.)

The cases cited by Insignia—*Twin City Fire* and *Scottsdale*—do not support its contention that a privileged communication loses protection simply because the privilege log references the company's legal department. In *Twin City Fire*, the court determined that plaintiff's privilege log was deficient because the "To, From, and CC columns [were] blank" for some entries and the description merely said that a report was "created at the direction of legal counsel." *Twin City Fire Ins. Co. v. Canons Regular of Order of the Holy Cross* No. CV 15-4437 (ADM/BRT), 2017 WL 8315884, at *2 (D. Minn. Apr. 11, 2017). Similarly, the logs in *Scottsdale* merely described documents as "regarding discussions or documents from 'counsel.'" *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC* No. CV 07-3526 (PAM/JSM), 2008 WL 11411780, at *3 (D. Minn. Oct. 20, 2008). Defendants' disputed log entries provide much more information than those in *Twin City Fire* and *Scottsdale*. They identify To, From, and CC information, the date, a description of the category of legal advice, and a description that the communication came from NAM's in-house legal department rather than some vague "legal counsel" or "counsel."

Here, as in *Abilify*, the entries reflect the realities of "a complex organization" with an in-house legal department where privileged communications are not always traceable to a specific attorney. *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 2017 WL 6757558 at *6. Defendants have provided a reasonably specific description for these documents based on the information reflected therein. Accordingly, the Court should hold that Defendants have satisfied their obligation under Fed. R. Civ. P. 26(b)(5).

**B.      Recipients of NAM Legal Department Listservs**

Insignia next complains that Defendants have "refused to provide a complete list of individuals who received or otherwise had access to either NAMlegal@newsamerica.com or marketing-legal@newsamerica.com." (Insignia Mem. at 7.) However, Defendants have already provided more than sufficient information to support the assertion of privilege related to the legal department listservs. Similar to Insignia's first argument regarding references to Defendants' Legal Department, the Court should likewise deny Insignia's motion regarding the legal department listservs.

As Defendants explained during the parties' meet and confer correspondence, Defendants do not have a definitive record of every individual who was on the legal department listservs from 2014 to 2019. Defendants provided the names of the key in-house attorneys who were on these lists and explained that from time to time the lists may have included other members of the in-house legal team. (Ex. 11.) Insignia never responded to Defendants' email to suggest that this proffered explanation was inadequate or request additional information from Defendants. (Moen Decl. ¶ 17.) Instead, Insignia allowed Defendants to continue reviewing and logging tens of thousands of documents and scheduled a motion on its dispute to be heard on the eve of Defendants' log completion.

Although Defendants maintain that the information they have already provided is more than sufficient to establish privilege, *see*, *e.g.*, *Abilify*, for the sake of clarity, Defendants offer the following additional information about the legal department listservs.

The email listserv "namlegal@newsamerica" included all of the members of the NAM legal department at a given time. (*See* Declaration of Louis F. Manzo in Opposition

to Insignia's Fourth Motion to Compel ("Manzo Decl.") ¶ 3.)  These individuals would have varied over time but would have at different times included the attorneys Louis Manzo, Bianca Pimentel (née Mojica), Dominique Charles, Alan Himmelstein (attorney consultant), Morgan Richman, Marina Cohen, and Mark Anderson, as well as Keely Barr, an assistant to the legal department.[3]  (*Id.*)  The listserv was limited to attorneys or support staff who assisted the attorneys in rendering legal services.  (*Id.*).

The listserv "marketing-legal@newsamerica.com" was used to collect all requests for legal and marketing review of marketing materials. (Manzo Decl. ¶ 4.) Administration of that mailbox was handled by the Marketing Department.  (*Id.*)  The specific individual who administered the mailbox would have varied over time, but for the bulk of the time the administrator was Joedy-Ann Buchanon. (*Id.*) Ms. Buchanon (or the administrator at the time) either forwarded the documents to Louis Manzo via email, put them into a folder for legal review, or made Louis Manzo's previously-communicated edits to the documents herself. (*Id.*)  At no time did either of these listservs ever include any third parties.  (Manzo Decl. ¶ 5.)

Here, as in *Abilify*, the information provided by Defendants on their logs more than satisfies their obligations under Rule 26(b)(5).

Insignia does not cite to a single case suggesting that Defendants' have not met their burden under Rule 26(b)(5).  None of the cases cited by Insignia address a privilege log on

---

[3]     Moreover, these are not new names to Insignia.  The names of NAM's in-house attorneys appear frequently in Defendants' 35,000 log entries and are denoted by an asterisk.  (Ex. 18 (excerpted pages of Defendants' privilege logs).)

which a listserv appears.  Further, all the cases cited by Insignia involve privilege logs with significantly less detail than that provided by Defendants.  *See United States v. Camerion-Ehlen Group, Inc.*, No. 13-CV-3003 (WMW/DTS), 2019 WL 1453063, at *4 (D. Minn. Apr. 2, 2019) (noting that the Government produced a one-page log that merely sorted documents "into nine broad categories and then 'check[ed] the box' of one or more asserted privilege for each category"); *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. CV 14-3103 (SRN/FLN), 2015 WL 9861106, at *3 (D. Minn. Oct. 5, 2015) ("The log, however, did not identify whether any of the named individuals were attorneys or provide any meaningful description of the scope of each document."); *Master Craft v. Stanley Works*, No. CV 04-132 (JMR/JSM), 2005 WL 8158996, at *11 (D. Minn. May 24, 2005) ("[T]here is no evidence that the genesis of the request for information contained in the documents was from an attorney or that the information discussed was the product of legal advice."). Accordingly, this Court should deny Insignia's motion to compel information that does not exist and hold that Defendants have sufficiently identified the individuals involved with the NAM Legal Department listservs.

### C.    Adjustment of Five NAM Legal Department Documents

In an effort to generate ammunition for its present motion, Insignia asked Defendants to re-review 17 documents where "NAM Legal Department" was either listed in the To/From/CC field or the document was described as "reflecting confidential attorney-client communications with NAM Legal Department."  (Exs. 6-7.)  Defendants re-reviewed these documents in good faith and changed one from withheld to redacted and four others from withheld to not privileged.  (Ex. 8.)  Three of these downgraded documents

were emails from the same thread.  (*See* Exhibit 4 to the Declaration of Alejandra C. Salinas; Insignia Mem. at 10 (noting that Exhibit 4 covers three of the downgraded documents "PRIV-IS19-1456 through PRIV-IS19-1458").) As the Court is aware, and at Insignia's request, Defendants agreed to forego a responsiveness review of its 1.6 million custodial documents, which had the effect of substantially increasing the scope and burden of Defendants' privilege review.  (Moen Decl. ¶ 21.) Unsurprisingly, none of the five downgraded documents have any substantive relevance to this case.  (*See* Ex. 17.)

Insignia now argues that Defendants' decision to downgrade five documents out of thousands is evidence of a widespread deficiency with Defendants' logs.  (Insignia Mem. at 8 ("This, of course, calls into question whether News can meet its burden to establish privilege over any of the remaining 'NAM Legal Department' Entries at all.").)  Insignia's position is not grounded in logic.[4]

A review of 17 documents resulting in an alteration of 5 (three of which are part of the same email thread) is hardly statistically relevant evidence.  Because Insignia challenged entries with "NAM Legal Department" in the To/From/CC field and entries where "NAM Legal Department was only in the description, the full population of such documents is greater than those at issue in this motion.  That figure is over 3,200.  This Court should reject any attempt by Insignia to draw relevance from Defendants' decision

---

[4]      Notably, even with the small figures at issue, Insignia gets the math wrong.  Insignia challenged 17 NAM Legal Department entries and Defendants downgraded 5.  (Exs. 6-8.) Defendants did not alter 40% of the challenged documents as Insignia claims; the correct figure is 29%.  Further, this figure is even lower if one considers the fact that three of the five downgraded documents are part of the same email chain.  Insignia's error further evidences the perils of trying to extrapolate from such a small sample size.

to change the status of less than 0.2% of similar documents.  Defendants' use of "NAM Legal Department" when no specific attorney was identifiable remains legally permissible and Insignia's attempt to distract from that with five downgraded documents should be rejected.

## III.   Defendants Have Sufficiently Identified the Individuals Who Sent or Received Privileged Information on Their Logs.

Insignia's second objection is that Defendants' privilege logs are "silent as to whether the individuals who received or authored privileged communications are third parties." (Insignia Mem. at 10.)  In July, Insignia demanded that Defendants re-create their entire logs to include email domains for every individual listed.  (Ex. 6.)  But as Defendants pointed out in the meet and confer, Insignia did not request that information when the parties discussed and agreed upon the format of the logs. (Exs. 6, 11.) Further, Defendants have already provided detailed information, and re-creating logs after the fact would place an undue burden on Defendants.  (Exs. 6, 11.)

Instead of promptly bringing this dispute before the Court, Insignia allowed Defendants to continue reviewing and logging tens of thousands of documents in the same format before scheduling a hearing on the matter for September 29—the day before Defendants' final logs are due. Additionally, when it filed its motion, Insignia presented a new proposal for the first time: instead of re-creating all log entries to provide email domains, Insignia would be satisfied with a "key identifying which of the many names listed are employees or third parties." (Insignia Mem. at 1-2.)  Because of Insignia's delay

in bringing this motion and the wealth of information already provided by Defendants, the Court should deny Insignia's motion.

No specific form or content is required of a party's privilege log.  Indeed, courts in this district often find privilege logs sufficient if they provide the following categories of information: (1) the sender/author, (2) any recipients, (3) the date, (4) the privilege asserted, and (5) a description.  *See, e.g.*, *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011); *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-CV-668 (MJD/LIB), 2013 WL 12293448, at *3 (D. Minn. Dec. 30, 2013); *BreathableBaby, LLC v. Crown Crafts, Inc.*, No. 12-cv-94 (PJS/TNL), 2013 WL 3350594, at *9 (D. Minn. May 31, 2013).  Defendants' logs provide all of this information, including detailed descriptions for each of its more than 35,000 entries. Further, Defendants have produced detailed organization charts identifying the roles and titles of the individuals on the logs and denoted every attorney on the log with an asterisk next to their name.  (Moen Decl. ¶ 23.)

The Court should also take into account the magnitude of Defendants' document production and privilege review.  *See, e.g.*, *Kennis v. Metro. W. Asset Mgmt., LLC*, No. CV 15-8162-GW(FFMX), 2018 WL 5274166, at *7 (C.D. Cal. June 11, 2018) (explaining the "holistic reasonableness approach" and concluding that "discovery in this case is of great magnitude and these logs bear far more than blanket objections asserting privilege").  By the time the Court hears this motion, Defendants will have completed review of approximately 300,000 potentially privileged documents and created detailed logs meeting all of the requirements of *Bartholomew*, *BreatheableBaby*, and *R.J. Zavoral & Sons* for roughly 55,000 documents.

20

Under Rule 26(b)(5), Defendants are required to provide information that describes the nature of the documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Defendants' logs not only provide sufficient information under Rule 26; they also contain the types of information proposed by Insignia and agreed upon by the parties for their respective logs. Insignia waited to file this motion—a motion that runs counter to both legal precedent and the parties' December 2019 agreement concerning privilege log contents—until Defendants had almost completed logging privileged documents. For all of these reasons, the Court should deny Insignia's motion to compel.

## Conclusion

In sum, Insignia's untimely motion fails to identify any actual deficiencies in Defendants' privilege logs. Defendants created detailed logs that follow the format Insignia itself requested and provided Insignia with all of the information available about privilege communications that originated in NAM's in-house legal department. Shortly before Defendants' final privilege log is due, Insignia now seeks to impose an additional burden on Defendants based on contrived complaints that Insignia did not pursue when the parties negotiated the format of their logs or before Defendants completed their review. The Court should reject Insignia's attempts at gamesmanship and deny Insignia's Fourth Motion to Compel regarding Defendants' Privilege Logs.

Dated:  September 22, 2020

*s/ Todd Wind*
Todd Wind (#0196514)
Nicole M. Moen (#0329435)
Timothy M. O'Shea (#0386437)
Rachel L. Dougherty (#0399947)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
Facsimile:   612.492.7077
twind@fredlaw.com
nmoen@fredlaw.com
toshea@fredlaw.com
rdougherty@fredlaw.com

William B. Michael (admitted *pro hac vice*)
NY Bar No. 4296356
**PAUL WEISS RIFKIND WHARTON &
GARRISON**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:   212.373.3648
Fax:  212.492.0648
wmichael@paulweiss.com

Kenneth A. Gallo (admitted *pro hac vice*)
NY Bar No. 430369
Jane B. O'Brien (admitted *pro hac vice*)
NY Bar No. 4484457
Jeannie S. Rhee (admitted *pro hac vice*)
District of Columbia Bar No. 464127
**PAUL WEISS RIFKIND WHARTON &
GARRISON**
2001 K Street, NW
Washington, DC 20006-1047
Tel:   202.223.7356
Fax:  202.204.7356
kgallo@paulweiss.com
jobrien@paulweiss.com
jrhee@paulweiss.com

Gerson A. Zweifach (admitted *pro hac vice*)
District of Columbia Bar No. 349266
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Tel:    202.434.5000
Fax:    202.434.5029
gzweifach@wc.com

***Attorneys for Defendants***